IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OTIS McDONALD, ADAM ORLOV, COLLEEN LAWSON, DAVID LAWSON, SECOND AMENDMENT FOUNDATION, INC., and ILLINOIS STATE RIFLE ASSOCIATION,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF CHICAGO and MAYOR RICHARD M. DALEY,<br><br>Defendants. | Case No.<br><br>**COMPLAINT**<br><br>`FILED: JUNE 26, 2008`<br>`08CV3645`<br>`JUDGE SHADUR`<br>`MAGISTRATE JUDGE SCHENKIER`<br>`AEE` |

## COMPLAINT

**COME NOW** the Plaintiffs, Otis McDonald, Adam Orlov, Colleen Lawson, David Lawson, Second Amendment Foundation, Inc., and Illinois State Rifle Association, by and through undersigned counsel, and complain of the Defendants as follows:

## THE PARTIES

1.  Plaintiff Otis McDonald is a natural person and a citizen of the United States, residing in Chicago, Illinois. Mr. McDonald resides in a high-crime neighborhood and is active in community affairs. As a consequence of trying to make his neighborhood a better place to live, Mr. McDonald has been threatened by drug dealers.

2.  Plaintiff Adam Orlov is a natural person and a citizen of the United States, residing in Chicago, Illinois. Mr. Orlov is a former Evanston, Illinois, police officer. As a police

officer, Mr. Orlov was entrusted with a handgun for the purpose of defending himself and others from violent crime.

      3.      Plaintiff Colleen Lawson is a natural person and a citizen of the United States, residing in Chicago, Illinois. Ms. Lawson's home has been targeted by burglars.

      4.      Plaintiff David Lawson is a natural person and a citizen of the United States, residing in Chicago, Illinois. Mr. Lawson's home has been targeted by burglars.

      5.      Plaintiff Second Amendment Foundation, Inc. ("SAF") is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF has over 600,000 members and supporters nationwide, including many in Chicago. The purposes of SAF include education, research, publishing and legal action focusing on the Constitutional right to privately own and possess firearms, and the consequences of gun control. SAF brings this action on behalf of itself and its members.

      6.      Plaintiff Illinois State Rifle Association ("ISRA") is a non-profit membership organization incorporated under the laws of Illinois with its principal place of business in Chatsworth, Illinois. ISRA has over 17,000 members and supporters in Illinois, including many in Chicago. The purposes of ISRA include securing the Constitutional right to privately own and possess firearms within Illinois, through education, outreach, and litigation. ISRA brings this action on behalf of itself and its members.

      7.      Defendant City of Chicago is a municipal entity organized under the Constitution and laws of the State of Illinois.

      8.      Defendant Richard M. Daley is the Mayor of the City of Chicago, and as such is responsible for executing and administering the City of Chicago's laws, customs, practices, and

policies. In that capacity, Mr. Daley is presently enforcing the laws, customs, practices and policies complained of in this action, and is sued in both his individual and official capacities.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983.

10. Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## STATEMENT OF FACTS

11. Mr. McDonald lawfully owns a handgun, which he keeps outside the City of Chicago. Mr. McDonald presently intends to possess the handgun within his home for self-defense, but is prevented from doing so only by Defendants' active enforcement of the policies complained of in this action.

12. Mr. McDonald applied for permission to possess a handgun within his Chicago home. On June 13, 2008, that application was refused pursuant to the policies complained of in this action.

. 13. Mr. McDonald fears arrest, criminal prosecution, incarceration, and fine if he were to possess a handgun within his home.

14. Mr. McDonald owns a shotgun which he keeps in his Chicago home. This shotgun is lawfully registered pursuant to the Chicago Municipal Code.

15. Mr. McDonald fears arrest, criminal prosecution, incarceration, and fine if he were to continue to possess the shotgun in his Chicago home without re-registering it annually as required by the Chicago Municipal Code.

16. Mr. Orlov lawfully owns a handgun, which he keeps outside the City of Chicago. Mr. Orlov presently intends to possess the handgun within his home for self-defense, but is prevented from doing so only by Defendants' active enforcement of the policies complained of in this action.

17. Mr. Orlov applied for permission to possess the handgun within his Chicago home. On May 6, 2008, that application was refused pursuant to the policies complained of in this action.

18. Mr. Orlov fears arrest, criminal prosecution, incarceration, and fine if he were to possess a handgun within his home.

19. Ms. Lawson lawfully owns a handgun, which she keeps outside the City of Chicago. Ms. Lawson presently intends to possess the handgun within her home for self-defense, but is prevented from doing so only by Defendants' active enforcement of the policies complained of in this action.

20. Ms. Lawson applied for permission to possess the handgun within her Chicago home. On January 3, 2008, that application was refused pursuant to the policies complained of in this action.

21. Ms. Lawson fears arrest, criminal prosecution, incarceration, and fine if she were to possess a handgun within her home.

22. Mr. Lawson lawfully owns a handgun, which he keeps outside the City of Chicago. Mr. Lawson presently intends to possess the handgun within his home for self-defense, but is prevented from doing so only by Defendants' active enforcement of the policies complained of in this action.

23. Mr. Lawson applied for permission to possess the handgun within his Chicago home. On January 23, 2008, that application was refused pursuant to the policies complained of in this action.

24. Mr. Lawson fears arrest, criminal prosecution, incarceration, and fine if he were to possess a handgun within his home.

25. Mr. Lawson owns various long arms which are kept in his Chicago home and are lawfully registered pursuant to the Chicago Municipal Code.

26. Mr. Lawson fears arrest, criminal prosecution, incarceration, and fine if he were to continue to possess these arms in his Chicago home without re-registering them annually as required by the Chicago Municipal Code.

27. On May 4, 2008, the registration for one of Mr. Lawson's rifles, a K31, lapsed. The rifle thus became permanently unregisterable within the City of Chicago. Mr. Lawson removed the rifle from his Chicago home and now keeps it outside the City of Chicago.

28. Mr. Lawson fears arrest, criminal prosecution, incarceration, and fine if he were to possess the lapsed K31 rifle within his Chicago home. Mr. Lawson presently intends to possess the K31 rifle within his home, but is prevented from doing so only by Defendants' active enforcement of the policies complained of in this action.

29. In 2007, Mr. Lawson applied to purchase a rifle from the federal Civilian Marksmanship Program ("CMP"). On October 18, 2007, Mr. Lawson was informed via email that his application was granted and the rifle would be delivered to his Chicago home. The Civilian Marksmanship Program requires that delivery be made to Mr. Lawson's Chicago home,

because that is the address listed both in Mr. Lawson's driving license and Illinois Firearms Owner Identification Card.

30. On October 19, 2007, the CMP rifle arrived at the Lawson home via the U.S. Postal Service. Mr. Lawson thus had approximately a day's notice that he would be receiving the CMP rifle. Only upon receiving the CMP rifle could Mr. Lawson learn the gun's serial number, necessary to apply for a Chicago registration certificate for the firearm.

31. Mr. Lawson relocated the rifle outside of Chicago and, on November 30, 2007 applied to register the rifle. On December 11, 2007, that application was refused pursuant to the policies complained of in this action.

32. Mr. Lawson presently intends to possess the CM P rifle within his home, but is prevented from doing so only by Defendants' active enforcement of the policies complained of in this action. Mr. Lawson fears arrest, criminal prosecution, incarceration, and fine if he were to possess the CMP rifle within his home.

33. The Second Amendment to the United States Constitution provides: "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

34. At a minimum, the Second Amendment guarantees individuals a fundamental right to possess a functional, personal firearm, including a handgun, within the home.

35. The Fourteenth Amendment to the United States Constitution provides, in pertinent part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty,

or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

36.　　Chicago Municipal Code § 8-20-040(a) mandates that

All firearms in the City of Chicago shall be registered in accordance with the provisions of this chapter. It shall be the duty of a person owning or possessing a firearm to cause such firearm to be registered. No person shall within the City of Chicago, possess, harbor, have under his control . . . or accept any firearm unless such person is the holder of a valid registration certificate for such firearm. No person shall, within the City of Chicago, possess, harbor, have under his control . . . or accept any firearm which is unregisterable under the provisions of this chapter.

37.　　Chicago Municipal Code § 8-20-050 provides: "No registration certificate shall be issued for any of the following types of firearms: . . .(c) handguns . . ." While Section 8-20-050(c) provides exceptions for certain handguns owned prior to the law's effective date, and handguns owned by police officers, security personnel, and private detectives, the provision, in conjunction with Section 8-20-040, generally bars the private home possession of handguns by law-abiding adult citizens.

38.　　Chicago Municipal Code § 8-20-090(a) provides: "A registration certificate shall be obtained prior to any person taking possession of a firearm from any source."

39.　　Chicago Municipal Code § 8-20-200 provides:

(a) Every registrant must renew his registration certificate annually. Applications for renewal shall be made by such registrants 60 days prior to the expiration of the current registration certificate.

(b) The application for renewal shall include the payment of a renewal fee as follows:

1 firearm . . . . $20.00; 2-10 firearms . . . . 25.00; More than ten firearms . . . . 35.00

(c) Failure to comply with the requirement for renewal of registration of a firearm shall cause that firearm to become unregisterable.

      (d) All terms, conditions and requirements of this chapter for registration of firearms shall be applicable to renewal or registration of such firearms.

      (e) The renewal fee shall not be applicable to duty-related handguns of peace officers domiciled in the City of Chicago.

      40.    Many Chicago gun owners fail to re-register their firearms every year. Among these recently was Alderman Richard Mell, whose firearms became unregisterable when he failed to timely renew his registration certificates.

      41.    Accordingly, Alderman Mell proposed an ordinance amending the law to permit, for one month, lapsed guns to be re-registered if their owners had attempted to re-register their guns between May 1, 2007 and April 1, 2008, a period that would have covered his lapsed firearm registrations.

      42.    Defendant Mayor Daley endorsed Mell's proposal, stating: "A lot of people go back and forth to their summer homes . . . A lot of people move their shotguns. A lot of 'em are bird hunters, gun collectors. . . . They move 'em back from Wisconsin, Michigan, [other] parts of Illinois."

      43.    Defendant Mayor Daley added: "It's one time [for] one month . . . You want to have 'em register. There's nothing wrong with that . . . People want to just register. A lot of 'em bring 'em back from hunting trips. So, why not?"

      44.    Speaking of Alderman Mell's desire to re-register his lapsed guns, Defendant Mayor Daley stated: "He has a home in Wisconsin. He brings 'em back and forth. He's not running out with a shotgun and hurting people."

45. The proposed re-registration amnesty bill was passed by the Chicago City Council, with the amnesty period extended to 120 days. The fee for re-registering a lapsed firearm under the amnesty bill is $60.00.

46. A first violation of Chicago's ban on the ownership or possession of unregistered firearms within the home is punishable by a fine of "not less than $300.00, nor more than $500.00; or [incarceration] for not less than ten days nor more than 90 days or both." Chicago Municipal Code § 8-20-250. Subsequent violations are punishable by a fine of $500.00 and incarceration ranging from ninety days to six months. Id.

### FIRST CAUSE OF ACTION – HANDGUN BAN
### RIGHT TO KEEP AND BEAR ARMS
### U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983

47. Paragraphs 1 through 46 are incorporated as though fully stated herein.

48. The Second Amendment right is incorporated as against the states and their political subdivisions pursuant to the Due Process Clause of the Fourteenth Amendment.

49. The Second Amendment right to keep and bear arms is a privilege and immunity of United States citizenship which, pursuant to the Fourteenth Amendment, states and their political subdivisions may not violate.

50. Handguns, as a class of weapons, are "arms" whose possession by law-abiding adult citizens is protected by the Second Amendment right to keep and bear arms.

51. By banning handguns, Defendants currently maintain and actively enforce a set of laws, customs, practices, and policies under color of state law which deprive individuals, including the Plaintiffs, of their right to keep and bear arms, in violation of the Second and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in

violation of 42 U.S.C. § 1983.  Plaintiffs are therefore entitled to declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices.

### SECOND CAUSE OF ACTION – RE-REGISTRATION REQUIREMENT
### RIGHT TO KEEP AND BEAR ARMS
### U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983

52. Paragraphs 1 through 51 are incorporated as though fully stated herein.

53. By requiring Plaintiffs to annually re-register each firearm, Defendants currently maintain and actively enforce a set of laws, customs, practices, and policies under color of state law which deprive individuals, including the Plaintiffs, of their right to keep and bear arms, in violation of the Second and Fourteenth Amendments to the United States Constitution.  Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983.  Plaintiffs are therefore entitled to declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices.

### THIRD CAUSE OF ACTION – PRE-ACQUISITION REGISTRATION REQUIREMENT
### RIGHT TO KEEP AND BEAR ARMS
### U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983

54. Paragraphs 1 through 53 are incorporated as though fully stated herein.

55. By requiring Plaintiffs to register all firearms prior to their acquisition, Defendants currently maintain and actively enforce a set of laws, customs, practices, and policies under color of state law which deprive individuals, including the Plaintiffs, of their right to keep and bear arms, in violation of the Second and Fourteenth Amendments to the United States Constitution.  Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983.  Plaintiffs are therefore entitled to declaratory and permanent injunctive relief against continued enforcement

and maintenance of Defendants' unconstitutional customs, policies, and practices.

### FOURTH CAUSE OF ACTION – UNREGISTERABLE STATUS PENALTY
### RIGHT TO KEEP AND BEAR ARMS
### U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983

56.     Paragraphs 1 through 55 are incorporated as though fully stated herein.

57.     By declaring specific firearms "unregisterable" as a penalty for not complying with registration requirements, Defendants currently maintain and actively enforce a set of laws, customs, practices, and policies under color of state law which deprive individuals, including the Plaintiffs, of their right to keep and bear arms, in violation of the Second and Fourteenth Amendments to the United States Constitution.  Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983.  Plaintiffs are therefore entitled to declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices.

### FIFTH CAUSE OF ACTION – UNREGISTERABLE STATUS PENALTY
### EQUAL PROTECTION
### U.S. CONST., AMEND. XIV, 42 U.S.C. § 1983

58.     Paragraphs 1 through 57 are incorporated as though fully stated herein.

59.     By declaring specific firearms "unregisterable" as a penalty for not complying with registration requirements, Defendants currently maintain and actively enforce a set of laws, customs, practices, and policies under color of state law which deprive individuals, including the Plaintiffs, of their right to equal protection of the laws, in violation of the Fourteenth Amendment to the United States Constitution.  Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983.  Plaintiffs are therefore entitled to declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices.

## PRAYER FOR RELIEF

Plaintiffs request judgment be entered in their favor and against Defendants as follows:

1. An order permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing Chicago Municipal Code § 8-20-050(c), barring registration of handguns; Chicago Municipal Code § 8-20-200, requiring the annual renewal of firearms registrations; Chicago Municipal Code § 8-20-090, mandating that registration certificates for firearms be obtained prior to taking possession of a firearm; Chicago Municipal Code § 8-20-040, as applied to prohibiting possession of an unregistered firearm within a period of time reasonably necessary to obtain registration; and any custom, policy, or practice of deeming a firearm "unregisterable" for the sole reason that it has previously been not validly registered.

2. Attorney Fees and Costs pursuant to 42 U.S.C. § 1988;

3. Declaratory relief consistent with the injunction;

4. Costs of suit; and

5. Any other further relief as the Court deems just and appropriate.

Dated: June 26, 2008                        Respectfully submitted,

Alan Gura                                   David G. Sigale (Atty. ID# 6238103)
Gura & Possessky, PLLC                      Law Firm of David G. Sigale, P.C.
101 N. Columbus Street, Suite 405           Corporate West I
Alexandria, VA 22314                        4300 Commerce Court, Suite 300-3
703.835.9085/Fax 703.997.7665               Lisle, IL 60532
*Pro Hac Vice* Application Pending          630.452.4547/Fax 630.596.4445

                                    By:    ___/s/David G. Sigale/_____
                                           David G. Sigale

                                           Attorneys for Plaintiffs