# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| OTIS McDONALD, et al., | ) | Case No. 08-CV-3645 |
| | ) | |
| Plaintiffs, | ) | **MEMORANDUM OF POINTS** |
| | ) | **AND AUTHORITIES IN** |
| v. | ) | **SUPPORT OF PLAINTIFFS'** |
| | ) | **MOTION FOR SUMMARY** |
| CITY OF CHICAGO, | ) | **JUDGMENT** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

**COME NOW** the Plaintiffs, Otis McDonald, Adam Orlov, Colleen Lawson, David

Lawson, Second Amendment Foundation, Inc., and Illinois State Rifle Association, by and

through undersigned counsel, and submit their memorandum of points and authorities in support

of their motion for summary judgment.

Dated: July 31, 2008                    Respectfully submitted,

Alan Gura (admitted pro hac vice)       David G. Sigale (Atty. ID# 6238103)
Gura & Possessky, PLLC                  Law Firm of David G. Sigale, P.C.
101 N. Columbus Street, Suite 405       4300 Commerce Court, Suite 300-3
Alexandria, VA 22314                    Lisle, IL 60532
703.835.9085/Fax 703.997.7665          630.452.4547/Fax 630.596.4445


By:___/s/ Alan Gura/_____     By:_____/s/ David G. Sigale/_____
     Alan Gura                                 David G. Sigale

                                               Attorneys for Plaintiffs

<u>**TABLE OF CONTENTS**</u>

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Preliminary Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Summary of Argument.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.      The Right to Arms Secured by the Second Amendment is a Privilege Or
        Immunity Within the Meaning of the Fourteenth Amendment, Which the
        States Shall Not Abridge. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II.     The Second Amendment Is Incorporated Under the Fourteenth Amendment's
        Due Process Clause. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III.    The Challenged Laws Violate Plaintiffs' Right to Keep Arms. . . . . . . . . . . . . . . . . . 13

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## **TABLE OF AUTHORITIES**

Constitutional Provisions

U.S. Const. art. I, sec. 10. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

U.S. Const. amend. II. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

U.S. Const. amend. XIV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Statutes

Chicago Mun. Code § 8-20-140. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Cases

*Barron ex rel. Tiernan* v. *Mayor of Baltimore*, 32 U.S. (7 Pet.) 243 (1833). . . . . . . . . . . . 6, 7, 12

*Cameo Convalescent Center, Inc.* v. *Percy*, 800 F.2d 108 (7th Cir. 1986). . . . . . . . . . . . . . . . . 13

*Cruzan* v. *Dir., Mo. Dept. of Health*, 497 U.S. 261 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*District of Columbia* v. *Heller*, 554 U.S. ___, 128 S. Ct. 2783  (2008). . . . . 4, 8, 9, 10, 11, 12, 13

*Duncan* v. *Louisiana*, 391 U.S. 145 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

*EEOC* v. *Sears, Roebuck & Co.*, 417 F.3d 789 (7th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . 13

*Eisenstadt* v. *Baird*, 405 U.S. 438 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Fox* v. *Ohio*, 46 U.S. (5 How.) 410 (1847). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Gideon* v. *Wainright*, 372 U.S. 335 (1963). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Lawrence* v. *Texas*, 539 U.S. 558 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Miller* v. *Texas*, 153 U.S. 535 (1894). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Murdock* v. *Pennsylvania*, 319 U.S. 105 (1943). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Murphy* v. *People*, 2 Cow. 815 (N.Y. 1824). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Palko* v. *Connecticut*, 302 U.S. 319 (1937). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*People's Rights Org.* v. *City of Columbus*, 152 F.3d 522 (6th Cir. 1998). . . . . . . . . . . . . . . . . . 14

*Planned Parenthood* v. *Casey*, 505 U.S. 833 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Poe* v. *Ullman*, 367 U.S. 497 (1961). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Presser* v. *Illinois*, 116 U.S. 252 (1886). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Quilici* v. *Village of Morton Grove*, 695 F.2d 261 (7th Cir. 1982). . . . . . . . . . . . . . . . . . . . . 12, 13

*Rochin* v. *California*, 342 U.S. 165 (1952). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Saenz* v. *Roe*, 526 U.S. 489 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Scott* v. *Sandford*, 60 U.S. (19 How.) 393 (1857). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Silveira* v. *Lockyer*, 312 F.3d 1052 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*The Slaughter-House Cases*, 83 U.S. (16 Wall.) 36 (1873). . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 8

*Twitchell* v. *Commonwealth*, 74 U.S. (7 Wall.) 321 (1869). . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States* v. *Cruikshank*, 92 U.S. 542 (1876). . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 13

*United States* v. *Emerson*, 270 F.3d 203 (5th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Zobel* v. *Williams*, 457 U.S. 55 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Scholarly Material

Akhil Reed Amar, THE BILL OF RIGHTS (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Akhil Reed Amar, *The Bill of Rights and the Fourteenth Amendment*,
    101 Yale L.J. 1193  (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Richard L. Aynes, *Constricting the Law of Freedom: Justice Miller,*
    *the Fourteenth Amendment, and the Slaughter-House Cases*,
    70 Chi. Kent L. Rev. 627 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Michael Anthony Lawrence, *Second Amendment Incorporation*
    *Through the Privileges or Immunities and Due Process Clauses*,
    72 Mo. Law. R. 1 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Laurence H. Tribe, *Taking Text and Structure Seriously: Reflections on Free-Form Method in Constitutional Interpretation*, 108 Harv. L. Rev. 1121 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Eugene Volokh, *State Constitutional Rights to Keep and Bear Arms*, 11 Tex. Rev. Law & Pol. 191 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>Other Sources</u>

Brief of Amici States Texas, et al., Supreme Court No. 07-290. . . . . . . . . . . . . . . . . . . . . . . 9

Cong. Globe, 39th Cong., 1st Sess. (1866). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Cong. Globe, 42d Cong., 1st Sess. (1871). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Robert Channick, *Morton Grove repeals 27-year old gun ban*, Chicago Tribune (July 28, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**PRELIMINARY STATEMENT**

But for the laws challenged in this action, plaintiffs would possess handguns in their homes. And while plaintiffs do not contest the constitutionality of gun registration *per se*, they seek to bring Chicago's gun registration program into compliance with constitutional standards.

The facts of this case are not subject to dispute. Nor can the challenged laws be thought compatible with the right to keep and bear arms. The only significant legal issue before the Court is whether the Second Amendment is binding upon state and local governmental entities through application of the Fourteenth Amendment. Plaintiffs submit that under any theory of Fourteenth Amendment incorporation, Chicago is bound to respect their rights under the Second Amendment. Plaintiffs are thus entitled to a summary judgment granting them injunctive relief.

**STATEMENT OF FACTS**

Defendant City of Chicago generally bans the home possession of handguns by requiring that all firearms be registered, but refusing the registration of handguns. Statement of Material Fact ("SMF") 13. The individual plaintiffs have each tried to register a handgun for possession in their Chicago homes, but the city has denied each of plaintiffs' handgun registration applications per its handgun registration ban. SMF 14-17. Orlov and David Lawson's were also denied handgun registration because their handguns were acquired prior to submission of the registration forms. SMF 15, 17. Each individual plaintiff fears arrest, criminal prosecution, incarceration, and fine if he or she were to possess a handgun within the home. SMF 18. Each individual plaintiff presently intends to possess a handgun within the home for self-defense, but is prevented from doing so by the city's active enforcement of the handgun ban. SMF 19.

Defendant City mandates that all lawfully registered guns be re-registered each year. SMF 20.  If a registered gun is not timely re-registered, that particular gun becomes "unregisterable" and thus illegal to possess in Chicago.  SMF 21.  Plaintiff McDonald owns a shotgun lawfully registered pursuant to the Chicago Municipal Code.  SMF 22.  Mr. Lawson likewise owns various guns lawfully registered in the city.  SMF 23.  McDonald and Lawson fear arrest, criminal prosecution, incarceration, and fine if they were to possess their guns in Chicago without re-registering them annually.  SMF 24.

On May 4, 2008, the registration for one of Mr. Lawson's rifles, a K31, lapsed.  The rifle thus became permanently unregisterable within the City of Chicago.  SMF 25.  Mr. Lawson removed the rifle from his Chicago home and now keeps it outside the City of Chicago.  SMF 26.  Mr. Lawson fears arrest, criminal prosecution, incarceration, and fine if he were to possess the lapsed K31 rifle within his Chicago home without benefit of registration.  SMF 27.

Plaintiff Lawson is not the only Chicagoan who had inadvertently allowed his firearm registration to lapse and thus render his gun "unregisterable."  The phenomenon is responsible for a decline in the number of registered guns that does not reflect the true firearm population in the city.  SMF 28.  When Alderman Richard Mell had various firearms become unregisterable for lack of timely re-registration, he successfully sponsored an amnesty ordinance permitting the re-registration of lapsed firearms, for a limited time, upon payment of a fine.  SMF 29.  The amnesty ordinance does not repeal the re-registration requirement.  SMF 30.

The city also requires that all firearms be registered prior to their acquisition, lest they become unregisterable.  SMF 31.  At times, compliance with this requirement is not strictly possible.  In 2007, plaintiff David Lawson applied to purchase a rifle from the federal Civilian

Marksmanship Program ("CMP").  On October 18, 2007, Mr. Lawson was informed via e-mail that his application was granted and the rifle would be delivered to his Chicago home.  SMF 32. The CMP requires that delivery be made to Mr. Lawson's Chicago home, because that is the address listed both in Mr. Lawson's driving license and Illinois Firearms Owner Identification Card.  SMF 33.

On October 19, 2007, the CMP rifle arrived at the Lawson home via the U.S. Postal Service.  SMF 34.  Mr. Lawson thus had approximately a day's notice that he would be receiving the CMP rifle.  Only upon receiving the CMP rifle could Mr. Lawson learn the gun's serial number, necessary to apply for a Chicago registration certificate for the firearm.  SMF 35.

Mr. Lawson relocated the rifle outside of Chicago and, on November 30, 2007 applied to register the rifle.  SMF 36.  On December 11, 2007, that application was refused because Lawson did not effectuate registration of the rifle prior to taking possession of it.  SMF 37.   Mr. Lawson presently intends to possess the CMP rifle within his home, but is prevented from doing so only by the city's active enforcement of the pre-acquisition registration requirement and now unregisterable status of that firearm.  SMF 38.  Mr. Lawson fears arrest, criminal prosecution, incarceration, and fine if he were to possess this rifle within his home. UMF 39.

Plaintiffs Second Amendment Foundation and Illinois State Rifle Association each have individual members who are impacted by the challenged laws.  SMF 6, 8.  Vindication of the right to keep and bear arms is germane to these organizations' purposes.  SMF 5, 7.

## SUMMARY OF ARGUMENT

Applying Fourteenth Amendment incorporation tests to the Second Amendment right to keep and bear arms, there can be only one result: the Second Amendment applies to the states.

3

The right to keep and bear arms is among the privileges and immunities of United States citizenship which the states are forbidden from abridging. Indeed, the Fourteenth Amendment was intended and originally understood to stop the states' abridgement of the right to keep and bear arms. The Fourteenth Amendment's Privileges and Immunities Clause may have been given a wrong, parsimoniously narrow interpretation by the Supreme Court in *The Slaughter-House Cases*, 83 U.S. (16 Wall.) 36 (1873), but Second Amendment incorporation through that provision remains the most logical course of action. Considering the widely held view that the current Privileges or Immunities Clause jurisprudence is incorrect, and the recent suggestion by an Associate Justice of the Supreme Court that this doctrine be revisited, plaintiffs would in good faith urge that this precedent be reconsidered to better honor the original intent, meaning, and plain text of the Fourteenth Amendment.

Yet other precedent requires entry of judgment for plaintiffs. However *Slaughter-House* hampers incorporation through the Privileges or Immunities Clause, the Supreme Court's well-established doctrine of selective incorporation through the Fourteenth Amendment's Due Process Clause mandates that the City of Chicago respect its residents' Second Amendment rights.

Applying the Second Amendment to the challenged laws, the latter must yield. A ban on the home possession of handguns by law-abiding adults is clearly unconstitutional. *District of Columbia* v. *Heller*, 554 U.S. ___, 128 S. Ct. 2783, 2818 (2008). And while *Heller* did not purport to define the precise standard of review under which gun regulations must be examined in Second Amendment cases, Chicago's re-registration and pre-acquisition registration requirements, and "unregisterability" penalty, fail any possible standard of review.

## ARGUMENT

**I.     THE RIGHT TO ARMS SECURED BY THE SECOND AMENDMENT IS A PRIVILEGE OR IMMUNITY WITHIN THE MEANING OF THE FOURTEENTH AMENDMENT, WHICH THE STATES SHALL NOT ABRIDGE.**

The Fourteenth Amendment provides, in pertinent part: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States."  U.S. Const. amend. XIV, sec. 1, cl. 2.  The Fourteenth Amendment Privileges or Immunities Clause was originally intended and understood to incorporate the Bill of Rights – including, specifically, the Second Amendment – as against the states.  It should be given this effect today.

Plaintiffs acknowledge that this argument is foreclosed in this Court by *The Slaughter-House Cases*, 83 U.S. (16 Wall.) 36 (1873), holding that the Privileges or Immunities Clause guarantees only rights that flow from the existence of United States citizenship, such as the rights to diplomatic protection abroad or to access the navigable waterways of the United States. *Slaughter-House* may be binding law, but "'everyone' agrees the Court [has] incorrectly interpreted the Privileges or Immunities Clause."  Richard L. Aynes, *Constricting the Law of Freedom: Justice Miller, the Fourteenth Amendment, and the Slaughter-House Cases*, 70 Chi. Kent L. Rev. 627 (1994);  *see also* Laurence H. Tribe, *Taking Text and Structure Seriously: Reflections on Free-Form Method in Constitutional Interpretation*, 108 Harv. L. Rev. 1121, 1297 n. 247 (1995) ("*[T]he Slaughter-House Cases* incorrectly gutted the Privileges or Immunities Clause"); Akhil Reed Amar, *The Bill of Rights and the Fourteenth Amendment*, 101 Yale L.J. 1193, 1258-59 (1992).  "Legal scholars agree on little beyond the conclusion that the Clause does not mean what the Court said it meant in 1873."  *Saenz* v. *Roe*, 526 U.S. 489, 523 n.1 (1999) (Thomas, J. dissenting) (citations omitted).  Indeed, Justice Thomas, joined by Chief Justice

5

Rehnquist, declared that he "would be open to reevaluating [the Privileges or Immunities Clause's] meaning in an appropriate case." *Saenz*, 526 U.S. at 528 (Thomas, J., dissenting).[1] This is an appropriate such case, considering that no modern court has considered the interplay between the Second Amendment, properly understood, and the Fourteenth Amendment.

Before the Civil War, the Supreme Court held that states were not bound by the Bill of Rights. *Barron ex rel. Tiernan* v. *Mayor of Baltimore*, 32 U.S. (7 Pet.) 243 (1833). *Barron* proved intolerable during Reconstruction. With recalcitrant southern states actively oppressing Americans just freed from slavery, Congress saw the need to constitutionally define American citizenship and imbue that citizenship with meaningful federal protection. Thus the Fourteenth Amendment's first section was designed to overrule two Supreme Court precedents. The first clause dispensed with *Scott* v. *Sandford*, 60 U.S. (19 How.) 393 (1857), which held that people of African descent could not be American citizens or citizens of American states. The Privileges or Immunities Clause was aimed squarely at overruling *Barron*.

> "[I]n drafting section one," Fourteenth Amendment author Rep. John Bingham
>
> looked to *Barron* itself for guidance. Within the words of Chief Justice John Marshall he found clear instructions: "Had the framers of these amendments intended them to be limitations on the powers of the state governments, they would have imitated the framers of the original constitution, and have expressed that intention."

Michael Anthony Lawrence, *Second Amendment Incorporation Through the Privileges or Immunities and Due Process Clauses*, 72 Mo. Law. R. 1, 18 (2007) (hereafter "Lawrence")

---

[1]"Since the adoption of [the Fourteenth] Amendment, ten Justices have felt that it protects from infringement by the States the privileges, protections, and safeguards granted by the Bill of Rights . . . Unfortunately it has never commanded a Court. Yet, happily, all constitutional questions are always open." *Gideon* v. *Wainright*, 372 U.S. 335, 345-46 (1963) (Douglas, J., concurring) (citation omitted).

(quoting Cong. Globe, 42d Cong., 1st Sess. 84 App. (1871); *Barron*, 32 U.S. at 250). The

opening words of the Privileges or Immunities Clause thus imitate directly the command of

Article I, Section 10 referenced by *Barron*: "No state shall." Bingham made explicit that

*Barron*'s suggestion was followed in order to bind the states. Id., at 18-19 and citations therein.

As for the privileges and immunities that "no state shall . . . abridge," these included, at a

minimum, the Bill of Rights. "Congress in 1866 understood perfectly well that section one was

intended to repudiate *Barron*. 'Over and over [John Bingham] described the privileges-

or-immunities clause as encompassing 'the bill of rights' – a phrase he used more than a dozen

times in a key speech . . .'" Lawrence, 72 Mo. L. Rev. at 19 (quoting Akhil Reed Amar, The

Bill of Rights 182 (1998) (hereafter "Amar"). The Fourteenth Amendment's Senate sponsor,

Senator Jacob Howard, explained the Privileges or Immunities Clause's incorporating scope:

> To these privileges and immunities, whatever they may be – for they are not and cannot
> be fully defined in their entire extent and precise nature – to these should be added the
> personal right guarantied and secured by the first eight amendments of the Constitution;
> such as the freedom of speech, . . . *and the right to keep and to bear arms* . . . . The great
> object of the first section of this amendment is, therefore, to restrain the power of the
> States and compel them at all times to respect these great fundamental guarantees.

Cong. Globe, 39th Cong., 1st Sess. 2765-66 (1866) (emphasis added).

These and numerous other widely-reported congressional comments expressing the

Fourteenth Amendment's repudiation of *Barron* were unopposed. Amar, at 186-87. Indeed, the

Fourteenth Amendment's southern opponents understood that the Privileges or Immunities

Clause incorporated the Bill of Rights, as did those who promoted the Fourteenth Amendment's

ratification among the states. *See discussion in* Lawrence, at 22-27. And arguably, the right to

keep and bear arms was the right whose incorporation was most urgently desired. "With respect

to the proposed [Fourteenth] Amendment, Senator Pomeroy described as one of the three "indispensable" "safeguards of liberty . . . under the Constitution" a man's "right to bear arms for the defense of himself and family and his homestead." *Heller*, 128 S. Ct. at 2811 (citing Cong. Globe, 39th Cong., 1st Sess., 1182 (1866)).

Accordingly, until *Slaughter-House*, it was perfectly understood by fans and foes of the Fourteenth Amendment alike that the Privileges or Immunities Clause incorporates the entire Bill of Rights as against the states – including the Second Amendment. For purposes of this motion, it suffices to note that *Slaughter-House*'s evisceration of the Privileges or Immunities Clause was wrong the day it was decided and remains wrong today.

## II.    THE SECOND AMENDMENT IS INCORPORATED UNDER THE FOURTEENTH AMENDMENT'S DUE PROCESS CLAUSE.

*Slaughter-House* may have rendered the Privileges or Immunities Clause meaningless, but the Supreme Court would discover another approach to Fourteenth Amendment incorporation. It is now well-established that the amendment's Due Process Clause has a substantive dimension, and that deprivation of enumerated constitutional rights is thus largely incompatible with due process. Almost every provision of the Bill of Rights considered for incorporation in the modern era has been incorporated.

In the early days of incorporation, the Supreme Court explained that "immunities that are valid as against the federal government by force of the specific pledges of particular amendments have been found to be implicit in the concept of ordered liberty, and thus, through the Fourteenth Amendment, become valid as against the states." *Palko* v. *Connecticut*, 302 U.S. 319, 324-25 (1937). The Second Amendment, given its forceful command and basis in the inherent human

8

right of self-preservation, would surely pass this test.  But the Supreme Court would settle on an analysis proven yet more amenable to incorporation.  The modern incorporation test asks whether a right is "fundamental to the American scheme of justice," *Duncan* v. *Louisiana*, 391 U.S. 145, 149 (1968), or "necessary to an Anglo-American regime of ordered liberty," id., at 150 n.14.  *Duncan*'s analysis suggested looking to the right's historical acceptance in our nation, its recognition by the states, any trend regarding state recognition, and the purpose behind the right.

The right to bear arms clearly meets the modern incorporation standard.  "By the time of the founding, the right to have arms had become fundamental for English subjects."  *Heller*, at 2798 (citations omitted).  The violation of that right by George III "provoked polemical reactions by Americans invoking their rights as Englishmen to keep arms."  Id., at 2799.  The Second Amendment "codified a right inherited from our English ancestors."  Id., at 2802 (citation omitted).  Indeed, when the constitution was considered, demands for a bill of rights prevailed in five of seven constitutional ratifying conventions; the only provisions common to all bill of rights demands were freedom of religion and the right to arms.  Forty-four of the fifty states secure a right to arms in their constitutions, and of these, fifteen are either new or strengthened since 1970.  Eugene Volokh, *State Constitutional Rights to Keep and Bear Arms*, 11 Tex. Rev. Law & Pol. 191 (2006).  And in *Heller*, thirty-two states advised the Supreme Court that the individual Second Amendment "is properly subject to incorporation."  Brief of Amici States Texas, et al., Supreme Court No. 07-290, at 23 n.6.[2]

The Second Amendment's purpose confirms its incorporation.  "The inherent right of self-defense has been central to the Second Amendment right."  *Heller*, at 2818.  Blackstone

---

[2]North Carolina joined the brief's 31 original signatories by letter.

described that right as preserving "'the natural right of resistance and self- preservation,' and 'the right of having and using arms for self-preservation and defence.'" *Heller*, at 2792 (citations omitted). The Supreme Court binds the states to respect unenumerated rights which, like the Second Amendment, are rooted in deference to personal autonomy. Observing that "no right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law," *Cruzan* v. *Dir., Mo. Dept. of Health*, 497 U.S. 261, 269 (1990) (citation omitted), the Supreme Court recognized a right to refuse life-sustaining medical care. Id., at 278; *see also Eisenstadt* v. *Baird*, 405 U.S. 438, 453 (1972) ("the right of the individual . . . to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child"); *Lawrence* v. *Texas*, 539 U.S. 558, 562 (2003) ("liberty of the person both in its spatial and more transcendent dimensions" supports right to consensual intimate relationships); *Rochin* v. *California*, 342 U.S. 165 (1952) (right of bodily integrity against police searches).

It is unfathomable that the states are constitutionally limited in their regulation of medical decisions or intimate relations, because these matters touch upon personal autonomy, but are unrestrained in their ability to trample upon the enumerated right to arms designed to enable self-preservation. If abortion is protected because "[a]t the heart of liberty is the right to define one's own concept of existence," *Planned Parenthood* v. *Casey*, 505 U.S. 833, 851 (1992), the right of armed self-defense against violent criminal attack is surely deserving of incorporation. Indeed, *Casey* invoked the second Justice Harlan's celebrated passage describing the liberty protected by the Due Process Clause as broader than "a series of isolated points pricked out in terms of the

10

taking of property; the freedom of speech, press, and religion; *the right to keep and bear arms*; the freedom from unreasonable searches and seizures; and so on." Id., at 848 (quoting *Poe* v. *Ullman*, 367 U.S. 497, 543 (1961) (Harlan, J., dissenting)) (emphasis added). Liberty cannot now be defined so narrowly as to exclude one of its more obvious attributes.

The Second Amendment also has another purpose, spelled out in the prefatory clause: preservation of the people's ability to act as militia. *Heller*, at 2800-01. The Amendment's framers believed this purpose was "necessary to the security of a free state." U.S. Const. amend. II. By its own terms, the Second Amendment secures a fundamental right.

Three Supreme Court decisions have rejected the Second Amendment's direct application to the states. But these holdings did not discuss Fourteenth Amendment incorporation.

> With respect to *Cruikshank*'s [*United States* v. *Cruikshank*, 92 U.S. 542 (1876)] continuing validity on incorporation, a question not presented by this case, we note that *Cruikshank* also said that the First Amendment did not apply against the States and did not engage in the sort of Fourteenth Amendment inquiry *required by our later cases*.

*Heller*, 128 S. Ct. at 2813 n.23 (emphasis added).

*Heller* noted that *Presser* v. *Illinois*, 116 U.S. 252 (1886) and *Miller* v. *Texas*, 153 U.S. 535 (1894) "reaffirmed that the Second Amendment applies only to the Federal Government." Id. But both these cases precede the incorporation era, and suffer from the same flaw that renders *Cruikshank* non-authoritative: an absence of the "required" modern incorporation analysis. *See also Duncan*, 391 U.S. at 155 (complete non-incorporation "a position long since repudiated"). *Miller*'s observation that the Second Amendment did not bind the states referenced the Fourth Amendment for the same proposition. *Miller*, 153 U.S. at 538. Clearly the city would not cite *Miller*'s language for the proposition that its police force need not obey the Fourth Amendment.

11

In any event, *Miller*'s non-incorporation language is dicta; the case was dismissed because the constitutional claims were not preserved at trial.  *Miller*, 153 U.S. at 537-38.

As for *Presser*, the Supreme Court in that case reasoned that the Second Amendment "is one of the amendments that has no other effect than to restrict the powers of the National government."  *Presser*, 116 U.S. at 265.  Among the other amendments suggested by *Presser* as not being incorporated are the First (citing *Cruikshank*), Fifth,[3] and Sixth.[4]  Id.  *Presser* relied upon cases that are clearly no longer authoritative, and failed to engage in the now-required incorporation analysis that would not be announced until deep into the following century.

The Seventh Circuit once reasoned that *Presser* precluded Second Amendment incorporation.  *Quilici* v. *Village of Morton Grove*, 695 F.2d 261 (7th Cir. 1982).  But *Quilici* has been all but overruled by *Heller*.  *Quilici*'s dicta that "the right to keep and bear handguns is not guaranteed by the Second Amendment," *Quilici*, 695 F.2d at 270 (footnote omitted), is no longer recognized as law.  As for *Presser*'s relevance to incorporation, *Quilici* noted that "appellants offer[ed] no authority, other than their own opinions, to support their arguments that *Presser* is no longer good law or would have been decided differently today."  *Quilici*, 695 F.2d at 270.

Times have changed.  As noted *supra*, the Supreme Court explained that *Cruikshank*, upon which *Presser* relied, did not "engage in the sort of Fourteenth Amendment inquiry required by our later cases."  *Heller*, at 2813 n.23.  *Quilici*'s refusal to consider "historical

---

[3]Takings Clause not incorporated, citing *Barron;* Double Jeopardy Clause not incorporated, citing *Fox* v. *Ohio*, 46 U.S. (5 How.) 410 (1847).

[4]Right to be informed of accusation not incorporated, citing *Twitchell* v. *Commonwealth*, 74 U.S. (7 Wall.) 321 (1869); right to criminal jury trial not incorporated, citing  *Murphy* v. *People*, 2 Cow. 815 (N.Y. 1824).

analysis of the development of English common law and the debate surrounding the adoption of

the second and fourteenth amendments," *Quilici*, 695 F.2d at 270 n.8, key aspects of "the sort of

inquiry" now "required" by *Heller*, at 2813 n.23, further undercut *Quilici*'s authority.

   Since *Quilici*, two circuits concluded *Presser* had been overtaken by the incorporation

doctrine.  Judge Reinhardt, in elucidating the "collective right" theory rejected in *Heller*, agreed

that *Presser* and *Cruikshank* "rest on a principle that is now thoroughly discredited."  *Silveira* v.

*Lockyer*, 312 F.3d 1052, 1066 n.17 (9th Cir. 2002) (citing *United States* v. *Emerson*, 270 F.3d

203, 221 n.13 (5th Cir. 2001)).  After *Heller*, the Seventh Circuit would surely conduct a modern

incorporation analysis, as should this Court.  *Quilici* poses no obstacle.  "Our decisions do not

bind the district court when there has been a relevant intervening change in the law."  *EEOC* v.

*Sears, Roebuck & Co.*, 417 F.3d 789, 796 (7th Cir. 2005) (citation omitted); *cf. Cameo*

*Convalescent Center, Inc.* v. *Percy*, 800 F.2d 108, 110 (7th Cir. 1986).  *Heller*'s limitation of

*Cruikshank*, and instruction that modern incorporation analysis is required to resolve the issue of

Second Amendment incorporation, constitute a relevant intervening change in the law.  The

Village of Morton Grove must understand *Quilici*'s limitations, as it just repealed its handgun

ban in the face of a post-*Heller* challenge.  Robert Channick, *Morton Grove repeals 27-year old*

*gun ban*, Chicago Tribune (July 28, 2008).

## III.     THE CHALLENGED LAWS VIOLATE PLAINTIFFS' RIGHT TO KEEP ARMS.

   Handgun bans of the sort at issue here clearly violate the Second Amendment.  *Heller*, at

2818.  With respect to the other challenged provisions, *Heller* made clear that the standard of

review in Second Amendment cases should be one befitting other enumerated constitutional

rights.  *Heller*, at 2818 n.27.  The Fifth Circuit employs a version of strict scrutiny, allowing

those laws that are "limited, narrowly tailored specific exceptions or restrictions for particular

cases that are reasonable and not inconsistent with the right of Americans generally to

individually keep and bear their private arms as historically understood in this country."

*Emerson*, 270 F.3d at 261.  Regardless of the standard to be applied, the challenged laws fail.

Whatever the value of registration, the requirement that guns be constantly re-registered

burdens gun ownership but serves no useful purpose.  The city already mandates that registrants

immediately notify police of any changes in their registration information, including loss or

disposition of a gun or registration certificate.  Chicago Mun. Code § 8-20-140.  Moreover, "[a]

state may not impose a charge for the enjoyment of a right granted by the Federal Constitution."

*Murdock* v. *Pennsylvania*, 319 U.S. 105 (1943).  The penalty for lapsed or improper registration

rendering the subject firearm "unregisterable" is likewise unconstitutional.  Whatever penalty the

City might wish to impose for non-compliance with a registration scheme (within other

constitutional limitations), permanently banning the gun at issue from lawful possession is an

extreme, unwarranted deprivation of the right to keep arms.

But the non-registerability penalty is not merely a Second Amendment violation.  The

penalty violates the Equal Protection Clause as well, because the would-be registrant is fully

capable of registering an identical firearm – just not the particular firearm whose registration

lapsed or failed for some reason.  The non-registerability penalty thus creates two classes of

identical firearms: one which can be possessed, and one which cannot, and the only distinction

between the two is that an item falling in the latter category was once subject to a registration

failure.  This is precisely the sort of classification held to violate the Equal Protection Clause,

under a rational basis analysis, in *People's Rights Org.* v. *City of Columbus*, 152 F.3d 522, 532

14

(6th Cir. 1998) (unconstitutional to base registerability of firearms upon prior compliance with registration law).  Of course, whatever the standard of review for equal protection analysis in cases touching upon Second Amendment rights, it must be now be higher than rational basis. *See Zobel* v. *Williams*, 457 U.S. 55, 60-61 (1982) (failing lowest standard, no need for testing higher standard).  Defendant itself realized that the practice of rendering guns whose registration has lapsed "unregisterable" frustrates legitimate gun ownership, and that annual re-registration is so burdensome as to discourage compliance with the registration program.

The pre-acquisition registration requirement, at least as applied to plaintiffs, is likewise unconstitutional.  The city has no valid interest regulating the acquisition of firearms outside its borders, and should not ban the registration of firearms lawfully acquired elsewhere if they are otherwise registerable.  And as David Lawson's attempt to register a CMP rifle demonstrates, rigid application of the pre-acquisition rule can bar even innocuous activity.  People should be afforded a reasonable opportunity to comply with the registration requirements.

## CONCLUSION

Defendant is bound to respect Plaintiffs' Second Amendment rights by the Fourteenth Amendment.  There being no factual dispute, Plaintiffs are entitled to summary judgment.

Dated: July 31, 2008                    Respectfully submitted,

Alan Gura (admitted pro hac vice)       David G. Sigale (Atty. ID# 6238103)
Gura & Possessky, PLLC                  Law Firm of David G. Sigale, P.C.
101 N. Columbus Street, Suite 405       4300 Commerce Court, Suite 300-3
Alexandria, VA 22314                    Lisle, IL 60532
703.835.9085/Fax 703.997.7665          630.452.4547/Fax 630.596.4445

By:____/s/ Alan Gura/_____    By:_____/s/ David G. Sigale/_____
    Alan Gura                               David G. Sigale
                                            Attorneys for Plaintiffs

15

## CERTIFICATE OF SERVICE

The undersigned, an attorney of record for the plaintiffs, hereby certifies that on July 31, 2008, he served a copy of the above **Memorandum of Points and Authorities in Support of Motion for Summary Judgment**, and this certificate of service, on:

Michael A. Forti
Mardell Nereim
Andrew W. Worseck
William Macy Aguiar
City of Chicago Department of Law
Constitutional and Commercial Litigation Division
30 N. LaSalle Street, Suite 1230
Chicago, IL 60602

by electronic means pursuant to Electronic Case Filing (ECF). Pursuant to FRCP 5, the undersigned certifies that, to his best information and belief, there are no non-CM/ECF participants in this matter.

The undersigned also effect service of the foregoing on:

Stephen A. Kolodziej (Counsel for Plaintiffs in *NRA* v. *City of Chicago*, No. 08-3697)
Brenner, Ford, Monroe & Scott
33 N. Dearborn Street, Suite 300
Chicago, IL 60602
Fax: 312-781-9202

Stephen Halbrook (Counsel for Plaintiffs in *NRA* v. *City of Chicago*, No. 08-3697)
10560 Main Street, Suite 404
Fairfax, VA 22030
Fax: 703-359-0938

by facsimile and by first class United States Mail, postage pre-paid.

_____/s/David G. Sigale_____

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| OTIS McDONALD, et al., | ) Case No. 08-CV-3645 |
| | ) |
| Plaintiffs, | ) **SEPARATE STATEMENT OF** |
| | ) **MATERIAL FACTS IN** |
| v. | ) **SUPPORT OF PLAINTIFFS'** |
| | ) **MOTION FOR SUMMARY** |
| CITY OF CHICAGO, | ) **JUDGMENT** |
| | ) |
| Defendant. | ) |
| | ) |
| _____ | ) |

## SEPARATE STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

**COME NOW** the Plaintiffs, Otis McDonald, Adam Orlov, Colleen Lawson, David Lawson, Second Amendment Foundation, Inc., and Illinois State Rifle Association, by and through undersigned counsel, and submit their separate statement of material facts as to which there is no genuine dispute in support of their motion for summary judgment.

Dated: July 31, 2008

Respectfully submitted,

Alan Gura (admitted pro hac vice)
Gura & Possessky, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA 22314
703.835.9085/Fax 703.997.7665

David G. Sigale (Atty. ID# 6238103)
Law Firm of David G. Sigale, P.C.
4300 Commerce Court, Suite 300-3
Lisle, IL 60532
630.452.4547/Fax 630.596.4445


By: ___/s/ Alan Gura/_____
      Alan Gura

By: _____/s/ David G. Sigale/_____
      David G. Sigale

Attorneys for Plaintiffs

**SEPARATE STATEMENT OF MATERIAL FACTS IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

<u>THE PARTIES</u>

1.  Plaintiff Otis McDonald is a natural person residing in Chicago, Illinois.

    1.  McDonald Decl., Exh. A, B.

2.  Plaintiff Adam Orlov is a natural person residing in Chicago, Illinois.

    2.  Orlov Decl., Exh. C.

3.  Plaintiff Colleen Lawson is a natural person residing in Chicago, Illinois.

    3.  C. Lawson Decl., Exh. D.

4.  Plaintiff David Lawson is a natural person residing in Chicago, Illinois.

    4.  D. Lawson Decl., Exh. E-G.

5.  Plaintiff Second Amendment Foundation, Inc. is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington.  SAF has over 600,000 members and supporters nationwide, including many in Chicago.  The purposes of SAF include education, research, publishing and legal action focusing on the Constitutional right to privately own and possess firearms, and the consequences of gun control.

    5.  Gottlieb Decl., ¶ 2.

6.  The Second Amendment Foundation has individual members who are impacted by the laws challenged in this litigation.

    6.  Gottlieb Decl., ¶ 3.

7.  Plaintiff Illinois State Rifle Association is a non-profit membership organization incorporated under the laws of Illinois with its principal place of business in Chatsworth, Illinois. ISRA has over 17,000 members and supporters in Illinois, including many in Chicago.  The purposes of ISRA include securing the Constitutional right to privately own and possess firearms within Illinois, through education, outreach, and litigation.

    7.  Pearson Decl., ¶ 2.

| | |
|---|---|
| 8. The Illinois State Rifle Association has individual members who are impacted by the laws challenged in this litigation. | 8. Pearson Decl., ¶ 3. |
| 9. Defendant City of Chicago is a municipal entity. | 9. Answer, ¶ 7. |

JURISDICTION

| | |
|---|---|
| 10. The Court has subject matter jurisdiction over this action as the claims present questions of federal law. | 10. *See generally* Complaint; 28 U.S.C. §§ 1331, 1343. |
| 11. The Court has personal jurisdiction over defendant City of Chicago as the city is located within the jurisdictional reach of the Court. | 11. 28 U.S.C. § 93(a)(1). |

VENUE

| | |
|---|---|
| 12. Venue is proper in this Court as the defendant is located within this judicial district, plaintiffs reside in this judicial district, and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district. | 12. 28 U.S.C. § 1391; *see generally* Complaint; Answer, ¶ 10; Declarations and Exhibits to this motion. |

MATERIAL FACTS

| | |
|---|---|
| 13. Defendant City of Chicago generally bans the home possession of handguns by requiring that all firearms be registered, but refusing the registration of handguns. | 13. Chicago Mun. Code §§ 8-20-040; 8-20-050; Answer, ¶¶ 36, 37. |
| 14. Plaintiff Otis McDonald applied to register a handgun for possession in his Chicago home, but was denied per the city's handgun ban. | 14. McDonald Decl.,¶ 1; Exh. A |
| 15. Plaintiff Adam Orlov applied to register a handgun for possession in his Chicago home, but was denied per the city's handgun ban and pre-acquisition registration requirement. | 15. Orlov Decl., ¶ 1; Exh. C. |
| 16. Plaintiff Colleen Lawson applied to register a handgun for possession in her Chicago home, but was denied per the city's handgun ban. | 16. C. Lawson Decl., ¶ 1; Exh. D |

17.   Plaintiff David Lawson applied to register a handgun for possession in his Chicago home, but was denied per the city's handgun ban and pre-acquisition registration requirement.

17.   D. Lawson Decl., ¶ 1; Exh. D

18.   Each individual plaintiff fears arrest, criminal prosecution, incarceration, and fine if he or she were to possess a handgun within the home.

18.   McDonald Decl., ¶ 2; Orlov Decl., ¶ 2; C. Lawson Decl., ¶ 2; D. Lawson Decl., ¶ 2.

19.   Each plaintiff presently intends to possess a handgun within the home for self-defense, but is prevented from doing so only by the city's active enforcement of the handgun ban.

19.   McDonald Decl., ¶ 2, 3; Orlov Decl., ¶ 2; C. Lawson Decl., ¶ 2; D. Lawson Decl., ¶ 2.

20.   Defendant city mandates that all registered guns be re-registered each year.

20.   Chicago Mun. Code § 8-20-200; Answer, ¶ 39.

21.   If a registered gun is not timely re-registered, that particular gun becomes "unregisterable" and thus illegal to possess in Chicago.

21.   Chicago Mun. Code § 8-20-200(c); Answer, ¶ 39.

22.   Plaintiff McDonald owns a shotgun lawfully registered pursuant to the Chicago Municipal Code.

22.   McDonald Decl. ¶ 4; Exh. B.

23.   Plaintiff David Lawson owns various guns lawfully registered pursuant to the Chicago Municipal Code.

23.   D. Lawson Decl. ¶ 3; Exh. F.

24.   Plaintiffs McDonald and David Lawson fear arrest, criminal prosecution, incarceration, and fine if they were to possess their guns in Chicago without re-registering them annually.

24.   McDonald Decl., ¶ 4; D. Lawson Decl., ¶ 4.

25.   On May 4, 2008, the registration for one of Mr. Lawson's rifles, a K31, lapsed. The rifle thus became permanently unregisterable within the City of Chicago.

25.   D. Lawson Decl., ¶ 5.

26.   Mr. Lawson removed the rifle from his Chicago home and now keeps it outside the City of Chicago.

26.   D. Lawson Decl., ¶ 5.

27.    Mr. Lawson fears arrest, criminal prosecution, incarceration, and fine if he were to possess the lapsed K31 rifle within his Chicago home without benefit of registration.

27.    D. Lawson Decl., ¶ 5.

28.    The unregisterability penalty and re-registration requirement have caused a decline in the number in the number of registered guns, such that the city's registry does not reflect the true firearm population in the city.

28.    Fran Spielman, *Daley backs Mell's gun plan*, Chicago Sun-Times (May 21, 2008); Fran Spielman, *Aldermen extend amnesty to re-register guns in city*, Chicago Sun-Times (June 4, 2008); Hal Dardick, *Committee OKs gun registry changes*, Chicago Tribune (June 4, 2008).

29.    When Alderman Richard Mell had various firearms become unregisterable for lack of timely re-registration, he successfully sponsored an amnesty ordinance permitting the re-registration of lapsed firearms upon payment of a fine.

29.    Fran Spielman, *Daley backs* Sun-Times (May 21, 2008); Fran Spielman, *Aldermen extend amnesty to re-register guns in city*, Chicago Sun-Times (June 4, 2008); Hal Dardick, *Committee OKs gun registry changes*, Chicago Tribune (June 4, 2008).

30.    The amnesty ordinance does not repeal the re-registration annual requirement.

30.    Chicago City Clerk Document S02008-2626, Ordinance of June 11, 2008.

31.    The city also requires that all firearms be registered prior to their acquisition, lest they become unregisterable.

31.    Chicago Mun. Code § 08-20-090; Answer, ¶ 38; Exh. G.

32.    In 2007, plaintiff David Lawson applied to purchase a rifle from the federal Civilian Marksmanship Program ("CMP"). On October 18, 2007, Mr. Lawson was informed via email that his application was granted and the rifle would be delivered to his Chicago home.

32.    D. Lawson Decl., ¶ 6; Exh G

33.  The CMP requires that delivery be made to Mr. Lawson's Chicago home, because that is the address listed both in Mr. Lawson's driving license and Illinois Firearms Owner Identification Card.

33.  D. Lawson Decl., ¶ 6; Exh. G

34.  On October 19, 2007, the CMP rifle arrived at the Lawson home via the U.S. Postal Service.

34.  D. Lawson Decl., ¶ 7; Exh. G

35.  Mr. Lawson thus had approximately a day's notice that he would be receiving the CMP rifle.  Only upon receiving the CMP rifle could Mr. Lawson learn the gun's serial number, necessary to apply for a Chicago registration certificate for the firearm.

35.  D. Lawson Decl., ¶ 7; Exh. G

36.  Mr. Lawson relocated the rifle outside of Chicago and, on November 30, 2007 applied to register the rifle.

36.  D. Lawson Decl., ¶ 8; Exh. G

37.  On December 11, 2007, that application was refused because Lawson did not effectuate registration of the rifle prior to taking possession of it.

37.  D. Lawson Decl., ¶ 8; Exh. G

38.  Mr. Lawson presently intends to possess the CMP rifle within his home, but is prevented from doing so only by the city's active enforcement of the pre-acquisition registration requirement and now unregisterable status of that firearm.

38.  D. Lawson Decl., ¶ 10.

39.  Mr. Lawson fears arrest, criminal prosecution, incarceration, and fine if he were to possess the CMP rifle within his home.

39.  D. Lawson Decl., ¶ 10.

**City of Chicago / Department of Police**
Gun Registration Program
3510 S. Michigan Avenue, Room 1027
Chicago, Illinois 60653
(312) 745-5164



Richard M. Daley, Mayor

Jody P. Weis, Superintendent of Police

June 13, 2008

Mr. OTIS MCDONALD

Chicago, IL

Dear Mr. OTIS MCDONALD:

A review of your application and the records maintained by the Chicago Police Department indicate that you are ineligible to register the below referenced firearm. Pursuant to Chapter 8-20 of the Municipal Code of the City of Chicago, your firearm registration(s) are denied for the following reason:

---- Firearm cannot be registered pursuant to Municipal Code Section 8-20-050. Handguns cannot be registered.

The following firearm(s) are affected by this notification:

| Registration Number | Make/Manufacturer | Model | Serial Number |
|---|---|---|---|
| **D007685L** | **Beretta Usa Corp** | **950** | **C74057** |

Pursuant to the Municipal Code Section 8-20-130, you may file a written request for hearing before the Mayor's License Commission. This request for hearing must be made in writing or by fax within 10 days after receipt of this notice. The request should be sent to:

Municipal Division Chief
Department of Administration Hearings
Municipal Hearings Division
740 N. Sedgwick, 2nd Floor
Chicago, IL 60610

The request can be faxed to (312) 742-8248

If you do not appeal this denial, you are directed to do one of the following: 1) peaceably surrender to the Chicago Police Department the firearm for which you were denied registration, or 2) remove your unregistered firearm(s) from the City of Chicago corporate limits within 10 days fo receiving this notification or within 3 days after notification of an unfavorable decision by the Mayor's License Commission, or 3) otherwise lawfully dispose of your interest in such firearm(s).

If the subject firearm has already been sold or transferred, complete the enclosed Firearm Dispositon Form(CPD-31.610) and mail the hard copy directly to the Gun Registration Program. If you are surrendering a firearm, you should call "911" and a police officer will pick up the weapon. The police officer will send the form to the Gun Registration Program. You Should retain the top copy of this form for your records.

Gun Registration Program
Chicago Police Department

CPD-31.624-c (Rev.11/05)

Chicago Police Department

**CLEAR**


Home » Firearm Registration

Name: **MCDONALD ,OTIS**

1. Applicant Information   ▶ 2.Firearms   ⊱ 3.Review

[ Save ] ⌇ [ Done ]

Steps:   2.Firearms    

## Firearms

| | Registration No | Serial No | Firearm Make | Firearm Model | Firearm Type | Caliber | Barrel length | Registration Status |
|---|---|---|---|---|---|---|---|---|
| Edit | 171187 | N529976V | REMINGTON ARMS CO. | 1100 | SHOTGUN | 12 | 300 | *Jessie W Jones PosTed Aug 8Th 04* EXPIRED ~~STOLEN~~ |
| Edit | D007319L | 1914545 | REMINGTON ARMS CO. | 552 | RIFLE | 22 | 23 | DENIED-MISCELLANEOUS DENIALS |
| Edit | D007321S | 70825 | SPANISH MILITARY | UNKNOWN | PISTOL | 32 | 5 | DENIED-NO FIREARM SOLD OR TRANSFERRED WITHI |
| Edit | D007685L | C74057 | BERETTA USA CORP | 950 | PISTOL | 22 | 9 | DENIED-NO HAND GUNS REGISTERED |
| Edit | R007358L | N771385 | WINCHESTER | 1400 | SHOTGUN | 20 | 27 | NEW REGISTRATION *12 JUN. 2008* |

row(s) 1 - 5 of 5

Copyright © 2002, All rights reserved.

**City of Chicago / Department of Police**
Gun Registration Program
3510 S. Michigan Avenue, Room 1027
Chicago, Illinois 60653
(312) 745-5164



Richard M. Daley, Mayor
Jody P. Weis, Superintendent of Police

May 6, 2008

Mr. ADAM ORLOV

Chicago, IL

Dear Mr. ADAM ORLOV:

A review of your application and the records maintained by the Chicago Police Department indicate that you are ineligible to register the below referenced firearm. Pursuant to Chapter 8-20 of the Municipal Code of the City of Chicago, your firearm registration(s) are denied for the following reason:

---- Firearm cannot be registered pursuant to Municipal Code Section 8-20-050. Hanguns cannot be registered.

---- A registration certificate was not obtained prior to the applicant taking possession of the firearm in violation of 8-20-090. (filing time)

The following firearm(s) are affected by this notification:

| Registration Number | Make/Manufacturer | Model | Serial Number |
|---|---|---|---|
| D007411S | S.I.G. (Swiss Industriel Gesellshaft),Sig-Arms,Sig-Sauer | P220 | G247678 |

Pursuant to the Municipal Code Section 8-20-130, you may file a written request for hearing before the Mayor's License Commission. This request for hearing must be made in writing or by fax within 10 days after receipt of this notice. The request should be sent to:

Municipal Division Chief
Department of Administration Hearings
Municipal Hearings Division
740 N. Sedgwick, 2nd Floor
Chicago, IL  60610

The request can be faxed to (312) 742-8248

If you do not appeal this denial, you are directed to do one of the following: 1) peaceably surrender to the Chicago Police Department the firearm for which you were denied registration, or 2) remove your unregistered firearm(s) from the City of Chicago corporate limits within 10 days fo receiving this notification or within 3 days after notification of an unfavorable decision by the Mayor's License Commission, or 3) otherwise lawfully dispose of your interest in such firearm(s).

If the subject firearm has already been sold or transferred, complete the enclosed Firearm Disposiiton Form(CPD-31.610) and mail the hard copy directly to the Gun Registration Program. If you are surrendering a firearm, you should call "911" and a police officer will pick up the weapon. The police officer will send the form to the Gun Registration Program. You Should retain the top copy of this form for your records.

Gun Registration Program
Chicago Police Department

**City of Chicago / Department of Police**
Gun Registration Program
3510 S. Michigan Avenue, Room 1027
Chicago, Illinois 60653
(312) 745-5164



Richard M. Daley, Mayor
Dana V. Starks, Interim Superintendent of Police

January 3, 2008

Ms. COLLEEN LAWSON

Chicago, IL

Dear Ms. COLLEEN LAWSON:

A review of your application and the records maintained by the Chicago Police Department indicate that you are ineligible to register the below referenced firearm. Pursuant to Chapter 8-20 of the Municipal Code of the City of Chicago, your firearm registration(s) are denied for the following reason:

---- Firearm cannot be registered pursuant to Municipal Code Section 8-20-050. Hanguns cannot be registered.

The following firearm(s) are affected by this notification:

| Registration Number | Make/Manufacturer | Model | Serial Number |
|---|---|---|---|
| D006489S | Smith & Wesson | M&P | MPP8429 |

Pursuant to the Municipal Code Section 8-20-130, you may file a written request for hearing before the Mayor's License Commission. This request for hearing must be made in writing or by fax within 10 days after receipt of this notice. The request should be sent to:

Municipal Division Chief
Department of Administration Hearings
Municipal Hearings Division
740 N. Sedgwick, 2nd Floor
Chicago, IL 60610

The request can be faxed to (312) 742-8248

If you do not appeal this denial, you are directed to do one of the following: 1) peaceably surrender to the Chicago Police Department the firearm for which you were denied registration, or 2) remove your unregistered firearm(s) from the City of Chicago corporate limits within 10 days fo receiving this notification or within 3 days after notification of an unfavorable decision by the Mayor's License Commission, or 3) otherwise lawfully dispose of your interest in such firearm(s).

If the subject firearm has already been sold or transferred, complete the enclosed Firearm Dispositon Form(CPD-31.610) and mail the hard copy directly to the Gun Registration Program. If you are surrendering a firearm, you should call "911" and a police officer will pick up the weapon. The police officer will send the form to the Gun Registration Program. You Should retain the top copy of this form for your records.

Gun Registration Program
Chicago Police Department

**City of Chicago / Department of Police**
Gun Registration Program
3510 S. Michigan Avenue, Room 1027
Chicago, Illinois 60653
(312) 745-5164



Richard M. Daley, Mayor
Jody P. Weis, Superintendent of Police

January 23, 2008

Mr. DAVID LAWSON

Chicago, IL

Dear Mr. DAVID LAWSON:

A review of your application and the records maintained by the Chicago Police Department indicate that you are ineligible to register the below referenced firearm. Pursuant to Chapter 8-20 of the Municipal Code of the City of Chicago, your firearm registration(s) are denied for the following reason:

---- Firearm cannot be registered pursuant to Municipal Code Section 8-20-050.  Hanguns cannot be registered.

---- A registration certificate was not obtained prior to the applicant taking possession of the firearm in violation of 8-20-090.  (filing time)

The following firearm(s) are affected by this notification:

| Registration Number | Make/Manufacturer | Model | Serial Number |
|---|---|---|---|
| D006343L | Springfield Armory,Geneseo,Il | M1 | 3031203 |

Pursuant to the Municipal Code Section 8-20-130, you may file a written request for hearing before the Mayor's License Commission. This request for hearing must be made in writing or by fax within 10 days after receipt of this notice. The request should be sent to:

Municipal Division Chief
Department of Administration Hearings
Municipal Hearings Division
740 N. Sedgwick, 2nd Floor
Chicago, IL  60610

The request can be faxed to (312) 742-8248

If you do not appeal this denial, you are directed to do one of the following: 1) peaceably surrender to the Chicago Police Department the firearm for which you were denied registration, or 2) remove your unregistered firearm(s) from the City of Chicago corporate limits within 10 days fo receiving this notification or within 3 days after notification of an unfavorable decision by the Mayor's License Commission, or 3) otherwise lawfully dispose of your interest in such firearm(s).

If the subject firearm has already been sold or transferred, complete the enclosed Firearm Dispositon Form(CPD-31.610) and mail the hard copy directly to the Gun Registration Program. If you are surrendering a firearm, you should call "911" and a police officer will pick up the weapon. The police officer will send the form to the Gun Registration Program. You Should retain the top copy of this form for your records.

Gun Registration Program
Chicago Police Department

CPD-31.624-c (Rev.11/05)

Page 1 of 1



**A  FIREARMS REGISTRATION**
CITY OF CHICAGO / DEPARTMENT OF POLICE
☐ NEW  ☐ RENEWAL  ☐ TRANSFER  ☐ AMENDMENT

DATE REGISTERED
DAY MONTH YEAR
AUG 2 1 2007

REGISTRATION NO.
R004100L

FIREARM SERIAL NO. 4677
MAKE/MANUFACTURER TTN
MODEL MODEL 1878 COACH
DO NOT WRITE ABOVE DOUBLE LINES

FIREARM TYPE
☐ 1. REVOLVER
☐ 2. RIFLE
☒ 3. SHOTGUN
☐ 4. SEMI-AUTOMATIC PISTOL
☐ 5. OTHER (Describe)

IS THE FIREARM ☐ MODIFIED ☐ INOPERABLE

CALIBER/GAUGE 12 ga.

PREVIOUS CHICAGO GUN REGISTRATION NO.

BARREL LENGTH 20"

FINISH
☐ 1. BLUE  ☐ 4. NICKEL
☒ 2. BLACK  ☐ 5. STAINLESS
☐ 3. CHROME  ☐ 6. TWO TONE

MAGAZINE CAPACITY 2

IL. FIREARM OWNER I.D. NO.    SOCIAL SECURITY NO.

NAME OF APPLICANT (LAST - FIRST- M.I.) LAWSON, DAVID W
DRIVERS LICENSE NO. -    STATE IL

HOME ADDRESS (STREET)    CITY - STATE - ZIP COL CHICAGO, IL    HOME PHONE

APPLICANT'S BUSINESS ADDRESS    BUSINESS PHONE    DATE OF BIRTH    ☒ MALE  ☐ FEMALE    ☐ ORGANIZATION

☒ U.S. CITIZEN ☐ OTHER (Specify)

RACE CODE (CIRCLE ONE)
1 ② 3 4 5 6
7 (Describe Other Below)
See reverse side for race codes.

ARE YOU A PEACE OFFICER?
☐ YES  ☒ NO
If yes, see instruction No. 6 on reverse side.

APPLICANT'S SIGNATURE    DATE
X

CPD-31.562 (Rev. 9/05)

---

**A  FIREARMS REGISTRATION**
CITY OF CHICAGO / DEPARTMENT OF POLICE
☐ NEW  ☐ RENEWAL  ☐ TRANSFER  ☐ AMENDMENT

DATE REGISTERED
DAY MONTH YEAR
AUG 2 1 2007

REGISTRATION NO.
R004101L

FIREARM SERIAL NO. 913008 4309
MAKE/MANUFACTURER MOSIN NAGANT
MODEL M91/30
DO NOT WRITE ABOVE DOUBLE LINES

FIREARM TYPE
☐ 1. REVOLVER
☒ 2. RIFLE
☐ 3. SHOTGUN
☐ 4. SEMI-AUTOMATIC PISTOL
☐ 5. OTHER (Describe)

IS THE FIREARM ☐ MODIFIED ☐ INOPERABLE

CALIBER/GAUGE 7.62 mm

PREVIOUS CHICAGO GUN REGISTRATION NO.

BARREL LENGTH 28.75 in

FINISH
☒ 1. BLUE  ☐ 4. NICKEL
☐ 2. BLACK  ☐ 5. STAINLESS
☐ 3. CHROME  ☐ 6. TWO TONE

MAGAZINE CAPACITY 5

IL. FIREARM OWNER I.D. NO.    SOCIAL SECURITY NO.

NAME OF APPLICANT (LAST - FIRST- M.I.) LAWSON, DAVID W
DRIVERS LICENSE NO. -    STATE IL

HOME ADDRESS (STREET)    CITY - STATE - ZIP CODE CHICAGO IL    HOME PHONE

APPLICANT'S BUSINESS ADDRESS    BUSINESS PHONE    DATE OF BIRTH    ☒ MALE  ☐ FEMALE    ☐ ORGANIZATION

☒ U.S. CITIZEN ☐ OTHER (Specify)

RACE CODE (CIRCLE ONE)
1 ② 3 4 5 6
7 (Describe Other Below)
See reverse side for race codes.

ARE YOU A PEACE OFFICER?
☐ YES  ☒ NO
If yes, see instruction No. 6 on reverse side.

APPLICANT'S SIGNATURE    DATE
X

CPD-31.562 (Rev. 9/05)

| A   FIREARMS REGISTRATION<br>CITY OF CHICAGO/ DEPARTMENT OF POLICE | ☐ NEW<br>☐ RENEWAL | ☐ TRANSFER<br>☐ AMENDMENT | DATE REGISTERED<br>DAY MONTH YEAR | REGISTRATION NO.<br>R003169L |
|---|---|---|---|---|

FIREARM SERIAL NO.
750 304

MAKE/MANUFACTURER / MODEL
SCHMIDT RUBIN i 1931

MAY 0 3 2007   DO NOT WRITE ABOVE DOUBLE LINES

| FIREARM TYPE          ☐ 4. SEMI-AUTOMATIC<br>☐ 1. REVOLVER        PISTOL<br>☒ 2. RIFLE      ☐ 5. OTHER (Describe)<br>☐ 3. SHOTGUN | IS THE FIREARM ☐ MODIFIED<br>☐ INOPERABLE | CALIBER/GAUGE<br>7.5 m m | PREVIOUS CHICAGO GUN<br>REGISTRATION NO. |
|---|---|---|---|

BARREL LENGTH
24"

FINISH
☐ 1. BLUE     ☐ 4. NICKEL
☒ 2. BLACK   ☐ 5. STAINLESS
☐ 3. CHROME ☐ 6. TWO TONE

MAGAZINE CAPACITY  6

II . FIREARM OWNER I.D. NO.        SOCIAL SECURITY NO.

NAME OF APPLICANT (LAST - FIRST- M.I.)        DRIVERS LICENSE NO. -     STATE
LAWSON, DAVID, W                                                      IL

HOME ADDRESS (STREET)        CITY - STATE - ZIP CODE        HOME PHONE
                             CHICAGO, IL

APPLICANT'S BUSINESS ADDRESS        BUSINESS PHONE   DATE OF BIRTH   ☒ MALE   ☐ FEMALE
                                                                     ☐ ORGANIZATION

☒ U.S. CITIZEN ☐ OTHER (Specify)

RACE CODE (CIRCLE ONE)
1  (2)  3   4   5   6
7 (Describe Other Below)
See reverse side for race codes.

ARE YOU A PEACE
OFFICER?
☐ YES     ☒ NO

APPLICANT'S SIGNATURE        DATE
X

If yes, see instruction
No. 6 on reverse side.

CPD-31.562 (Rev. 9/05)

**A   FIREARMS REGISTRATION**
**CITY OF CHICAGO/ DEPARTMENT OF POLICE**

☒ NEW   ☐ RENEWAL   ☐ TRANSFER   ☐ AMENDMENT

DATE REGISTERED
DAY MONTH YEAR
JAN 1 7 2008

REGISTRATION NO.
R006639L

DO NOT WRITE ABOVE DOUBLE LINES

| FIREARM SERIAL NO. | MAKE/MANUFACTURER | MODEL |
|---|---|---|
| A2515 | MAUSER | M.48 |

FIREARM TYPE
☐ 1. REVOLVER
☒ 2. RIFLE
☐ 3. SHOTGUN
☐ 4. SEMI-AUTOMATIC PISTOL
☐ 5. OTHER (Describe)

IS THE FIREARM
☐ MODIFIED
☐ INOPERABLE

CALIBER/GAUGE
8 mm

PREVIOUS CHICAGO GUN REGISTRATION NO.

MAGAZINE CAPACITY   5

BARREL LENGTH   23.6"

FINISH
☒ 1. BLUE   ☐ 4. NICKEL
☐ 2. BLACK   ☐ 5. STAINLESS
☐ 3. CHROME   ☐ 6. TWO TONE

IL. FIREARM OWNER I.D. NO.

SOCIAL SECURITY NO.

NAME OF APPLICANT (LAST - FIRST - M.I.)
LAWSON, DAVID, W

DRIVERS LICENSE NO. -   STATE

HOME ADDRESS (STREET)

CITY - STATE - ZIP CODE
CHICAGO IL,

HOME PHONE

APPLICANT'S BUSINESS ADDRESS

BUSINESS PHONE

DATE OF BIRTH MO.

☒ MALE   ☐ FEMALE
☐ ORGANIZATION

☒ U.S. CITIZEN   ☐ OTHER (specify)

RACE CODE (CIRCLE ONE)
1 ② 3 4 5 6
7 (Describe Other Below)
See reverse side for race codes.

ARE YOU A PEACE OFFICER?
☐ YES   ☒ NO
If yes, see instruction No. 6 on reverse side.

APPLICANT'S SIGNATURE
X

DATE

CPD-31.562 (Rev. 9/05)



---

**A   FIREARMS REGISTRATION**
**CITY OF CHICAGO/ DEPARTMENT OF POLICE**

☒ NEW   ☐ RENEWAL   ☐ TRANSFER   ☐ AMENDMENT

DATE REGISTERED
DAY MONTH YEAR
SEP 2 5 2007

REGISTRATION NO.
R004575L

DO NOT WRITE ABOVE DOUBLE LINES

| FIREARM SERIAL NO. | MAKE/MANUFACTURER | MODEL |
|---|---|---|
| 350-80222 | RUGER | 10/22 |

FIREARM TYPE
☐ 1. REVOLVER
☒ 2. RIFLE
☐ 3. SHOTGUN
☐ 4. SEMI-AUTOMATIC PISTOL
☐ 5. OTHER (Describe)

IS THE FIREARM
☐ MODIFIED
☐ INOPERABLE

CALIBER/GAUGE
.22

PREVIOUS CHICAGO GUN REGISTRATION NO.
R004575L

MAGAZINE CAPACITY   10

BARREL LENGTH   20"

FINISH
☐ 1. BLUE   ☐ 4. NICKEL
☐ 2. BLACK   ☒ 5. STAINLESS
☐ 3. CHROME   ☐ 6. TWO TONE

IL. FIREARM OWNER I.D. NO.

SOCIAL SECURITY NO.

NAME OF APPLICANT (LAST - FIRST - M.I.)
LAWSON DAVID W

DRIVERS LICENSE NO. -   STATE

HOME ADDRESS (STREET)

CITY - STATE - ZIP CODE
CHICAGO IL

HOME PHONE

APPLICANT'S BUSINESS ADDRESS

BUSINESS PHONE

DATE OF BIRTH

☒ MALE   ☐ FEMALE
☐ ORGANIZATION

☒ U.S. CITIZEN   ☐ OTHER (specify)

RACE CODE (CIRCLE ONE)
1 ② 3 4 5 6
7 (Describe Other Below)
See reverse side for race codes.

ARE YOU A PEACE OFFICER?
☐ YES   ☒ NO
If yes, see instruction No. 6 on reverse side.

APPLICANT'S SIGNATURE
X

DATE

CPD-31.562 (Rev. 9/05)

**A   FIREARMS REGISTRATION**
CITY OF CHICAGO DEPARTMENT OF POLICE    ☐ NEW    ☐ TRANSFER    DATE REGISTERED    REGISTRATION NO.
☐ RENEWAL    ☐ AMENDMENT

| FIREARM SERIAL NO. | MAKE/MANUFACTURER | MODEL | JAN 17 2008 | R006638L |
|---|---|---|---|---|
| 24 55 23 | MAUSER | M/96 | MONTH DAY YEAR | DO NOT WRITE ABOVE DOUBLE LINES |

| FIREARM TYPE | IS THE FIREARM | CALIBER/GAUGE | PREVIOUS CHICAGO GUN REGISTRATION NO. |
|---|---|---|---|
| ☐ 4. SEMI-AUTOMATIC PISTOL ☐ 1. REVOLVER ☒ 2. RIFLE ☐ 5. OTHER (Describe) ☐ 3. SHOTGUN | ☐ MODIFIED ☐ INOPERABLE | 6.5 mm | |

MAGAZINE CAPACITY    5

BARREL LENGTH    29.1"

FINISH
☒ 1. BLUE    ☐ 4. NICKEL
☐ 2. BLACK   ☐ 5. STAINLESS
☐ 3. CHROME  ☐ 6. TWO TONE

IL. FIREARM OWNER I.D. NO.    SOCIAL SECURITY NO.

NAME OF APPLICANT (LAST - FIRST- M.I.)
LAWSON  DAVID  W

DRIVERS LICENSE NO. -    STATE    IL

HOME ADDRESS (STREET)    CITY - STATE - ZIP CODE    HOME PHONE
CHICAGO IL

APPLICANT'S BUSINESS    BUSINESS PHONE    DATE OF BIRTH    ☒ MALE  ☐ FEMALE
☐ ORGANIZATION

☒ U.S. CITIZEN ☐ OTHER (Specify)

RACE CODE (CIRCLE ONE)
1  (2)  3  4  5  6
7 (Describe Other Below)
See reverse side for race codes.

ARE YOU A PEACE OFFICER?
☐ YES    ☒ NO
If yes, see instruction No. 6 on reverse side.

APPLICANT'S SIGNATURE    DATE
X



CHICAGO POLICE R.F. VALDARE

CPD-31.562 (Rev. 9/05)

A.   FIREARMS REGISTRATION
CITY OF CHICAGO/ DEPARTMENT OF POLICE

☐ NEW    ☐ TRANSFER
☐ RENEWAL    ☐ AMENDMENT

DATE REGISTERED
DAY MONTH YEAR
JAN 1 9 2008

REC...
R002419L

DO NOT WRITE ABOVE DOUBLE LINE

| FIREARM SERIAL NO. | MAKE/MANUFACTURER | MODEL |
|---|---|---|
| C961064M | REMINGTON | B70 EXPRESS |

FIREARM TYPE
☐ 1. REVOLVER   ☐ 4. SEMI-AUTOMATIC PISTOL
☐ 2. RIFLE   ☐ 5. OTHER (Describe)
☒ 3. SHOTGUN

IS THE FIREARM ☐ MODIFIED
☐ INOPERABLE

CALIBER/GAUGE
12ga

PREVIOUS CHICAGO GUN REGISTRATION NO.

BARREL LENGTH)
20"

MAGAZINE CAPACITY
5

FINISH
☒ 1. BLUE   ☐ 4. NICKEL
☐ 2. BLACK   ☐ 5. STAINLESS
☐ 3. CHROME   ☐ 6. TWO TONE

OWNER I.D. NO.     SOCIAL SECURITY NO.

NAME OF APPLICANT (LAST - FIRST - M.I.)
LAWSON DAVID, W

DRIVERS LICENSE NO.    STATE
IL

HOME ADDRESS/STREET

CITY - STATE - ZIP CODE
CHICAGO IL

HOME PHONE

APPLICANT'S BUSINESS ADDRESS

BUSINESS PHONE    DATE OF BIRTH

☒ MALE   ☐ FEMALE
☒ ORGANIZATION
ARE YOU A PEACE OFFICER?

RACE CODE (CIRCLE ONE)
1   2   3   4   5   6
7 (Describe Other Below)
(See reverse side for race codes.)

APPLICANT'S SIGNATURE    DATE
X

If yes, see instruction
NO. 9 OR REVERSE SIDE

CPD 31.5xx (Rev. xx/xx)



---

A.   FIREARMS REGISTRATION
CITY OF CHICAGO/ DEPARTMENT OF POLICE

☐ RENEWAL    ☐ TRANSFER
☐ AMENDMENT

DATE REGISTERED
DAY MONTH YEAR
JAN 1 9 2007

REC...
R002419L

DO NOT WRITE ABOVE DOUBLE LINE

| FIREARM SERIAL NO. | MAKE/MANUFACTURER | MODEL |
|---|---|---|
| C961064M | REMINGTON | 870 EXPRESS |

FIREARM TYPE
☐ 1. REVOLVER   ☐ 4. SEMI-AUTOMATIC PISTOL
☐ 2. RIFLE   ☐ 5. OTHER (Describe)
☒ 3. SHOTGUN

IS THE FIREARM ☐ MODIFIED
☐ INOPERABLE

CALIBER/GAUGE
12 ga

PREVIOUS CHICAGO GUN REGISTRATION NO.

BARREL LENGTH
20"

MAGAZINE CAPACITY

FINISH
☒ 1. BLUE   ☐ 4. NICKEL
☐ 2. BLACK   ☐ 5. STAINLESS
☐ 3. CHROME   ☐ 6. TWO TONE

FIREARM I.D.     SOCIAL SECURITY NO.

NAME OF APPLICANT (LAST - FIRST - M.I.)
LAWSON DAVID, W

LICENSE NO.    STATE
IL

HOME ADDRESS

CITY - STATE
CHICAGO IL

HOME PHONE

APPLICANT'S BUSINESS ADDRESS

BUSINESS PHONE

☒ MALE   ☐ FEMALE
☐ ORGANIZATION
ARE YOU A PEACE OFFICER?
☐ YES   ☒ NO

☒ OR OTHER   ☐ OTHER (Specify)

RACE CODE
1   2   3   4   5   6
7 (Describe Other Below)
(See reverse side for race codes.)

APPLICANT'S SIGNATURE    DATE

If yes, see instruction
NO. 9 OR REVERSE SIDE

CPD 31.5xx (Rev. 11/05)

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

OTIS McDONALD, et al.,           )   Case No. 08-CV-3645
                                          )
           Plaintiffs,            )   **DECLARATION OF**
                                          )   **OTIS MCDONALD**
      v.                              )
                                          )
CITY OF CHICAGO,            )
                                          )
           Defendant.           )
                                          )
                                          )

## DECLARATION OF OTIS MCDONALD

      I, Otis McDonald, am competent to state, and declare the following based on my personal knowledge:

      1.     I tried to register a handgun for possession inside my Chicago home. Exhibit A is a true and correct copy of the city's rejection of my handgun application (with some personal information redacted).

      2     I fear arrest, criminal prosecution, incarceration, and fine if I were to possess a handgun within my home. I presently intend to possess a handgun within the home for self-defense, but am prevented from doing so by the city's active enforcement of the handgun ban as outlined in their letter to me.

      3.     After my handgun application was denied, I tried to communicate to the police that the handgun had never been in the city, but the police insisted that I completely dispose of the handgun. I did so, and reported that event to the city on the proper form, but have since re-acquired the handgun. The handgun is not kept in the city. I still intend to register the handgun

and would do so but for the fact of the city's handgun ban.

4.    1 own a lawfully registered shotgun. The shotgun registration application was approved by the city on June 12, 2008. On June 19, 2008, I visited the gun registration office and asked about the delay in receiving the registration certificate. An officer I believe is named Passiki gave me a printout of my registration records, and noted in his writing that the shotgun registration was approved June 12. Exhibit B is a true and correct copy of that printout. I've since been told that the certificate itself should be in the mail to me shortly. I fear arrest, criminal prosecution, incarceration, and fine if I were to possess my shotgun in Chicago without re-registering it annually.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the _3/_ day of _July_, 2008

Otis McDonald

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| OTIS McDONALD, et al., | ) Case No. 08-CV-3645 |
| | ) |
| Plaintiffs, | ) **DECLARATION OF** |
| | ) **ADAM ORLOV** |
| v. | ) |
| | ) |
| CITY OF CHICAGO, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

### DECLARATION OF ADAM ORLOV

I, Adam Orlov, am competent to state, and declare the following based on my personal knowledge:

1.    I tried to register a handgun for possession inside my Chicago home. Exhibit C is a true and correct copy of the city's rejection of my handgun application (with some personal information redacted).

2    I fear arrest, criminal prosecution, incarceration, and fine if I were to possess a handgun within my home. I presently intend to possess a handgun within the home for self-defense, but am prevented from doing so by the city's active enforcement of the handgun ban as outlined in their letter to me. I have never brought my handgun into Chicago, except during the time I was employed as a police officer in Evanston, and it was my service weapon.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 30 day of July , 2008

Adam Orlov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OTIS McDONALD, et al., | ) Case No. 08-CV-3645 |
| | ) |
| Plaintiffs, | ) **DECLARATION OF** |
| | ) **COLLEEN LAWSON** |
| v. | ) |
| | ) |
| CITY OF CHICAGO, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DECLARATION OF COLLEEN LAWSON

I, Colleen Lawson, am competent to state, and declare the following based on my personal knowledge:

1.    I tried to register a handgun for possession inside my Chicago home.  Exhibit D is a true and correct copy of the city's rejection of my handgun application (with some personal information redacted).

2    I fear arrest, criminal prosecution, incarceration, and fine if I were to possess a handgun within my home.  I presently intend to possess a handgun within the home for self-defense, but am prevented from doing so by the city's active enforcement of the handgun ban as outlined in their letter to me.  I have never brought my handgun into Chicago.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 29 day of July 2008

_Colleen Lawson_
Colleen Lawson

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| OTIS McDONALD, et al., | ) Case No. 08-CV-3645 |
| | ) |
| Plaintiffs, | ) **DECLARATION OF** |
| | ) **DAVID LAWSON** |
| v. | ) |
| | ) |
| CITY OF CHICAGO, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

## DECLARATION OF DAVID LAWSON

I, David Lawson, am competent to state, and declare the following based on my personal knowledge:

1.      I tried to register a handgun for possession inside my Chicago home.  Exhibit E is a true and correct copy of the city's rejection of my handgun application (with some personal information redacted).

2      I fear arrest, criminal prosecution, incarceration, and fine if I were to possess a handgun within my home.  I presently intend to possess a handgun within the home for self-defense, but am prevented from doing so by the city's active enforcement of the handgun ban as outlined in their letter to me.  I have never brought my handgun into Chicago.

3.      I own various guns lawfully registered in the city, which I keep at my home. Exhibit F is a true and correct copy of my firearm registration certificates (with some personal information redacted).

4.     I fear arrest, criminal prosecution, incarceration, and fine if I were to continue possessing these guns in Chicago without re-registering them annually.

5.     On May 4, 2008, the registration for one of my rifles, a K31, lapsed. The rifle thus became permanently unregisterable within the City of Chicago. I therefore removed the rifle from my Chicago home and now keep it outside the City of Chicago. I fear arrest, criminal prosecution, incarceration, and fine if I were to possess the lapsed K31 rifle within my Chicago home without benefit of registration.

6.     In 2007, I applied to purchase a rifle from the federal Civilian Marksmanship Program ("CMP"). On October 18, 2007, I was informed via email that my application was granted and the rifle would be delivered to my Chicago home. The CMP requires that delivery be made to my Chicago home, because that is the address listed both in my driving license and Illinois Firearms Owner Identification Card.

7.     On October 19, 2007, the CMP rifle arrived at my home via the U.S. Postal Service. I thus had approximately a day's notice that I would be receiving the CMP rifle. Only upon receiving the CMP rifle could I learn the gun's serial number, necessary to apply for a Chicago registration certificate for the firearm.

8.     I relocated the rifle outside of Chicago and, on November 30, 2007 applied to register the rifle. I was unable to complete the registration process any earlier on account of travel. On December 11, 2007, that application was refused because I did not effectuate registration of the rifle prior to taking possession of it.

9.     I appealed the denial of my CMP rifle registration to the city's Department of Administrative Hearings. The city denied my appeal. Exhibit G is a true and correct copy of the administrative decision in that case (with some personal information redacted).

10.     I presently intend to possess the CMP rifle within my home, but am prevented from doing so only by the city's active enforcement of the pre-acquisition registration requirement and now unregisterable status of that firearm.  I fear arrest, criminal prosecution, incarceration, and fine if I were to possess this rifle within my home.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the _31ˢᵗ_ day of _JULY_ , 2008

_____
David W. Lawson

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OTIS McDONALD, et al., | ) Case No. 08-CV-3645 |
| | ) |
| Plaintiffs, | ) **DECLARATION OF** |
| | ) **ALAN GOTTLIEB** |
| v. | ) |
| | ) |
| CITY OF CHICAGO, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

## DECLARATION OF ALAN GOTTLIEB

I, Alan Gottlieb, am competent to state, and declare the following based on my personal knowledge:

1.    I am the Founder and Executive Vice President of the Second Amendment Foundation, Inc.

2.    The Second Amendment Foundation, Inc. ("SAF") is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington.  SAF has over 600,000 members and supporters nationwide, including many in Chicago.  The purposes of SAF include education, research, publishing and legal action focusing on the Constitutional right to privately own and possess firearms, and the consequences of gun control.

3.    SAF has individual members and supporters who are adversely impacted by the laws being challenged in this litigation.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 29ᵀᴴ day of JULY, 2008

_Alan M. Gottlieb_
Alan Gottlieb

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| OTIS McDONALD, et al., | ) Case No. 08-CV-3645 |
| | ) |
| Plaintiffs, | ) **DECLARATION OF** |
| | ) **RICHARD PEARSON** |
| v. | ) |
| | ) |
| CITY OF CHICAGO, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

## DECLARATION OF RICHARD PEARSON

I, Richard Pearson, am competent to state, and declare the following based on my

personal knowledge:

1.     I am the Executive Director of the Illinois State Rifle Association.

2.     The Illinois State Rifle Association ("ISRA") is a non-profit membership

organization incorporated under the laws of Illinois with its principal place of business in

Chatsworth, Illinois. ISRA has over 17,000 members and supporters in Illinois, including many

in Chicago. The purposes of ISRA include securing the Constitutional right to privately own and

possess firearms within Illinois, through education, outreach, and litigation.

3.    ISRA has individual members and supporters who are adversely impacted by the laws being challenged in this litigation.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 30 day of July, 2008

_Richard A Pearson_
Richard Pearson