IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

OTIS MCDONALD, ADAM ORLOV,   )
COLLEEN LAWSON, DAVID LAWSON,   )
SECOND AMENDMENT FOUNDATION,   )
INC., and ILLINOIS STATE RIFLE   )    Honorable Milton I. Shadur
ASSOCIATION,   )
  )    Case No. 08-CV-3645
        Plaintiffs,   )
  )
     v.   )
  )
CITY OF CHICAGO, and MAYOR   )
RICHARD M. DALEY,   )
  )
        Defendants.   )
  )

## MOTION TO VACATE AND TO
## OPPOSE ORDER REASSIGNING CASE

Plaintiffs, Robert Klein Engler, Dr. Gene A. Reisinger, National Rifle Association of America, Inc. ("NRA Plaintiffs"), by and through their counsel, Freeborn & Peters LLP, file this Motion to Reconsider Order Finding Relatedness, and in support hereof state as follows:

### INTRODUCTION

The Village of Oak Park's ("Oak Park") Motion for Reassignment provides virtually no factual or legal support for its arguments that the NRA Plaintiffs' case should be reassigned to this Court. On that basis alone, the Motion fails to meet this District's local rules for a motion for reassignment. But even if Oak Park had attempted to provide more detail, that detail would illuminate many, many differences between the Oak Park and Chicago firearms ordinances at issue and the facts underlying these cases. Those differences render the two actions insusceptible to a finding of relatedness and make reassignment improper.

The Oak Park ordinance is a broad, explicit ban on the possession of all handguns and on the transportation of rifles and shotguns without certain licenses. Chicago's ordinance, on the other hand, is a registration ordinance that prohibits the new registration of handguns and sets the procedure for registering other types of firearms. Unlike Oak Park, the Chicago ordinance does not ban the transportation of rifles and shotguns. Moreover, Oak Park provides certain discriminatory exceptions to its ban that the Chicago ordinance does not contemplate. As a result of these and other differences, the plaintiffs in the two cases are seeking different types of relief specific to the idiosyncrasies of the two ordinances.

Complicating matters even further, the NRA Plaintiffs and the plaintiffs in this action are represented by different counsel. Given the differences between the two ordinances, and the facts underlying the cases, the use of separate counsel likely will lead to different strategies and approaches that are not suited to both sets of plaintiffs. The Court therefore should vacate its order finding the two cases related and should not reassign the Oak Park matter.

## PROCEDURAL HISTORY

The current motion is a culmination of a somewhat complex procedural history involving three separate cases. That history can be summarized as follows:

- June 26, 2008 – Original plaintiffs in this action ("*McDonald* Plaintiffs") file complaint challenging Chicago's firearms ordinance. (Dkt. No. 1.)

- June 27, 2008 – NRA Plaintiffs file their complaint against Oak Park ("*Oak Park* Complaint" or "*Oak Park* Case") challenging Oak Park's firearms ordinance. That case is assigned to Judge Lefkow as Case No. 08-3696.

- June 27, 2008 – NRA and four other plaintiffs file a separate case against the City of Chicago challenging Chicago's firearms ordinance. That case is assigned to Judge Leinenweber as Case No. 08-3697.

- July 22, 2008 – City of Chicago seeks reassignment of Case No. 08-3697 to this Court's calendar. (Dkt. No. 22.)

- July 23, 2008 – Oak Park moves to reassign Case No. 08-3696 to this Court's Calendar and seeks consolidation with this case. (Dkt. No. 24.)[1]

- July 25, 2008 – Court enters an order reassigning Case No. 08-3697 to this Court's calendar, but does not consolidate that case with this case. (Dkt. No. 26.)

- July 29, 2008 – Court grants Oak Park's Motion for Reassignment, but provides the NRA Plaintiffs an opportunity to oppose reassignment. (Dkt. Nos. 27, 36.) The Court does not consolidate the Oak Park Case with this case.

Thus, although the Court has ordered reassignment of the NRA's Chicago case and the *Oak Park Case* to this Court, neither of those matters has been consolidated with this case. This Motion seeks to have the Court vacate its order reassigning the *Oak Park* Case.

## **FACTUAL BACKGROUND**

### The *McDonald* Complaint

The *McDonald* Complaint focuses solely on Chicago's firearms ordinance, and alleges that the Chicago Municipal Code § 8-20-040 *et. seq.*, which describes the process for registering firearms in the City of Chicago, violates the Second Amendment to the United States Constitution because it prohibits the registering of handguns within the City of Chicago. *See* Chicago Mun. Code § 8-20-050. (Dkt. No. 1, *McDonald* Compl., at ¶¶ 36-59.) According to the *McDonald* Plaintiffs, the prohibition upon registering handguns violates the Second Amendment because handguns must be registered in order to possess them in Chicago. Chicago Mun. Code §8-20-040(a). (Dkt. No. 1, *McDonald* Compl., at ¶¶ 47-51.) The *McDonald* Plaintiffs seek relief under 42 U.S.C. § 1983. (*Id.* at ¶ 9.)

In addition to the allegations regarding handguns, the *McDonald* Plaintiffs also allege that Chicago's annual registration requirement for non-handgun firearms, its requirement that individuals register a firearm prior to taking possession, and a prohibition on registering firearms

---

[1] Oak Park does not expressly seek consolidation, which technically is distinct from reassignment. Oak

after an annual registration has lapsed violate their rights under the Second and Fourteenth Amendments. (*Id.* at ¶¶ 52-59.) The annual registration requirement is promulgated under section 8-20-200 of the code. The prior-registration requirement is codified at section 8-20-090(a). The prohibition on re-registration after an annual registration has lapsed is codified at section 8-20-200(c).

**The NRA *Oak Park* Complaint**

The Oak Park Complaint, attached hereto as Exhibit A, differs significantly from the *McDonald* Complaint. First, none of the *McDonald* Plaintiffs are named in the *Oak Park* Complaint. But more importantly, rather than describing a firearm registration process, the NRA Plaintiffs allege that the Oak Park ordinance simply bans handguns: "It shall be unlawful for any person to possess or carry, or for any person to permit another to possess or carry on his/her land or in his/her place of business any firearm [handgun]." Oak Park Mun. Code § 27-2-1. The NRA Plaintiffs allege that the Oak Park ordinance also has irrational exceptions to its handgun ban that allow certain theater performers and licensed firearm collectors to possess handguns. (*See Oak Park* Compl. at ¶¶ 12-13, citing Oak Park Mun. Code §§ 27-2-1(K) and (L)). The NRA Plaintiffs allege that the prohibition on possessing handguns violates the Second Amendment and that the exceptions for theater performers and licensed firearm collectors violate the Equal Protection Clause of the Fourteenth Amendment. (*See Oak Park* Compl. at ¶¶ 23-29.)

In addition to the handgun ban, the NRA Plaintiffs allege that Oak Park prohibits the transportation of handguns, rifles and shotguns in a vehicle, and that irrational exceptions exist only for the transportation of rifles and shotguns by licensed hunters or fishermen. (*See Oak Park* Compl. at ¶ 11, citing Oak Park Mun. Code 27-2-1(H) and (L)). The NRA Plaintiffs allege

---

Park's motion does, however, suggest that it is seeking consolidation by asking the court to reassign the Oak Park case "under" and "with" this case. (*See* Oak Park. Mot. at ¶ 20 and Wherefore Clause.)

that the prohibition on transporting handguns, rifles and shotguns violates their rights under the Second Amendment and that the exceptions for hunters and fishers violate the Equal Protection Clause of the Fourteenth Amendment. (*See Oak Park* Compl. at ¶¶ 23-29.)  The NRA Plaintiffs also allege that the prohibition on transporting handguns, rifles, and shotguns is preempted by 18 U.S.C §926A. (*See id.* at ¶¶ 30-34.)

## ARGUMENT

Oak Park's Motion for Reassignment fails to provide the required detail for a finding of relatedness or for reassignment.  The Court should deny the motion on that basis alone.  But even if Oak Park included that detail, it would show that the Chicago and the Oak Park municipal codes set forth materially different laws regarding the possession, registration, and transportation of firearms.  The Court therefore cannot find that all of the criteria for reassignment have been met, and therefore should vacate its order reassigning the *Oak Park* Case.

## I.    Oak Park Fails to Allege Sufficient Detail to Find the *Oak Park* and *McDonald* Cases Related or to Warrant Reassignment.

Under this Court's local rules, in order to successfully move for a finding of relatedness and to reassign, Oak Park must set forth sufficient detail to find the cases related and to find that reassignment will be beneficial.  Oak Park's motion fails to set forth sufficient detail for either finding.

### A.    Oak Park Provides Insufficient Detail to Find the Cases Related.

Under Local Rule 40.4(a), two or more civil cases may be related if one or more of the following conditions are met: (1) the cases involve the same property; (2) the cases involve some of the same issues of fact or law; (3) the cases grow out of the same transaction or occurrence; or (4) in class action suits, one or more of the classes involved in the cases is or are the same.  Local

District Court Rules for the Northern District of Illinois ("LR") 40.4(a). In this case, only item 2 – the requirement that the cases involve some of the same issues of law or fact – is at issue.

In order to move for a finding of relatedness, a party must comply with Local Rule 40.4(c)(1). Under that rule, a motion for a finding of relatedness must identify particular issues of fact or law that are common to all plaintiffs. *Donahue v. Elgin Riverboat Resort*, No. 04 C 816, 2004 WL 2495642, at *1 (N.D. Ill. Sept. 28, 2004).[2] Asserting "that the cases . . . generally involve the same types of allegations [is] not sufficient to show the cases are related pursuant to Local rule 40.4(a)." *Id.* at *3. Likewise, allegations that the cases both are brought under the same federal statute and contain similar, but distinct, fact patterns is not sufficient to find cases related. *See id.* at *1. In *Donahue*, for example, the plaintiffs argued that five cases all had been brought under Title VII and that each alleged discriminatory hiring practices by the same defendant. *See id.* at *1. The Court held that those allegations were insufficient to find the cases related. *See id.* at *3. The Court held that, although the cases shared those two aspects, the plaintiffs failed "to identify any particular issues of fact or law that are common to all plaintiffs." *Id.* at *3.

Here, as in *Donahue*, Oak Park has not alleged sufficient similarities of law or fact to find the *Oak Park* and *McDonald* cases related. Like the plaintiffs in *Donahue*, Oak Park merely makes conclusory allegations: "all three cases involve Second Amendment and equal protection claims against municipal gun regulations. Moreover, both NRA cases involve challenges based upon the federal Firearms Owners' Protection Act of 1986." (Oak Park Mot. at ¶ 16.) But *Oak Park has not described a single fact in common between the NRA and McDonald Plaintiffs*. No doubt that is because the NRA plaintiffs and the *McDonald* Plaintiffs – none of which are plaintiffs in both cases – have been affected by two completely separate and substantively

different ordinances.[3]    And Oak Park has failed to explain how the Second or Fourteenth Amendments will apply in the same manner when the two ordinances are substantially different. The Court therefore should hold that Oak Park's Motion for Reassignment fails to adequately allege relatedness pursuant to Local Rule 40.4(c)(1).

### B.    Oak Park Does Not Adequately Set Forth The Necessary Elements For Reassignment.

As with its description of relatedness, Oak Park fails to set forth in sufficient detail how reassigning the *Oak Park* case will meet the standards set forth by this District's local rules.    In order for a party to successfully move for reassignment, it must demonstrate that the two cases meet all the criteria of Local District Court Rule 40.4(b).    Those requirements are:

(1) both cases are pending in this Court;
(2) the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort;
(3) the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially; and
(4) the cases are susceptible of disposition in a single proceeding.

Under Local Rule 40.4(c)(2), a motion for reassignment must "indicate the extent to which the conditions required by section (b) will be met if the cases are found to be related." *See* LR 40.4(c)(2). "Courts have interpreted LR 40.4(c) to impose an obligation on movants to specifically identify why each of the four conditions for reassignment under LR 40.4(b) is met." *Sunstar, Inc. v. Alberto-Culver Co., Inc.* No. 01 C 0736, 2003 WL 21801428, at *3 (N.D. Ill. Aug. 1, 2003).    Courts therefore "may deny a motion to reassign if a party fails to sufficiently apply the facts of the case to each of 40.4(b)'s requirements." *Machinery Movers, Riggers, and*

---

[2] All unpublished decisions are attached in alphabetical order as Group Exhibit B.
[3] Those differences are discussed more fully in Section II A of this Motion.  Briefly, though, the Chicago Ordinance is a registration ordinance while Oak Park's ordinance is an outright ban on handguns. Moreover, Oak Park's ordinance is broader, encompassing a ban on the transportation of shotguns and

*Machinery Erectors, Local 136 Defined Contribution Retirement Fund v. Joseph/Anthony, Inc.*, No. 03 C 8707, 2004 WL 1631646, at *3 (N.D. Ill. July 16, 2004). Conclusory allegations that reassigning a case will save substantial judicial time and effort, or that both cases are susceptible to disposition in a single proceeding, are not sufficient to allow reassignment. *Id.; see also Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, No. 02 C 5893, 2003 WL 21011757, at *3 (N.D. Ill. May 5, 2003) (holding that merely providing legal conclusions does not satisfy Local Rule 40.4(c)). Rather, the party moving for reassignment must explain *how* reassignment will result in substantial savings of judicial resources and *why* the cases are susceptible to disposition in a single proceeding. *Machinery Movers*, 2004 WL 1631646, at *3; *Sunstar*, 2003 WL 21801428, at *3; *Lawrence*, 2003 WL 21011757, at *3.

In this case, Oak Park's motion provides *no* explanation of how judicial resources will be conserved by reassignment. The motion fails on that basis alone. And Oak Park *has offered nothing but conclusory opinions* that the two cases are susceptible to disposition in a single proceeding. The most specific statement Oak Park makes is that the cases "involve similar legal arguments and similar litigation trajectories" and that they involve "legal interpretations of similar local gun control ordinances as they relate to the U.S. Constitution." (*Oak Park* Compl. at ¶ 18.) Simply setting forth a few alleged "similarities" between the cases does not explain why they are susceptible to disposition in single proceeding. Oak Park does not explain how the Court will coordinate different discovery or how it will decide separate issues of law and fact in separate motions for summary judgment concerning *different* ordinances. Accordingly, the Court should deny Oak Park's motion for failing to set forth in sufficient detail why the *Oak Park* Case should be reassigned.

---

rifles that Chicago's ordinance does not contain. Each city's ordinance also contains different exceptions to their general prohibitions that will require separate analysis.

II.    **Reassignment of the *Oak Park* Case Is Not Warranted.**

Even if Oak Park had adequately moved for a finding of relatedness and for reassignment, reassignment would *violate* Local Rule 40.4(b)(2) and (4). The cases are not susceptible to disposition in a single proceeding and the Court will not save substantial judicial time and effort by reassigning the *Oak Park* Case.

A.    **The *Oak Park* and *McDonald* Cases Are Not Susceptible to Disposition in a Single Proceeding.**

Reassignment is not proper where the two subject cases are not susceptible to disposal in a single proceeding. *See* LR 40.4(b)(4). "Where 'individual questions of fact and law in each case outweigh the common, and consolidation of the later filed case with the earlier is likely to cause substantial delay,'" reassignment is inappropriate. *Snitchler v. Allsteel, Inc.*, No. 95 C 4975, 1995 WL 769327, at *2 (N.D. Ill. Dec. 28, 1995). Before a case can be reassigned, courts generally require that similar issues of both law and fact predominate over the differences. *Lawrence*, 2003 WL 21011757, at * 3. Thus, where the legal claims in the two cases differ, and will require separate motions for summary judgment, the cases usually cannot be disposed of in a single proceeding. *Williams v. Walsh Constr.*, No. 05 C 6807, 2007 WL 178309, at *2 (N.D. Ill. Jan. 16, 2007). And even where there are some issues of fact and law in common, those issues must outweigh the differences in order to find reassignment is proper. *Lawrence*, 2003 WL 21011757, at *3.

Here, there simply are too many legal and factual differences in the cases to dispose of them in a single proceeding. Those differences will create the need for separate discovery, separate legal analyses, and separate dispositive motions. The differences, combined with the

fact that there is no overlap amongst the parties, outweigh any similarities between the cases, and make reassignment of the *Oak Park* Case improper.

First, the very ordinances at issue have material differences that will require different legal analyses. The Oak Park Ordinance, for example, *prohibits* the transportation of rifles and shotguns without specified licenses in addition to its outright ban on handguns. *See* Oak Park Mun. Code § 27-2-1. The Chicago Ordinance, on the other hand, *permits* possession and transportation of rifles and shotguns as long as they are registered in the city. Because the Supreme Court's decision in *District of Columbia v. Heller*, No. 07-290 (S. Ct. June 26, 2008) only considered an ordinance that applied to handguns, that decision's application to the Oak Park Ordinance may differ significantly from its application to the Chicago Ordinance. The very existence of this extra portion of the Oak Park Ordinance will require different legal analysis and different motions for summary judgment in the two cases, and may require different discovery. The two cases therefore are not susceptible to disposition in a single proceeding.

More generally, the two ordinances differ in the manner in which they prohibit handgun possession. The Oak Park Ordinance creates an *outright ban* on handgun possession. *See* Oak Park Mun. Code § 27-2-1. The Chicago Ordinance, on the other hand, focuses on the *registration and re-registration* of firearms, including handguns. *See* Chicago. Mun. Code § 8-20-40(a)-(c). As a result, the *McDonald* Complaint contains several counts challenging the registration renewal process. (*See McDonald* Compl. at ¶¶ 52-59.) For example, the *McDonald* Plaintiffs challenge Chicago's requirement that individuals re-register firearms each year and Chicago's requirement that individuals register firearms prior to taking possession of them. (*McDonald* Compl. at ¶¶ 52-55.) The *McDonald* Plaintiffs also challenge Chicago's prohibition

on re-registering firearms if an individual allows the annual registration to lapse. (*Id.* at ¶¶ 56-59.) Oak Park's ordinance does not speak to registration at all.

The two ordinances also approach exceptions to their handgun prohibitions differently. Chicago's ordinance provides for "grandfathering" in those who owned handguns prior to the ordinance's enactment. *See* Chicago Mun. Code § 8-20-50(c). Oak Park does not provide any such exception. Oak Park does, however, provide different exceptions to its ordinance. Oak Park irrationally discriminates in favor of theater groups and licensed firearm dealers by allowing individuals in those groups to possess firearms, including handguns, under certain circumstances. *See* Oak Park Mun. Code at § 27-2-1(K)-(L). Chicago does not have similar exceptions. The manner in which the Court will apply the Second and Fourteenth Amendments to these varying exceptions thus may differ significantly under *Heller*.

The differences between Chicago and Oak Park's ordinances also have resulted in the parties seeking different types of relief. The *Oak Park* Complaint seeks a remedy under the Equal Protection Clause relating to Oak Park's irrational exemptions for theater groups and licensed gun collectors. (*Oak Park* Compl. at ¶¶ 26-29.) The *McDonald* Plaintiffs do not seek a remedy under the Equal Protection clause relating to any of the exemptions to the Chicago ordinance. The *McDonald* Plaintiffs, do however, seek a remedy under the Equal Protection Clause relating to Chicago's prohibition on re-registering firearms after the annual registration has lapsed -- an issue not in play in the *Oak Park* Case. (*See McDonald* Compl. at ¶¶52-59.)

Finally, as a result of Oak Park's prohibition on the transportation of firearms, the *Oak Park* Complaint also challenges those provisions on the grounds that they are preempted by 18 U.S.C. § 926A, which allows for transportation shotguns, rifles, and handguns. (*Oak Park*

Compl. at ¶¶ 30-34.)  The *McDonald* Plaintiffs do not have any counts challenging transportation

provisions under section 926A, and thus preemption is not an issue.[4]

In addition to the many disparate legal issues, factual differences also make reassignment

inappropriate.  The *McDonald* and *Oak Park* cases do not share a single plaintiff or defendant in

common.  The dramatic difference in the parties suggests that reassigning the *Oak Park* Case to

this Court will create the need for divergent discovery.  In particular, Chicago's registration

requirements will result in discovery regarding the McDonald Plaintiffs' registration efforts.

That discovery will not be necessary in the *Oak Park* Case because registration is not at issue.

Other significant factual differences exist as well.  The *Oak Park* Complaint alleges that

the NRA Plaintiffs wish to transport firearms within, and through, the Village of Oak Park.  (*Oak*

*Park* Compl. at ¶¶ 18-19.)  The *McDonald* Complaint makes no allegations regarding the

transportation of firearms.  This difference is significant because the *Heller* decision did not

specifically address the transportation of firearms.  It is therefore possible that the Oak Park

parties will engage in significant analysis of the differences between the possession of a firearm

in the home and the transportation of a firearm outside the home.

These factual and legal differences far outweigh any similarities among the *Oak Park* and

*McDonald* cases.  This is particularly true in light of the recent *Heller* decision.  The Court will

be required to apply separate legal analyses to the two ordinances and to the facts underlying

each case.  And no doubt the plaintiffs in each case ultimately will file separate motions for

---

[4] Oak Park argues that the case brought by separate defendants against the City of Chicago at No. 08-3697 contains a § 926A claim and thus the two cases are related.  (*Oak Park* Compl. at ¶ 16.)  But that fact is irrelevant.  Oak Park seeks to have the *Oak Park* Case found related to, and reassigned "under" and "with" this case, not with Case No. 08-3697.  In any event, the differences between the *Oak Park* and Chicago ordinances still are too great to reassign the *Oak Park* Case to this Court.

summary judgment.[5]    The cases therefore are not susceptible to disposition in a single proceeding and reassignment is not warranted.

### B.    Reassigning the *Oak Park* Case Will Not Result in Judicial Efficiency.

The fact that the cases are not susceptible to disposition in a single proceeding dispels the notion that judicial economy will be served by reassignment.  After all, "if the cases will require different discovery, legal findings, defenses or summary judgment motions, it is unlikely that reassignment will result in a substantial judicial savings."  *Williams*, 2007 WL 178309, at *3 (*citing Hollinger Int'l, Inc. v. Hollinger, Inc.*, No 04 C 0698, 2004 WL 1102327, at *2 (N.D. Ill. May 5, 2004)).  Different discovery, defenses, summary judgment motions, and legal findings often will be required where the parties in the two cases are substantially different and where the legal claims in the two cases differ.  *See Hollinger*, 2004 WL 1102327, at *2.    Thus, reassignment generally is not warranted where there is little overlap amongst the parties in the separate proceedings and where there are different legal claims.  *Id.*; *see also Goldhamer v. Nagode*, No. 07 C 5286, 2007 WL 4548228, at *2 (N.D. Ill. Dec. 20, 2007).

In a case similar to this one – where two sets of plaintiffs sought relief in part under the same federal statute but also brought separate claims under different facts – the court *refused* to reassign one of the cases.  In *Goldhamer*, both sets of plaintiffs brought section 1983 actions for false arrest that occurred at the same location on the same day and during the same event.  *See* 2007 WL 4548228, at *1.  Both sets of plaintiffs also alleged that Chicago ordinances violated the First and Fourteenth Amendments.  The court held that the plaintiffs in the two cases alleged different factual scenarios (for example, the presence of different arresting officers), and that "additional legal claims . . . will require different discovery and motions, and will generally raise

---

[5] In fact, this has already happened.  As discussed further *infra*, the *McDonald* Plaintiffs already filed a motion for summary judgment that does not seek any relief from the Oak Park ordinance. (Dkt. No. 32.)

different legal issues than are presented to this court . . . ." *See id.; see also Williams,* 2007 WL 178309, at *3 (holding that additional claims prevented reassignment).

As in *Goldhamer,* the many legal and factual differences between the cases, including the differences among the plaintiffs, the differences between the two cities' ordinances, and the differences in the claims for relief, will require separate discovery, separate legal analyses, and separate dispositive motions. As a result, the Court will be required to make separate rulings and findings in the two cases even if the *Oak Park* Case is reassigned. As in *Goldhamer,* these differences outweigh the superficial similarities of bringing separate cases under the same Constitutional Amendments and will make reassignment inefficient.

In addition to the legal and factual disparities, the fact that the *McDonald* and NRA Plaintiffs have separate counsel also will add to the inefficiency of reassigning the *Oak Park* Case. A glaring example of those difficulties already has occurred. After the Court granted the Village of Oak Park's motion to reassign the *Oak Park* Case to this Court's calendar (*see* Dkt. No. 27.), but before the Oak Park Plaintiffs could even be heard on any substantive issue in the case, the *McDonald* Plaintiffs filed a motion for summary judgment. (*See* Dkt. No. 32.)

Clearly, the *McDonald* Plaintiffs' counsel did not consult the NRA Plaintiffs' counsel on the appropriate strategy for, or the timing of, pursuing summary judgment. The *McDonald* Plaintiffs' motion does nothing to advance the NRA Plaintiffs' claims regarding: (1) Oak Park's ban on the possession of handguns, (2) the exceptions to that prohibition, (3) Oak Park's prohibition on transporting rifles or shotguns, (4) the exceptions to those prohibitions, or (5) the preemption issue raised by the Oak Park Plaintiffs' complaint. Thus, already, the NRA and *McDonald* Plaintiffs are in very different procedural postures should the *Oak Park* Case be reassigned. As a result, no time or effort will be saved by reassigning the *Oak Park* Case.

## CONCLUSION

Oak Park's Motion for Reassignment is woefully inadequate at demonstrating relatedness or the need to reassign the *Oak Park* Case. But even if the motion provided more information, the myriad differences between the *Oak Park* Case and the *McDonald* Case present too many divergent legal and factual issues for the Court to reassign the *Oak Park* Case. The differences will prevent the Court from deciding the cases in a single proceeding and no increase in judicial economy will result from reassignment.

WHEREFORE, Plaintiffs Robert Klein Engler, Dr. Gene A. Reisinger and National Rifle Association of America, Inc. respectfully request that the Court vacate its order reassigning case No. 08 C 3693, and grant such further relief as the Court deems just and appropriate.

Dated: August 8, 2008

Respectfully submitted,

**ROBERT KLEIN ENGLER, DR. GENE A. REISINGER, and NATIONAL RIFLE ASSOCIATION OF AMERICA, INC.**

BY:    s/ William N. Howard
          One of Their Attorneys

Local Counsel:
William N. Howard, Esq.
**FREEBORN & PETERS LLP**
311 S. Wacker Dr., Suite 3000
Chicago, Illinois   60606
(312) 360-6415

Stephen P. Halbrook, Esq.
10560 Main St., Suite 404
Fairfax, VA  22030
(703) 352-7276
(*Pro Hac Vice* pending)

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., ROBERT KLEIN ENGLER, and DR. GENE A. REISINGER,<br><br>　　　Plaintiffs,<br><br>v.<br><br><br>VILLAGE OF OAK PARK and DAVID POPE, President,<br><br>　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

FILED: JUNE 27, 2008
08CV3696
JUDGE LEFKOW
MAGISTRATE JUDGE ASHMAN
EDA

Civil Action No.

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

Plaintiffs, NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., ROBERT KLEIN

ENGLER and DR. GENE A. REISINGER, by and through their attorneys, Stephen P. Halbrook,

Esq. and William N. Howard, Esq. (the latter of Freeborn & Peters LLP), as and for their complaint

against Defendants, VILLAGE OF OAK PARK and DAVID POPE, its President, state as follows:

1.　　This is an action to vindicate the rights of residents of Oak Park, Illinois, to keep and

bear arms as guaranteed by the Second and Fourteenth Amendments to the United States

Constitution, which guarantees the right of law-abiding citizens to keep handguns in the home for

the lawful defense of their families and for other lawful purposes.

## PARTIES

2.　　Plaintiff, National Rifle Association of America, Inc. (hereafter "NRA"), is a non-

profit association incorporated under the laws of New York, with its principal place of business in

Fairfax, Virginia.　NRA has a membership of 4 million persons, some of which reside in or travel

through Oak Park, Illinois.　The purposes of the NRA include the protection of the right of citizens

to have firearms for the lawful defense of their families, persons, and property, and to promote public safety and law and order. NRA brings this action on behalf of itself and its members.

3.    Plaintiff, Robert Klein Engler ("Engler"), is a resident of Oak Park, Illinois, a citizen of the United States, and a member of the NRA.

4.    Plaintiff, Dr. Gene A. Reisinger ("Reisinger"), is a resident of Oak Park, Illinois, a citizen of the United States, and a member of the NRA.

5.    Numerous members of Plaintiff NRA who are citizens of the United States but not residents of Oak Park frequently travel through Oak Park, Illinois.

6.    Defendant, David Pope ("Pope"), is the President of the Village of Oak Park, which is his principal place of business. He is being sued in his official capacity.

7.    Defendant, the Village of Oak Park, is a political subdivision of the State of Illinois. Pope and the Village of Oak Park and their officers, agents and employees are sometimes hereinafter referred to as "Defendants."

## JURISDICTION

8.    Jurisdiction is founded on 28 U.S.C. § 1331 in that this action arises under the Constitution and laws of the United States, and under 28 U.S.C. § 1343(3) in that this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs and usages of the State of Illinois and political subdivisions thereof, of rights, privileges or immunities secured by the United States Constitution and by Acts of Congress.

9.    This action seeks relief pursuant to 28 U.S.C. §§ 2201, 2202, and 42 U.S.C. § 1983. Venue lies in this district pursuant to 28 U.S.C. § 1391(b).

2

## BACKGROUND

10.    The Village of Oak Park prohibits possession of a handgun.  The Oak Park Municipal Code provides: "It shall be unlawful for any person to possess or carry, or for any person to permit another to possess or carry on his/her land or in his/her place of business any firearm . . . ."  Oak Park Municipal Code, § 27-2-1.  "FIREARMS: For the purpose of this Article firearms are: pistols, revolvers, guns and small arms of a size and character that may be concealed on or about the person, commonly known as handguns."  § 27-1-1.

11.    It is further unlawful "to carry" a rifle, shotgun, or firearm in a vehicle, or to permit another to do so in a vehicle one owns, "or about his/her person, except that a person may carry any rifle or shotgun when on his/her land or in his/her abode or fixed place of business . . . ."  § 27-2-1. There is an exemption for licensed hunters or fishermen commuting with a rifle or shotgun to or from established game areas.  § 27-2-1(H).  Also exempt is the transportation of weapons "broken down in a nonfunctioning state and not immediately accessible," but if it is a firearm (handgun), the transportation must not originate or terminate in Oak Park.  § 27-2-1(1).

12.    None of the above provisions apply to "Licensed firearm collectors."  § 27-2-1 (K). "LICENSED FIREARM COLLECTOR: Any person licensed as a collector by the Secretary of the Treasury of the United States under and by virtue of Title 18, United States Code, Section 923; provided however, that a copy of said license is filed with the Chief of Police."  § 27-1-1.

13.    Exempt from the handgun prohibition are: "Members of established theater organizations located in Oak Park and performing a regular performance schedule to the public, utilizing only blank ammunition in the discharge of weapons only during rehearsals, classes or performances; provided further that said organization maintains possession and control over these

weapons in a safe place with a designated member of the organization when the weapons are not in use. . . ."  § 27-2-1 (L).

14.    Violation is punishable with a fine of not more than $1,000 for the first offense and $2,000 for a subsequent offense.  § 27-4-1 (A).  Weapons involved in offenses are to be confiscated and destroyed.  § 27-4-1 (C).  A motor vehicle which a police officer has probable cause to believe contains a weapon in violation of the above is subject to seizure and impoundment, and may be released on payment of a $500 fine.  § 27-4-4.

15.    It is unlawful to sell or give away a "firearm" as defined, whether by a dealer or a single individual, without a license approved by the Chief of Police and the Village Manager.  §§ 27-1-3, -4, -5.  A firearm may only be transferred to law enforcement entities.  § 27-1-2.

16.    Defendant-Pope is responsible for enforcing the above provisions through law enforcement agencies under his direction and control.

17.    Defendant-Pope and the law enforcement agencies that operate under his supervision have no legal duty to protect Oak Park residents, including Plaintiffs, from robbery, rape, murder, or any other crime.

## FACTS

18.    Plaintiffs, Engler and Dr. Reisinger, as well as other members of Plaintiff NRA, reside in Oak Park.  But for Oak Park Municipal Code, § 27-2-1, and the enforcement thereof by Defendant-Pope, Plaintiffs and numerous other NRA members who reside in Oak Park would forthwith (a) lawfully obtain handguns to keep at home for lawful purposes including self-protection and the protection of their families and loved ones and (b) transfer handguns which they lawfully store outside the jurisdiction to their homes.  Should they do so in violation of such provisions, they would be subject to arrest, prosecution, imprisonment, and fines.

4

19.    Plaintiffs, and numerous members of Plaintiff NRA either travel through or need to travel through Oak Park. Oak Park Municipal Code § 27-2-1, and the enforcement thereof by Defendant Pope, subjects such persons who are otherwise lawfully transporting firearms to the threat of arrest, prosecution, imprisonment, and fines or requires them to travel on other routes to avoid arrest, prosecution, imprisonment, and fines.

20.    Plaintiffs, Engler and Dr. Reisinger, lawfully own and store handguns outside the Village of Oak Park. But for Oak Park Municipal Code § 27-2-1, they would forthwith keep their handguns at their residences in the Village of Oak Park. But for Oak Park Municipal Code § 27-2-1, they have not brought their handguns into the Village of Oak Park so that they could be used for self-protection.

21.    Plaintiffs, Engler and Dr. Reisinger, and numerous members of Plaintiff NRA, wish to obtain and possess handguns to keep in their homes for lawful defense from any unlawful, sudden, deadly attack by an intruder and to lawfully transport their handguns through the Village of Oak Park. However, individuals face arrest, prosecution, and incarceration should they possess a handgun in violation of Oak Park Municipal Code, § 27-2-1. But for § 27-2-1, members of Plaintiff NRA would imminently obtain handguns pursuant to the laws of the United States and the State of Illinois.

22.    As a proximate cause of Oak Park Municipal Code § 27-2-1, and the enforcement thereof by Defendants and their agents and employees, Plaintiffs and members of Plaintiff NRA are subjected to irreparable harm in that they are unable to obtain handguns to protect themselves in their homes, subjecting them to endangerment from criminal intruders and violating their Constitutional rights as set forth herein.

5

## COUNT I

### (Second and Fourteenth Amendments)

23. Paragraphs 1 through 22 are realleged and incorporated herein by reference.

24. The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The Fourteenth Amendment to the United States Constitution provides in part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." The Second Amendment is applicable to the States and political subdivisions thereof through the Fourteenth Amendment.

25. Because Oak Park Municipal Code, § 27-2-1 prohibits the possession of a handgun, it infringes on the right of the people, including Plaintiffs and members of Plaintiff NRA, to keep and bear arms as guaranteed by the Second and Fourteenth Amendments to the United States Constitution and is thus null and void.

WHEREFORE, Plaintiffs pray that the Court:

A. Enter a declaratory judgment that Oak Park Municipal Code, § 27-2-1 is null and void because it infringes on the right of the people to keep and bear arms in violation of the Second and Fourteenth Amendments to the United States Constitution.

B. Issue preliminary and permanent injunctions enjoining Defendants and their officers, agents and employees, from enforcing Oak Park Municipal Code, § 27-2-1.

C. Grant such other and further relief as may be proper.

D. Award Plaintiffs attorneys' fees and costs.

## COUNT II

### (Equal Protection)

26.     Paragraphs 1 through 25 are realleged and incorporated herein by reference.

27.     The Fourteenth Amendment to the United States Constitution provides that no State shall deny to any person the equal protection of the laws.

28.     Possession of handguns is prohibited to persons generally, including Plaintiffs and members of Plaintiff NRA.   Oak Park Municipal Code, § 27-2-1.   However, the following categories of persons are exempted from the prohibition:

(a)     "Licensed firearm collectors," § 27-2-1 (K); and,

(b)     "Members of established theater organizations located in Oak Park and performing a regular performance schedule to the public," § 27-2-1 (L).

29.     The above exemptions irrationally discriminate against all non-exempted persons, including Plaintiffs and members of Plaintiff NRA, denying to them the equal protection of the laws, in violation of the Fourteenth Amendment.

WHEREFORE, Plaintiffs pray that the Court:

A.      Enter a declaratory judgment that Oak Park Municipal Code, § 27-2-1 is null and void because it, in conjunction with § 27-2-1(K) & (L), violates the equal protection of the laws guaranteed by the Fourteenth Amendment.

B.      Issue preliminary and permanent injunctions enjoining Defendants and their officers, agents and employees, from enforcing Oak Park Municipal Code, § 27-2-1.

C.      Grant such other and further relief as may be proper.

D.      Award Plaintiffs attorneys' fees and costs.

7

## COUNT III

### (18 U.S.C. § 926A)

30.    Paragraphs 1 through 29 are realleged and incorporated herein by reference.

31.    Plaintiffs and members of Plaintiff NRA may lawfully transport firearms through the Village of Oak Park pursuant to the Firearms Owners' Protection Act of 1986 ("FOPA"), 18 U.S.C. § 926A, which provides:

> Notwithstanding any other provision of any law or any rule or regulation of a State or any political subdivision thereof, any person who is not otherwise prohibited by this chapter from transporting, shipping, or receiving a firearm shall be entitled to transport a firearm for any lawful purpose from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such firearm if, during such transportation the firearm is unloaded, and neither the firearm nor any ammunition being transported is readily accessible or is directly accessible from the passenger compartment of such transporting vehicle: Provided, That in the case of a vehicle without a compartment separate from the driver's compartment the firearm or ammunition shall be contained in a locked container other than the glove compartment or console.

32.    However, Oak Park makes it unlawful to possess a handgun, or to carry a rifle, shotgun, or firearm in a vehicle, or to permit another to do so in a vehicle one owns. Oak Park Municipal Code, § 27-2-1. Exempted are: "Licensed hunters or fishermen while commuting to or from established game areas; provided, however, that this exemption shall not apply to the possession or carrying of 'firearms'" (handguns). § 27-2-1(H). Also exempt are: "Transportation of weapons broken down in a nonfunctioning state and not immediately accessible." § 27-2-1(1).

33.    The Village of Oak Park thus limits transportation of rifles and shotguns to licensed hunters and fishermen and otherwise requires weapons to be broken down in a nonfunctioning state, contrary to 18 U.S.C. § 926A. Persons transporting rifles, shotguns, and handguns in compliance with § 926A through Oak Park are thereby subject to arrest and prosecution.

8

34.     The above provisions and the enforcement thereof by Defendants violate the entitlement of persons, including Plaintiffs and members of Plaintiff NRA, to transport firearms, including rifles, shotguns, and handguns, pursuant to 18 U.S.C. § 926A, and are thus preempted and void.

WHEREFORE, Plaintiffs pray that the Court:

A.     Enter a declaratory judgment that Oak Park Municipal Code, § 27-2-1 is null and void because it is preempted by 18 U.S.C. § 926A.

B.     Issue preliminary and permanent injunctions enjoining Defendants and their officers, agents and employees, from enforcing Oak Park Municipal Code, § 27-2-1.

C.     Grant such other and further relief as may be proper.

D.     Award Plaintiffs attorneys' fees and costs.

Respectfully Submitted,

**NATIONAL RIFLE ASSOCIATION
OF AMERICA, INC., ROBERT KLEIN
 ENGLER, and DR. GENE A. REISINGER,**
Plaintiff


BY:___s/ William N. Howard_____
          One of Their Attorneys

Local Counsel:
William N. Howard, Esq.
**FREEBORN & PETERS LLP**
311 S. Wacker Dr., Suite 3000
Chicago, Illinois   60606
(312) 360-6415

Stephen P. Halbrook, Esq.
10560 Main St., Suite 404
Fairfax, VA  22030
(703) 352-7276
(*Pro Hac Vice pending*)

# GROUP EXHIBIT B

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2004 WL 2495642 (N.D.Ill.), 94 Fair Empl.Prac.Cas. (BNA) 1132
**2004 WL 2495642 (N.D.Ill.)**

C
Donahue v. Elgin Riverboat Resort
N.D.Ill.,2004.

United States District Court,N.D. Illinois, Eastern
Division.
Darryl W. DONAHUE; Lawrence D. Williams;
Jennifer Thomas; Noelle Olivier; Keith Moody; De-
lores Miller; Robert Curtington; Ramona
Camprindo; Evelyn D. Norris; and Tamara R. Turn-
er, Plaintiffs,
v.
ELGIN RIVERBOAT RESORT, d/b/a Grand Vic-
toria Riverboat; Nevada Landing Partnership; and
RBG L.P., Defendants.
**No. 04 C 816.**

Sept. 28, 2004.

Kenneth N. Flaxman, Kenneth N. Flaxman, P.C.,
Chicago, IL, for Plaintiffs.
Jane M. McFetridge, Joel W. Rice, Matt David
Strubbe, Fisher and Phillips LLP, Chicago, IL, for
Defendants.

*MEMORANDUM OPINION AND ORDER*

GUZMÁN, J.
**\*1** Before the Court is Defendants Elgin Riverboat
Resort d/b/a Grand Victoria Riverboat, Nevada
Landing Partnership, and RBG, L.P.'s (collectively
"Elgin") Motion for a Reassignment Of Related
Cases pursuant to Local Rule 40.4. For the reasons
that follow, the motion is denied.

*BACKGROUND*

On November 6, 1998, Plaintiffs Lisa Ellis, Marcia
English, Yvonne Mason, and Derrick Denson filed
a putative class action suit, *Ellis v. Elgin Riverboat
Resort d/b/a Grand Victoria Casino,* No. 98 C
7093, alleging that Elgin engaged in a pattern and
practice of discriminatory hiring based on race, in
violation of Title VII of the Civil Rights Act of

1964, as amended, 42 U.S.C. § 2000e. On March
27, 2000, Judge Gottschall conditionally certified
the class pursuant to Federal Rule of Civil Proced-
ure 23(b)(2), On August 21, 2003, Magistrate Judge
Ashman [FN1] decertified the class because the Ellis
plaintiffs failed to demonstrate that a common
question of law or fact existed, that their claims
were typical of those of the class, or that they could
adequately represent the class. *See Ellis v. Elgin Ri-
verboat Resort,* 217 F.R.D. 415, 427-29
(N.D.Ill.2003). After decertification, five former
class members filed individual lawsuits, the lowest-
numbered of which is the present case.[FN2] Elgin
now seeks a finding that all four individual suits are
related and asks that they be reassigned to this
Court.[FN3]

> FN1. The parties consented to the jurisdic-
> tion of the magistrate, and on November 7,
> 2001, the Ellis lawsuit was reassigned to
> Magistrate Judge Ashman pursuant to Loc-
> al Rule 73.1.

> FN2. The five new lawsuits are: (1) *Do-
> nahue v. Elgin Riverboat Resort,* No. 04
> CV 816 (Judge Guzman); (2)*Burks v. Elgin
> Riverboat Resort,* No. 04 CV 818 (Judge
> Lefkow); (3)*Atkins v. Elgin Riverboat Re-
> sort,* No. 04 C 819 (Judge Kennelly);
> (4)*Okoh v. Elgin Riverboat Resort,* No. 04
> C 936 (Judge Plunkett); and (5)*Dismuke
> Cureton v. Elgin Riverboat Resort,* No. 04
> C 4132 (Judge Leinenweber).*Dismuke
> Cureton* was filed after the present motion,
> and Elgin informed the Court of its exist-
> ence through a supplemental notice.

> FN3. More precisely, Elgin asks that all
> five cases be reassigned to Magistrate
> Judge Ashman or alternatively, to this
> Court. However, Elgin it offers no case
> law or rule that would allow this Court to
> transfer all five cases to Judge Ashman.
> Elgin also provides no support for its al-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                   Page 2
Not Reported in F.Supp.2d, 2004 WL 2495642 (N.D.Ill.), 94 Fair Empl.Prac.Cas. (BNA) 1132
**2004 WL 2495642 (N.D.Ill.)**

ternative request that if the cases are con-
solidated, they be referred to Judge Ash-
man, who is not the magistrate assigned to
the present case, for pretrial supervision.

### DISCUSSION

To have a case reassigned based on relatedness, the
movant must satisfy both Local Rule 40.4(a) and
(b).*Lawrence E. Jaffe Pension Plan v. Household
Int'l, Inc.,* No. 02 C 5893, 2003 U.S. Dist. LEXIS
7466, at *3 (N.D.Ill. May 5, 2003). This Court has
the sound discretion whether to reassign a case un-
der Local Rule 40.4. *Clark v. Ins. Car Rentals Inc.,*
42 F.Supp.2d 846, 847 (N.D.Ill.1999). Local Rule
40.4(a) provides that:

Two or more civil cases may be related if one or
more of the following conditions are met: (1) the
cases involve the same property; (2) the cases in-
volve some of the same issues of fact or law; (3)
the cases grow out of the same transaction or occur-
rence; or (4) in class action suits, one or more of
the classes involved in the cases is or are of the same.

N.D. Ill. L.R. 40.4(a).

Elgin argues the lawsuits satisfy Local Rule
40.4(a)(2) because all five cases are brought against
the same defendant, involve a violation of Title VII
of the Civil Rights Act of 1964 based on allegations
that the plaintiffs were not hired because of their
race, and "[t]herefore, on a general level," involve
the same legal issues. (Defs.' Mot. Reassignment
Related Cases Ex. A, Mot. at 4).[FN4] Elgin's mo-
tion, however, fails to identify any particular issues
of fact or law that are common to all plaintiffs. *See*
Local Rule 40.4(c)(1) (requiring that a motion for
reassignment "shall ... set forth the points of com-
monality of the cases in sufficient detail to indicate
that the cases are related within the meaning of sec-
tion (a)"). As Elgin successfully argued before
Judge Ashman in its motion to decertify, the hiring
process was decentralized and subjective, and each
of the hiring decisions rested on a unique set of

facts, including the applicants' experience and the
casino's hiring needs. *See Ellis,* 217 F.R.D. at
426-27;*see also Davis v. Quebecor World,* No. 01
C 8014, 2002 WL 27660, at *4 (N.D.Ill. Jan.10,
2002) (refusing to find cases related where, among
other things, the charges of discrimination do not
involve the same decisionmakers).

> FN4. Defendants' motion incorporates by
> reference the motion for reassignment it
> originally presented to Judge Ashman on
> March 25, 2004. As a magistrate judge,
> Judge Ashman could not reassign later-
> filed cases pending before district judges,
> and the motion was therefore denied
> without prejudice. *See* N.D. Ill. L.R.
> 40.4(c) ("Where one or more of the cases
> claimed to be related is assigned to a ma-
> gistrate judge on consent and one or more
> of the remaining cases is assigned to a dis-
> trict judge, the motion shall be filed with
> the district judge having the lowest-
> numbered case.").

*2 Elgin maintains that the standards for class certi-
fication and a finding of relatedness are not the
same, but the decertification order is certainly in-
structive as to the lack of commonality among the
various plaintiffs' claims. Moreover, Elgin has
failed to specify any common issues of fact and law
other than those resolved in the decertification or-
der which would warrant a finding of relatedness.
*Cf. Murry v. Am.'s Mortgage Banc, Inc.,* No. 03 C
5811, 2004 WL 407010, at *2 (N.D.Ill. Mar.1,
2004) (finding relatedness where both cases will
necessarily involve a determination of the legality
of the defendant's specific actions in procuring
mortgage loans); *Fairbanks Capital Corp. v. Jen-
kins,* No. 02 C 3930, 2002 WL 31655277, at *2
(N.D.Ill. Nov.25, 2002) (holding that cases are re-
lated where they each involve the legality of a de-
fendant's particular lending practice); *Smith v. N.E.
Ill. Univ.,* No. 98 C 3555, 2002 WL 377725, at *4
(N.D.Ill. Feb.28, 2002) (finding relatedness where
cases have common issues of a hostile work envir-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                 Page 3
Not Reported in F.Supp.2d, 2004 WL 2495642 (N.D.Ill.), 94 Fair Empl.Prac.Cas. (BNA) 1132
**2004 WL 2495642 (N.D.Ill.)**

onment). The fact that the cases are brought against the same defendant and generally involve the same types of allegations are not sufficient to show the cases are related pursuant to Local Rule 40.4(a). Therefore, Elgin's motion must be denied on this basis alone.

Furthermore, even if Elgin had shown the cases are related, the motion does not demonstrate that reassignment is proper under Local Rule 40.4(b), which provides:

[A] case may be reassigned to the calendar of another judge if it is found to be related to an earlier-numbered case assigned to that judge and each of the following criteria is met: (1) both cases are pending in this Court; (2) the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort; (3) the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially; and (4) the cases are susceptible of disposition in a single proceeding.

N.D. Ill. L.R. 40.4(b); *see* N.D. Ill. L.R. 40.4(c)(2) (requiring a motion for reassignment to "indicate the extent to which the conditions required by section (b) will be met if the cases are found to be related").

The first and third conditions are satisfied here because all five cases are pending in the Northern District of Illinois and the present case has not progressed to the point that it would substantially delay the litigation if the other cases were reassigned as related. However, Elgin has failed to show that it has met the second and fourth conditions.

As to the fourth requirement, whether the cases are susceptible of disposition in a single proceeding, Elgin cites *Fairbanks Capital,* 2002 WL 31655277, for the proposition that Local Rule 40.4(b)(4)"merely means that a ruling in one case will likely be applicable or even dispositive in the other case."(Defs.' Mot. Reassignment Related

Cases Ex. A, Mot. at 6.) Unlike the present case, however, resolution of the common issue in *Fairbanks Capital* would be "outcome-determinative" of the same issue in the other cases, and thus the cases were susceptible of determination in a single proceeding. *See Fairbanks Capital,* 2002 WL 31655277, at *3. In this case, each individual case relies on a different set of facts, and a finding in one case would not be dispositive of any issues in the other cases. Therefore, Elgin has failed to satisfy Local Rule 40.4(b)(4).

*3 For the same reasons, Elgin has not shown that reassignment would result in a "substantial saving of judicial time and effort," the second necessary condition. *See* N.D. Ill. L.R. 40.4(b)(2). As explained in detail in the order decertifying the *Ellis* class, each plaintiff's claim requires individualized proof and is subject to unique defenses. *See Ellis,* 217 F.R.D. at 429. Thus, each plaintiff's claims will have to be separately litigated, whether in one proceeding or in four separate proceedings. Local Rule 40.4(b)(2) requires a "substantial saving" of judicial resources, and Elgin has failed to demonstrate reassignment would result in the saving of even a single trial day. Accordingly, the cases must not be reassigned pursuant to Local Rule 40.4(b).

*CONCLUSION*

For the foregoing reasons, Defendant Elgin Riverboat Resort d/b/a Grand Victoria Riverboat, Nevada Landing Partnership and RBG, L.P.'s Motion for a Reassignment of Related Cases pursuant to Local Rule 40 .4 [doc. no. 5-1] is denied.

SO ORDERED

N.D.Ill.,2004.
Donahue v. Elgin Riverboat Resort
Not Reported in F.Supp.2d, 2004 WL 2495642 (N.D.Ill.), 94 Fair Empl.Prac.Cas. (BNA) 1132

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

# GROUP EXHIBIT B-2

Slip Copy                                                                    Page 1
Slip Copy, 2007 WL 4548228 (N.D.Ill.)
**2007 WL 4548228 (N.D.Ill.)**

C
Goldhamer v. Nagode
N.D.Ill.,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois,Eastern
Division.
Don GOLDHAMER and Robin Schirmer, Plaintiffs,
v.
Lt. NAGODE, et al., Defendants.
**No. 07 C 5286.**

Dec. 20, 2007.

Jonathan I. Loevy, Arthur R. Loevy, Kurt Henry
Feuer, Loevy & Loevy, Jeffrey H. Frank, Law Of-
fices of Jeffrey Frank, Charles Nissim-Sabat,
Chicago, IL, for Plaintiffs.
Devlin Joseph Schoop, Joseph Michael Gagliardo,
Lawrence Jay Weiner, Laner, Muchin, Dombrow,
Becker, Chicago, IL, for Defendants.

### MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge.
*1 This matter is before the court on Defendants'
motion to reassign Case No. 07-cv-5286, *Gold-
hamer v. Nagode,* to this court pursuant to Rule
40.4 of the Local Rules of the United States District
Court for the Northern District of Illinois
("L.R.40.4"). For the reasons stated below, we deny
Defendants' motion to reassign.

### BACKGROUND

On July 2, 2006, Plaintiff Melissa Woo ("Woo"),
Plaintiff Crystal Wilson ("Wilson"), Plaintiff
Megan Gallagher ("Gallagher"), (4) Plaintiff Al-
berto Guevarra ("Guevarra"), Plaintiff Don Gold-
hamer ("Goldhamer"), and Plaintiff Robin Schirmer
("Schirmer") were all allegedly present at the taste
of Chicago. Sometime that day, City of Chicago
Police Lt. Al Nagode ("Nagode") allegedly issued
an order to disperse, pursuant to an ordinance, to a
large group of people gathered near a United States
Armed Services information booth. Subsequently,
Wilson, Gallagher, Guevarra, Goldhamer and
Schirmer were allegedly arrested at different times
by different members of the Chicago Police Depart-
ment and each was charged with disorderly con-
duct. Woo individually alleges she was arrested pri-
or to the order to disperse.

On July 6, 2007, Woo, Wilson, Gallagher, and
Guevarra (collectively referred to as "Woo
Plaintiffs") filed a civil rights action, Case No.
07-cv-3818 ("Woo Action"), against Nagode, other
Chicago Police officers, and the City of Chicago
("City"). On September 19, 2007, Goldhamer and
Schirmer (collectively referred to as "Goldhamer
Plaintiffs") filed a civil rights action, Case No.
07-cv-5286 ("Goldhamer Action"), against Nagode,
other Chicago Police officers (not also named in the
Woo Action), and the City. The Woo Action was
assigned to this court and the Goldhamer Action
was assigned to another judge of this district. In the
Woo Action, the Woo Plaintiffs have brought a
claim under 42 U.S .C. § 1983 ("Section 1983") for
false arrest and pendant state law claims for mali-
cious prosecution. In the Goldhamer Action, the
Goldhamer Plaintiffs have also brought a claim un-
der Section 1983 for false arrest and pendant state
law claims for malicious prosecution. In addition,
the Goldhamer Plaintiffs have brought several other
claims under Section 1983, a *Monell* claim against
the City of Chicago, and other constitutional claims
including a facial challenge to the constitutionality
of the City's disorderly conduct ordinance.

On October 3, 2007, the Defendants in the Gold-
hamer Action ("Goldhamer Defendants") filed the
instant motion to reassign the Goldhamer Action to
this court to be consoli with the Woo Action, pursu-
ant to L.R. 40.4. The Goldhamer Plaintiffs oppose
the motion and the proposed consolidation of the
two cases, arguing that Defendants have not met the
requirements of L.R. 40.4 for consolidation since
they have not shown that the actions are sufficiently

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 2
Slip Copy, 2007 WL 4548228 (N.D.Ill.)
**2007 WL 4548228 (N.D.Ill.)**

similar.

### LEGAL STANDARD

Northern District of Illinois Local Rule 40.4(b) ("L.R.40.4(b)") provides that a case may be reassigned to the calendar of another judge if it is found to be related to an earlier-numbered case assigned to that judge and each of the following criteria are met:

**\*2** (1) both cases are pending in this Court; (2) the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort; (3) the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially; and (4) the cases are susceptible of disposition in a single proceeding.

N.D. Ill. L.R. 40.4(b).

### DISCUSSION

In exercising our discretion on the issue of consolidation and reassignment, we look to the Local Rules for guidance. The criteria that courts consider for reassignment of a case are set out in L.R. 40.4(b). The first factor under the Local Rules standard is not in dispute. Both matters are pending in United States District Court for the Northern District of Illinois. However, the parties dispute the remaining three factors.

Under Local Rule 40.4, the burden is on the moving party to specifically identify why each of the factors has been met, and the motion should be denied if the moving party fails to satisfy each of the requirements. *Williams v. Walsh Construction,* 2007 WL 178309, at \*2 (N.D.Ill.2007). The Goldhamer Plaintiffs argue that "there are different facts and legal claims that will require different discovery, legal findings, defenses and summary judgment motions."(Gold. P Resp. 5-10). They argue that, based on the factual and legal differences in the two

cases, the Goldhamer Defendants have not shown that consolidation would likely result in the substantial saving of judicial time and effort and that the cases are not susceptible to disposition in a single proceeding. We agree.

*I. Alleged Factual and Legal Distinctions Between the Two Actions*

Based on the factual allegations that exist in the pleadings filed thus far in the Woo Action and the Goldhamer Action, it is clear that there are numerous alleged factual distinctions between the two actions. The Goldhamer Plaintiffs have alleged that they were not members of the same group as the Woo Plaintiffs and that they were not participating in a group protest with the Woo Plaintiffs. (Gold.Compl.Par. 8). The Goldhamer Plaintiffs specifically point out that they have alleged that Goldhamer alone was not handing out leaflets, and thus did not disobey the order to disperse. (Gold. P Resp. 2). The Goldhamer Plaintiffs further allege that the Woo Plaintiffs were each arrested by officers who were not involved in the arrest of the Goldhamer Plaintiffs and who are not named in the Goldhamer Action. (Gold.Compl.Par. 20). The Goldhamer Plaintiffs also point out that it is alleged that one of the Woo Plaintiffs was arrested prior to the order to disperse that was issued by Nagode. (Gold.Compl.Par. 14).

It is also clear from the pleadings that the Goldhamer Action and the Woo Action involve different legal claims as well. Specifically, there are additional claims in the Goldhamer Action which make that case significantly different. In addition to the Section 1983 claims and pendant state law claims for malicious prosecution that are duplicated in the Woo Action, the Goldhamer Plaintiffs have also brought other claims under Section 1983, a *Monell* claim against the City of Chicago, and other constitutional claims including a facial challenge to the constitutionality of the City's disorderly conduct ordinance. (Gold.Compl.25-31, 50-52). These additional legal claims that exist in the Goldhamer Ac-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 4548228 (N.D.Ill.)
**2007 WL 4548228 (N.D.Ill.)**

tion will require different discovery and motions, and will generally raise different legal issues that are presented to this court in the Woo Action.

*II. Factors for Consolidation*

**\*3** Based on the factual and legal differences between the two Actions, the Goldhamer Defendants have not met the second, third and fourth prong of the local rules standard. The handling of both cases by one judge will not likely result in the substantial saving of judicial time and effort since different individual police officers, other than Nagode, are involved in the two actions. The only fact cited by the Goldhamer Defendants in support of their argument that consolidation of the Woo Action and the Goldhamer Action would save substantial time is that there may be overlapping third-party witnesses in the two cases. (Gold. D Reply 6-7). The Goldhamer Defendants have the burden of satisfying "stringent criteria" to qualify for case reassignment. *Williams,* 2007 WL 178309 at *2. Here, the mere fact that third-party witnesses may overlap in both cases is not enough to satisfy these stringent requirements.

It is also clear that the Woo Action has proceeded to a point where consolidation will substantially delay that proceeding. The Woo Defendants have answered the amended complaint in the Woo Action and this court has already set discovery dates. Consolidation will delay that action.

Finally, it is clear from the factual and legal distinctions between the two actions that both would not be susceptible to disposition in a single proceeding, and may require separate trials. As stated above, the adjudication of Goldhamer's claims, in particular, are likely to involve different legal issues since Goldhamer is alleging that he did not disobey the order and both Goldhamer Plaintiffs are challenging the constitutionality of the ordinance. Based on the information presented to this court, the Goldhamer Defendants have not established that this matter is appropriate for consolidation under

the local rules. Therefore, we exercise our discretion and deny the Goldhamer Defendants' motion to reassign.

**CONCLUSION**

Based on the foregoing analysis, we deny the Goldhamer Defendants' motion to reassign.

N.D.Ill.,2007.
Goldhamer v. Nagode
Slip Copy, 2007 WL 4548228 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

# GROUP EXHIBIT B-3

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1102327 (N.D.Ill.)
**2004 WL 1102327 (N.D.Ill.)**

**H**
Hollinger Intern., Inc. v. Hollinger, Inc.
N.D.Ill.,2004.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern Division.
HOLLINGER INTERNATIONAL, INC., Plaintiff,
v.
HOLLINGER, INC., et al. Defendants.
**No. 04 C 0698.**

May 5, 2004.

Ian Simmons, Henry C. Thumann, O'Melveny & Myers, Washington, DC, Jonathan Rosenberg, Andrew J. Geist, O'Melveny & Myers, New York, NY, Mark V. Chester, Steven Lawson, Joan M. Meyers, Johnson & Colmar, Chicago, IL, for Plaintiff.
Nathan P. Eimer, Andrew George Klevorn, Adam B. Deutsch, Vanessa G. Jacobsen, Eimer Stahl Klevorn & Solberg, LLP, Brian L. Crowe, Cary E. Donham, Douglas Michael Ramsey, Shefsky & Froelich, Ltd., Paula Enid Litt, Veronica Gomez, Lisa Beth Swedenborg, Schopf & Weiss, Joseph J. Duffy, Stetler & Duffy, Ltd., Stephen C. Voris, Burke, Warren, MacKay & Serritella, P.C., Chicago, IL, Laurent S. Wiesel, John L. Warden, Robin D. Fessel, David H. Braff, James V. Masella, III, Sullivan & Cromwell, Greg A. Danilow, Richard A. Rothman, Anthony Albanese, Weil, Gotshal & Manges LLP, Ira Lee Sorkin, Donald A. Corbett, Carter, Ledyard & Milburn, New York, NY, for Defendants.

*MEMORANDUM AND ORDER*

MANNING, J.
**\*1** The Present matter comes before this Court on Defendant Hollinger, Inc.'s ("Inc.")[1] Motion for Finding of Relatedness and Reassignment of Actions. Pursuant to Local Rule 40.4, Inc. seeks to have the following shareholder class actions ("the Class Actions") assigned to this Court: *Teachers Retirement System of Louisiana v. Black, et al.*, No.

04 C 0834 (Judge Coar); *Mozingo v. Black, et al.*, No. 04 C 1276 (Judge Manning); and *Washington Area Carpenters Pension and Retirement Fund v. Hollinger International, Inc.*, No. 04 C 2505 (Judge Anderson).[FN1] For the Reasons set forth below, this Court DENIES this motion on the grounds the Court does not find that all four of the requirements in Local Rule 40.4(b) are met.

> FN1. The Plaintiffs in case Nos. 04 C 0834 and 04 C 1276 have joined in Inc.'s mo- tion.

Plaintiff Hollinger International, Inc. ("International") brought this diversity action against its controlling shareholders, which includes Inc., the Ravalston Corporation, and Conrad Black, and three other related entities and persons ("the International Action"). International alleges that Defendants breached their common law fiduciary duties and were unjustly enriched by accepting improper payments from International, including "non-compete" payments and "management service fee payments." In all, International seeks to recover over $200 million in alleged wrongful payments.

Subsequent to the filing of the International Action, purchasers of International's stock brought the Class Actions alleging misconduct under Federal and Illinois securities laws against International, the International Action Defendants, International's former outside auditor, and International's current and former board members. The Class Action Plaintiffs seek to certify a class consisting of all purchasers of International stock during the relevant time period. The Class Action Plaintiffs also seek to recover the dilution in value of their shares caused by alleged fraudulent and misleading statements by International and its directors, owners, and auditors, which allegedly stem from the "non-compete" payments and "management service fee payments" made to the International Defendants.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1102327 (N.D.Ill.)
**2004 WL 1102327 (N.D.Ill.)**

Page 2

Whether to reassign a case under Local Rule 40.4 lies within the sound discretion of this Court. *Clark v. Ins. Car Rentals Inc.,* 42 F.Supp.2d 846, 847 (N.D.Ill.1999). To have a case reassigned based on relatedness, the moving parties must meet the requirements of both Local Rule 40.4(a) and (b).*Lawrence Jaffe Pension Plan v. Household Int'l, Inc.,* No. 02 C 5893, 2002 WL 21011757, at *1 (N.D.Ill. May 5, 2003). Local Rule 40.4(a) states that "[t]wo or more civil cases may be related if" at least one of the conditions are met:

(1) the cases involve the same property;

(2) the cases involve some of the same issues of fact or law;

(3) the cases grow out of the same transaction or occurrence; or

(4) in class action suits, one or more of the classes involved in the cases is or are of the same.

Local Rule 40.1(a).

**\*2** The second and more onerous of the reassignment criteria, *see, e.g.,Clark,* 42 F.Supp.2d at 848, states that a case may be reassigned only if "each of the following criteria are met":

(1) both cases are pending in this Court;

(2) the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort;

(3) the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially; and

(4) the cases are susceptible of disposition in a single proceeding.

Local Rule 40.4(b).

Here, although International admits that all the actions "involve, at least in part, [the International

Defendants'] misconduct in diverting International's assets to their own uses through improper non-competition fees and excessive management fees," it contends that factor (2)-(4) of Local Rule 40.4(b) are not met because "there are vast differences between the substantive claims, remedies, and defenses" in the International Action and the Class Actions.

In support of this contention, International cites *Lawrence Jaffe Pension Plan,* 2002 WL 21011757, a case in which Judge Guzman denied a motion to reassign a shareholder class action and a corporate derivative action, on the grounds that subsections (b)(2) and (4) of Local Rule 40.4 were not met.[FN2] The plaintiff in the derivative action alleged that corporate officers of the defendant corporation breached their duties of loyalty and due care and were unjustly enriched by wasting corporate assets. *Id.* at *1. In the shareholder class action, the plaintiffs alleged that the CEO and CEO made material misrepresentations in violation of federal securities law. *Id.* In finding that the two cases where related under Local Rule 40.4(a), the Court found that both actions involved "some common issues of fact," namely that the underlying wrong doing in each case was the same. *Id.*

> FN2. The Court notes that *Lawrence Jaffe Pension Plan* is the only case in this district which involved a Local Rule 40.4 motion to reassign a shareholder class action and a corporate derivative action. Although Inc. attempts to distinguish this case, this Court finds it closely analogous to the present matter.

Judge Guzman, however, found that reassignment would not result in "substantial saving of judicial time and effort," as required by subsection (b)(2).*Id.* at *2. In making this finding, the court noted that the two actions "are fundamentally distinct" in that the class action alleges violations of federal securities law on behalf of a class of stock purchasers, while the derivative action alleges common law breach of fiduciary duty violations. *Id.*

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1102327 (N.D.Ill.)
**2004 WL 1102327 (N.D.Ill.)**

Page 3

This distinction was important because the facts required to prove a federal securities violation "are clearly substantially different" than the facts needed to hold the defendants liable for breach of fiduciary duty.*Id.* The court also noted that while the cases included some of the same defendants, there were numerous defendants named in the derivative action not named in the securities action. *Id.* Consequently, Judge Guzman held that his "handling of both cases would not be likely to result in substantial saving of judicial time and effort."FN3*Id.*

> FN3. In making this finding, Judge Guzman acknowledged that "there would be some degree of savings of judicial time and effort," but not "substantial savings" as required by subsection (b)(2).

**\*3** The Court also found that subsection (b)(4) was not met because the two actions "are fundamentally distinct ... making it extremely unlikely that the court could dispose of both cases in a single proceeding .... [in that] [a]ny motions for summary judgment would be unique to each particular case."*Id.* at *3. Accordingly, Judge Guzman denied the motion to reassign.

Here, this Court finds that, similar to *Lawrence Jaffe Pension Plan,* the criteria of Local Rule 40.4(b) are not met. Although the International Action and the Class Actions involve some of the same factual issues, resolving these issues together will not result in substantial judicial savings, as required by subsection (b)(2). The actions involve "fundamentally distinct" claims-breach of common law duties and securities law claims-which will require different discovery and legal findings. For example, the International Action is an action by International seeking recovery of the funds allegedly misappropriated by the International Defendants, while the Class Actions seek redress for the loss in value of the class members' stock. These different forms of relief will require different discovery and will require this Court to make distinct factual and legal findings. Likewise, the Class Actions will require the Court to decide whether to certify a class

and which attorney to appoint as class counsel. Such a determination, which is not required in the International Action, will, in most likelihood, require discovery and substantial time to brief all the relevant legal and factual issues. Similarly, while the International Action names six defendants, the Class Actions seek recovery from not only these six but from International, its former outside auditor, and its current and former board members. Consequently, this Court finds granting the motion to reassign will not likely result in substantial judicial savings, as required by subsection (b)(2).

Accordingly, this Court DENIES the Motion for Finding of Relatedness and Reassignment of Actions.

CONCLUSION

For the reasons discussed, the Court DENIES the Motion for Finding of Relatedness and Reassignment of Actions. It is so ordered.

N.D.Ill.,2004.
Hollinger Intern., Inc. v. Hollinger, Inc.
Not Reported in F.Supp.2d, 2004 WL 1102327 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

# GROUP EXHIBIT B-4

Not Reported in F.Supp.2d                                                                                      Page 1
Not Reported in F.Supp.2d, 2003 WL 21011757 (N.D.Ill.)
**2003 WL 21011757 (N.D.Ill.)**

**H**

Lawrence E. Jaffe Pension Plan v. Household Intern., Inc.

N.D.Ill.,2003.

Only the Westlaw citation is currently available.

United States District Court,N.D. Illinois, Eastern Division.

LAWRENCE E. JAFFE PENSION PLAN, On Behalf of Itself and All Others Similarly Situated, Plaintiff,

v.

HOUSEHOLD INTERNATIONAL, INC., Arthur Andersen, LLP, W.F. Aldinger, and D.A. Schoenholz, Defendants.

**No. 02 C 5893.**

May 5, 2003.

*MEMORANDUM OPINION AND ORDER*

GUZMAN, J.

*1 Before the Court is Lawrence E. Jaffe Pension Plan's ("Jaffe") Motion for a Finding of Relatedness pursuant to Local Rule ("LR") 40.4 between *Williamson v. Aldinger,* case no. 03 C 331, related to a case pending before this Court, *Jaffe v. Household International Inc.,* case no. 02 C 5893.For the following reasons, the Court denies the motion with prejudice.

*BACKGROUND*

Presently pending before another judge of this Court is *Williamson v. Aldinger.*In that case, plaintiff Leland Williamson, has sued defendants derivatively on behalf of Household International, Inc. and alleges that defendant members of the board of directors of Household International and several of its top officers violated the Sarbanes-Oxley Act, breached their fiduciary duties of loyalty and due care, wasted corporate assets, abused their control, and were unjustly enriched by their improper actions. (Pl.'s Mot. Finding Relatedness at

Ex. A, ¶ 1 (hereinafter "Pl.'s Mot.").) Presently pending before this Court is *Jaffe v. Household International, Inc.* Jaffe alleges in a shareholder class action that defendant Household International materially misrepresented critical information and filed false and misleading statements in violation of Rule 10b-5 of the Security Exchange Act, 17 C.F.R. § 240.10b-5. (Pl.'s Mot. at Ex. A, ¶¶ 1-5.)

*DISCUSSION*

In order to reassign a case under LR 40.4, the movant must satisfy the requirements of both LR 40.4(a) and LR 40.4(b). First, under LR 40.4(a), "[t]wo or more cases may be related if one or more of the following conditions are met: (1) the cases involve the same property; (2) the cases involve some of the same issues of fact or law; (3) the cases grow out of the same transaction or occurrence; or (4) in class action suits, one or more of the classes involved in the cases is or are of the same."

Here, the movant satisfies the third criterion that the cases involve *some* of the same issues of fact or law. Both the shareholder class action in *Jaffe* and the derivative suit in *Williamson* are based on allegations that Household International misrepresented financial information to the public and to its shareholders by overstating its profits, and misled the public and its shareholders by failing to disclose critical information regarding its general accounting practices. Specifically, Count 1 of *Jaffe* alleges that defendant Household International and its Chief Executive Officer ("CEO") and Chief Operating Officer ("COO") violated Section 10b-5 of the Securities and Exchange Act by releasing materially false and misleading statements, reports, and press releases. Similarly, in *Williamson*, to establish violations of the Sarbanes-Oxley Act and common law, plaintiffs rely in part on the conduct of the CEO, COO, as well as fourteen other directors in relation to the alleged materially false and misleading statements by the board of Household Interna-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                        Page 2
Not Reported in F.Supp.2d, 2003 WL 21011757 (N.D.Ill.)
**2003 WL 21011757 (N.D.Ill.)**

tional. To resolve at least some of the issues in both cases, a court must make a factual determination as to the conduct relating to the representations made by the CEO and COO of Household International. Therefore, the cases involve at least some common issues of fact, satisfying Rule 40.4(a)(2).

**\*2** Second, LR 40.4(b) requires that each of the following four criteria is met:

(1) both cases are pending in this Court;

(2) the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort

(3) the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially; and

(4) the cases are susceptible of disposition in a single proceeding.

Here, the first and third conditions are satisfied. Both cases are pending before the United States District Court for the Northern District of Illinois, and the *Jaffe* case has not progressed to the point where designating the *Williamson* case as related would be likely to delay substantially the proceedings in the *Jaffe* case.

Defendant Arthur Anderson argues that the second condition has not been met because reassignment would not result in a substantial saving of judicial time and effort. (Opp'n Pl.'s Mot, at 2.) The Court agrees. Specifically, the Court finds that the causes of action in *Jaffe* and *Williamson* are fundamentally distinct. While *Jaffe* is a class action that alleges Household, Arthur Andersen, W.F. Aldinger and D.A. Schoenholz violated the Securities and Exchange Act by making false and misleading statements, *Williamson* is a derivative suit alleging a violation of the Sarbancs-Oxley Act, breach of fiduciary duty, and other violations of common law. (*Id.*)

Although the Court acknowledges that there would be some degree of savings of judicial time and effort, the Court finds that such savings would not be substantial. In this case, there are some common issues of fact related to the conduct of two of the individual defendants, W.F. Aldinger and D.A. Schoenholz. In *Jaffe*, Aldinger as CEO and Schoenholz as COO are the only individual defendants, and they are sued based on the theory of control person liability for issuing materially false and misleading statements, reports and press releases to the public which overstated its net income by $386 million beginning in 1994 and misled investors regarding its credit card services. In *Williamson*, Aldinger and Schoenholz are two of sixteen individual defendants, and they are sued for causing, approving, or authorizing: (1) the sale of Household to HSBC Holdings, PLC for 2.675 HSBC ordinary shares or 0.535 HSBC American Depository Shares for each share of Household common stock; (2) the insulation of the board of directors from liability in exchange for indemnity from HSBC for their past deeds; (3) improper actions which resulted in the $484 million fine to settle the claims related to Household's non-prime consumer lending business; (4) improper accounting treatment of payments related to credit card services; (5) manipulation of reported results due to re-aging delinquent accounts; and (6) improper accounting and financial reporting of earned future employee benefits as income instead of a pension expense resulting in overstating net income by $386 million. Thus there is some overlap regarding issues of fact as to Aldinger and Schoenholz's conduct relating to (4)-(6), but not (1)-(3). Further, the facts required to prove the elements of the Security Exchange Act violation as they relate to Aldinger and Schoenholz conduct in the *Jaffe* case are clearly substantially different than the facts needed to hold Aldinger and Schoenholz liable on the various legal theories forwarded in the *Williamson* case. Accordingly, the Court finds that its handling of both cases would not be likely to result in a substantial saving of judicial time and effort.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21011757 (N.D.Ill.)
**2003 WL 21011757 (N.D.Ill.)**

**\*3** Next, the Court finds that the fourth condition, LR 40.4(b)(4), which requires the movant to demonstrate that a reassignment would be susceptible to disposition in a single proceeding has not been satisfied. Judges of this Court have ruled that a movant satisfies this condition if issues of *both* law and fact are the same in the related cases. *See Fairbanks Capital Corp. v. Jenkins,* No. 02 C 3930, 2002 WL 31655277, at \*3 (N.D.Ill. Nov. 25, 2002) (holding that LR 40.4(b)(4) was satisfied where a determination of the key, common legal and factual issues would be outcome determinative to all of the cases); *Popovich v. McDonald's Corp.,* 189 F.Supp.2d 772, 778 (N.D.Ill.2002) (holding that LR 40.4(b)(4) was satisfied where a case before another court was the equivalent of a cross-claim before that court); *Anderson v. Cornejo,* 199 F.R.D. 228, 262 (N.D.Ill.2000) (holding that LR 40.4(b)(4) was satisfied where there were common issues of law and fact in two employment discrimination cases). Here, there are not common issues of both law and fact. As defendant Arthur Anderson points out, the underlying causes of action in *Jaffe* and *Williamson* are fundamentally distinct, (Opp'n Pl.'s Mot., at 2), making it extremely unlikely that the Court could dispose of both cases in a single proceeding. Any motions for summary judgment would be unique to each particular case. *See Clark v. Ins. Car Rentals Inc.,* 42 F.Supp.2d 846, 849 (N.D.Ill.1999). Additionally, while both cases involve at least some common issues of fact, these commonalities are not so great as to outweigh the dissimilarities. In particular, the *Williamson* case involves many issues of fact that are not at issue in *Jaffe.* For example, the *Williamson* plaintiffs allege that defendants wasted corporate assets and were unjustly enriched by taking huge bonuses in the face of financial instability. (Pl.'s Mot., Ex. B ¶¶ 132-34.) That is not an issue in the *Jaffe* case. Further, the *Williamson* plaintiffs allege that the defendants breached their fiduciary duties by entering into an agreement with HSBC which insulates defendants from any liability. (*Id.* ¶ 11.)This is also not an issue in *Jaffe.*

Moreover, even if the movant could satisfy LR 40.4(b)(4) on the merits, under LR 40.4(c), a motion to reassign must explicitly indicate how conditions required by section (b) will be met if the cases are found to be related. The judges of this Court have interpreted subsection (c) to impose an obligation on the moving party to specifically identify why each of the four conditions for reassignment under LR 40.4(b) is met. Here, the movant has failed to comply with LR 40.4(c) because the movant has failed to articulate why the cases are susceptible of disposition in a single proceeding. Although the common facts in this case may indirectly implicate LR 40.4(b)(4), nothing in the four corners of the motion argues that the cases are susceptible of disposition in a single proceeding. The plaintiff alleges that there is substantial overlap of issues and parties, but does not argue that a reassignment would satisfy LR 40.4(b)(4). In *Davis v. Quebecor World,* No. 01 C 8014, 2002 WL 27660, at \*3 (N.D.Ill. Jan. 10, 2002), another judge of this Court denied the motion to reassign because the movant failed to address whether the cases could be disposed of in a single proceeding and whether a reassignment would result in savings of judicial time and effort. Similarly, in *Daniels v. Pipefitters' Ass'n Local Union No. 597,* 174 F.R.D. 408, 411 (N.D.Ill.1997), another judge of this Court denied a motion to reassign because the movant failed to specifically explain how the conditions for reassignment were met, but rather made the general conclusory assertion that the conditions were met. This Court will not stray from the holdings of those courts so as to lower the bar for pleading under LR 40.4(c), which requires a movant to explicitly articulate reasons that satisfy each of the four LR 40.4(b) conditions. The movant in this case has failed to demonstrate how this Court could resolve the two cases in a single proceeding.

### CONCLUSION

**\*4** For the foregoing reasons, the Court denies with prejudice plaintiff's Motion for a Finding of Relatedness [doc. no. 45-1].

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21011757 (N.D.Ill.)
**2003 WL 21011757 (N.D.Ill.)**


SO ORDERED.

N.D.Ill.,2003.
Lawrence E. Jaffe Pension Plan v. Household Intern., Inc.
Not Reported in F.Supp.2d, 2003 WL 21011757 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

# GROUP EXHIBIT B-5

**Westlaw.**

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2004 WL 1631646 (N.D.Ill.)
**2004 WL 1631646 (N.D.Ill.)**

**H**
Machinery Movers, Riggers and Machinery Erect-
ors, Local 136 Defined Contribution Retirement
Fund v. Joseph/Anthony, Inc.
N.D.Ill.,2004.
Only the Westlaw citation is currently available.
    United States District Court,N.D. Illinois, Eastern
                    Division.
    MACHINERY MOVERS, RIGGERS, AND MA-
    CHINERY ERECTORS, LOCAL 136 DEFINED
    CONTRIBUTION RETIREMENT FUND, et al.,
                    Plaintiffs,
                        v.
    JOSEPH/ANTHONY, INC., a/k/a Joseph Anthony
      & Associates, Inc., et al., Defendants.
                 **No. 03 C 8707.**

                  July 16, 2004.

Marc M. Pekay, Idala H. Strouse, Marc M. Pekay,
P.C., Chicago, IL, for Plaintiffs and Counter-
Defendants.
Brian V. Alcala, Matkov, Salzman, Madoff &
Gunn, Craig T. Boggs, Perkins Coie LLC, Chicago
IL, for Defendants and Counter-Claimants.
Thomas L. Campbell, James H. Mutchnik, Petra
Renee Wicklund, Andrew Paul Bautista, Kirkland
& Ellis LLP, Chicago, IL, for Defendants.

          *MEMORANDUM OPINION AND ORDER*

ASPEN, J.
*1 Presently before us is Nationwide Investment
Services Corporation's ("Nationwide's") motion to
reassign Case No. 04 C 0821 (the "Ironworkers"
action) pursuant to Local Rule 40.4 based on that
case's alleged relatedness to a case currently
pending before this Court, Case No. 03 C 8707 (the
"Machinery Movers" action). Nationwide also re-
quests that we stay all further proceedings in the
Ironworkers action pending the non-appealable dis-
position of criminal cases which have been filed
against several of the parties and witnesses in-
volved in the Ironworkers and Machinery Movers

actions. For the following reasons, we deny the mo-
tion to reassign the case and therefore do not ad-
dress Nationwide's motion to stay.

                  *BACKGROUND*

A. The Machinery Movers Action

The plaintiffs in the Machinery Movers action are a
group of employee benefit funds (the "Machinery
Movers Funds") that are administered pursuant to
collective bargaining agreements between Ma-
chinery Movers, Riggers and Machinery Erectors,
Local 136 (the "Machinery Movers Union") and
various employers. The Machinery Movers Funds,
along with their trustees, filed suit against: Joseph/
Anthony, Inc. ("Joseph/Anthony"); Nationwide In-
vestment Services Corporation ("Nationwide");
Liz/Mar and Associates, Inc. ("Liz/Mar"); and Mi-
chael Linder, the President of both Joseph/Anthony
and Liz/Mar. According to the complaint, Joseph/
Anthony was the administrator of the Machinery
Movers Funds. The plaintiffs allege that, as Presid-
ent of Joseph/Anthony, Michael Linder recommen-
ded that the trustees select Nationwide to receive all
of the funds' future investments. Unbeknownst to
the plaintiffs, Linder (via Joseph/Anthony) received
unauthorized commissions from Nationwide for
bringing the in funds' business. The complaint also
alleges that Linder set up another entity, Liz/Mar,
which received additional unauthorized commission
payments from Nationwide. The plaintiffs claim
that the scheme set up by Linder via Joseph/An-
thony and Liz/Mar violated various provisions of
the Employee Retirement Income Security Act, 29
U.S.C. § 1001, *et seq.* ("ERISA").

B. The Ironworkers Action

The Ironworkers action is brought by a different
group of plaintiff benefit funds and their trustees.
The suit names as defendants: Nationwide Life In-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                        Page 2
Not Reported in F.Supp.2d, 2004 WL 1631646 (N.D.Ill.)
**2004 WL 1631646 (N.D.Ill.)**

surance Company; Nationwide Financial Services, Inc.; Nationwide Trust Company, FSB; Nationwide Financial Institution Distributors Agency, Inc.; and Nationwide Investment Services Corporation. Paragraph 13 of the Ironworkers action provides a summary of the allegations brought against the defendants:

While the Nationwide Defendants are separate legal entities, upon information and belief, some or all of them, along with persons and corporations acting as their employees or agents, acted to deprive the Plaintiff Funds and their participants of money that should have been invested on their behalf, through a scheme in which the Nationwide Defendants deducted money from Fund assets and paid fees, kickbacks, commissions, or other things of value to Michael G. Linder ("Linder") Liz/Mar and Associates, Inc. ("Liz/Mar"), and/or Joseph/Anthony & Associates, Inc. ("Joseph/Anthony"), in return for Linder's recommendation that the Funds invest their assets with Nationwide.

**\*2** The Ironworkers Action is brought pursuant to the Racketeer Influence and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO"). However, several of the predicate acts which underlie the RICO claims are premised upon alleged violations of ERISA. In Counts III, IV, and V, the Ironworkers plaintiffs also request rescission of the allegedly fraudulent contracts entered into between the funds and the defendants.

*ANALYSIS*

Northern District of Illinois Local Rule 40.4 provides for the reassignment of civil cases from one judge to another if certain conditions have been met. First, under Rule 40.4(a), the cases must be related. According to the rule, cases are related if they: 1) involve the same property; 2) involve the same issues of fact or law; 3) grow out of the same transaction or occurrence; or 4) in a class action, one or more of the classes involved are the same. Nationwide argues that the Ironworkers and Ma-

chinery Movers cases are related because they involve the same issues of fact or law.

Rule 40.4(a)"does not require complete identity of issues in order for cases to be considered related,"*Fairbanks Capital Corp. v. Jenkins,* 02-C-3930, 2002 WL 31655277, at \*2 (N.D.Ill. Nov.25, 2002), rather it is enough that the two cases "involve *some* of the same issues of fact or law."*Lawrence E. Jaffe Pension Plan v. Household Int'l., Inc.,* 02-C-5893, 2003 WL 21011757, at \*3 (N.D.Ill. May 5, 2003) (emphasis in original). Here, although there is very little overlap between the parties in each case, the allegations contained in both complaints are quite similar and involve the same group of alleged wrongdoers. Furthermore, although the central legal claims brought in each action appear to be different-the Machinery Movers action claims violations of ERISA, whereas the Ironworkers action brings claims under RICO-the predicate acts alleged in the RICO counts are based on underlying ERISA violations. Because there are some overlapping issues of fact and law in both cases, they are related within the meaning of 40.4(a).

Once the cases have been found to be related, Local Rule 40.4(b) imposes four additional conditions that must be satisfied before a case may be reassigned: 1) both cases must be pending in the Northern District of Illinois; 2) reassignment must result in a substantial savings of judicial time and effort; 3) "the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially;" and 4) the actions are susceptible to disposition in a single proceeding. Both the Machinery Movers and the Ironworkers actions are currently pending in the Northern District of Illinois, so the first criterion is easily satisfied. The plaintiffs in the Ironworkers action also concede that the Machinery Movers case is in the relatively early stages of litigation. Upon the parties' joint motion, the proceedings in the Machinery Movers action were stayed not long after

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1631646 (N.D.Ill.)
**2004 WL 1631646 (N.D.Ill.)**

Page 3

the defendants answered the complaint. The Iron-workers action is also in the very early stages of litigation; the complaint was filed on February 2, 2004 and Judge Guzman has granted the defendants' request to file their answer within five business days following this Court's decision on the motion to reassign. Therefore, the only two contentious issues regarding reassignment are whether doing so will result in a substantial savings of judicial time and effort and whether the actions are susceptible to disposition in a single proceeding.

**\*3** The Ironworkers plaintiffs argue that we should deny the motion to reassign because the defendants provide only conclusory statements as to how reassignment will result in substantial savings of judicial time and resources. Local Rule 40.4(c) requires parties to "indicate the extent to which the conditions required by section (b) will be met if the cases are found to be related."Furthermore, "[t]he judges of this Court have interpreted subsection (c) to impose an obligation on the moving party to specifically identify why each of the four conditions for reassignment under LR 40.4(b) is met."*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.,* 02-C-5893, 2003 WL 21011757, at \*3 (N.D.Ill. May 5, 2003). Thus, a court may deny a motion to reassign if a party fails to sufficiently apply the facts of the case to each of 40.4(b)'s requirements. *Id.* In this case, we agree that Nationwide's explanation regarding how reassignment will result in a substantial savings of judicial time and resources is inadequate. Nationwide states only that "[t]he weight of common factual and legal issues ... suggests strongly that there will be a substantial conservation of judicial resources if one court considers and decides those common issues ... By contrast, permitting the cases to proceed on separate tracks would result in duplication of (but not parallel or coordinated) discovery efforts, excess use of judicial resources, and the possibility of incongruent factual rulings on identical contracts."(Mem. in Support of Nationwide's Mtn. for Reassignment at 9.) Aside from offering these conclusory allegations, Nationwide fails to specify *how* combining

the cases will result in a substantial savings of judicial resources, nor does it pinpoint what issues for discovery will be the same in both cases or what matters are susceptible to disposition in a single proceeding. This failure to comply with Local Rule 40.4(c)'s requirement that parties "indicate the extent to which the conditions required by section (b) will be met if the cases are found to be related" is sufficient grounds, in and of itself, for denial of the motion to reassign. We need not rely on this technical ground for denial, however, because the parties cannot meet the requirements of Local Rules 40.4(b)(2), which requires that reassignment will result in a substantial savings of judicial time and effort or 40.4(b)(4), which requires that the actions be susceptible to disposition in a single proceeding.

First, comparison of the Ironworkers' complaint with the Machinery Movers' complaint reveals that we should deny the motion for reassignment on the merits because reassignment would not result in a substantial savings of judicial time and resources. First, although the schemes alleged in the two cases are similar, both the plaintiffs and the defendants are different in each case. As the Ironworkers plaintiffs point out, each of the cases is brought by a different group of plaintiffs and the only party officially named in both actions as a defendant is Nationwide Investment Services Corporation. This is because the Ironworkers plaintiffs chose to sue only legal entities associated with Nationwide; they did not include Linder, Liz/Mar, or Joseph/Anthony as defendants. Furthermore, the two cases are premised on different legal theories. The Machinery Movers complaint sets forth claims pursuant to ERISA only, whereas the Ironworkers case is brought under RICO. There is *some* overlap between the cases because the predicate acts which underlie the RICO action are premised on violations of ERISA. However, the alleged ERISA violations make up just one element of a RICO claim. To succeed in a RICO action, the Ironworkers plaintiffs must demonstrate that the defendants engaged in: 1) the conduct; 2) of an enterprise; 3) through a pattern; 4) of racketeering activity. *See*

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 4
Not Reported in F.Supp.2d, 2004 WL 1631646 (N.D.Ill.)
**2004 WL 1631646 (N.D.Ill.)**

*Richmond v. Nationwide Cassel, L.P.,* 52 F.2d 640, 644 (7th Cir.1995). The issues of whether the various Ironworkers defendants comprised an "enterprise" within the meaning of RICO or whether the alleged ERISA violations amounted to a pattern of racketeering activity are not at all relevant to the Machinery Movers action. Furthermore, the Ironworkers plaintiffs have also brought rescission claims that are unrelated to the Machinery Movers case. All of these issues would have to be dealt with separately in the Ironworkers action, and the reassignment of the case to this Court's calendar would not make the proceedings any more efficient this respect. In short, although there may be *some* judicial resources saved by bringing together the two actions, there will not be the *"substantial* saving of judicial time and effort" that is contemplated by Rule 40.4. *See*L.R. 40.4(b)(2) (emphasis added); *see also Lawrence E. Jaffe Pension Plan,* 2003 WL at *2 (emphasizing that the saving of judicial time and effort must be *substantial* in order for reassignment to be appropriate under Rule 40.4(b)(2)).

**\*4** These same considerations lead us to find that Nationwide has not satisfied its burden of demonstrating that Rule 40.4(b)'s fourth requirement-that the cases are amenable to disposition in a single proceeding-is met. Courts have held that cases are not susceptible to disposition in one proceeding where both cases present unique issues of law and fact. *Id.* at 3;*see also Clark v. Insurance Car Rentals, Inc.,* 42 F.Supp.2d 846, 849 (N.D.Ill.1999). As set forth above, although there is some legal and factual overlap between the Ironworkers and Machinery Movers actions, the issues that are unique to each case predominate. We thus find that reassignment is not appropriate.

## CONCLUSION

For the foregoing reasons, Nationwide's motion to reassign is denied. It is so ordered.

N.D.Ill.,2004.
Machinery Movers, Riggers and Machinery Erect-
ors, Local 136 Defined Contribution Retirement Fund v. Joseph/Anthony, Inc.
Not Reported in F.Supp.2d, 2004 WL 1631646 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

# GROUP EXHIBIT B-6

Westlaw.

Not Reported in F.Supp.                                           Page 1
Not Reported in F.Supp., 1995 WL 769327 (N.D.Ill.)
**1995 WL 769327 (N.D.Ill.)**

**H**
Snitchler v. Allsteel, Inc.
N.D.Ill.,1995.
Only the Westlaw citation is currently available.
    United States District Court, N.D. Illinois, Eastern
                       Division.
            Horace SNITCHLER, Plaintiff,
                          v.
          ALLSTEEL, INC., Defendant.
                  **No. 95 C 4975.**

                    Dec. 28, 1995.

             *MEMORANDUM AND ORDER*

MORAN, Senior District Judge:
*1 Plaintiff Horace Snitchler (Snitchler) brought
this action against Allsteel, Inc. (Allsteel) for
breaching its fiduciary duty to the participants in
the All-Steel Pension Plan No. 1 (Plan) in violation
of the Employee Retirement Income Security Act
(ERISA), 29 U.S.C. §§ 1001-1461. In a different
matter currently pending in the Northern District of
Illinois before Judge Manning, *Johnson, et al. v.
Allsteel, Inc., et al.*, No. 95 C 4976, Allsteel is one
of four named defendants charged by a group of
Plan participants headed by Charles Johnson
(Johnson plaintiffs) with breach of fiduciary duty,
wrongful refusal to pay benefits and violation of §
204(g) of ERISA and § 301 of the Labor-
Management Relations Act (LMRA) in relation to
the distribution of 1991 supplements under the
Plan. Defendant Allsteel now moves to transfer the
*Johnson* case to our calendar and to consolidate it
with the *Snitchler* case. We deny the motion.

                    *DISCUSSION*

Under Local Rule 2.31(B) of the Northern District
of Illinois, reassignment of a case to the calendar of
another judge is appropriate only when each of the
following criteria is met:

(1) both cases are pending;

(2) the handling of both cases by the same judge is
likely to result in a substantial saving of judicial
time and effort;

(3) the earlier case has not progressed to the point
where designating a later filed case as related
would be likely to delay the proceedings in the
earlier case substantially; and

(4) where a finding of relatedness is requested on
the basis of common questions of law, such ques-
tions are complex or numerous; or where such a
finding is requested on the basis of common ques-
tions of fact, such questions are susceptible of res-
olution in a joint hearing.

Two cases are related if they involve the same
property, the same issues of fact or law, or grow out
of the same transaction or occurrence. Local Rule
2.31(A) (May, 1995).

Here, Allsteel asserts that the *Johnson* and *Snitchler*
actions are related to one another and meet the cri-
teria for reassignment enumerated *supra*. We dis-
agree with both assertions. The *Johnson* case deals
exclusively with the 1991 amendment to the Plan
and defendants' withholding of pension supple-
ments from allegedly eligible Plan
participants.[FN1] The Johnson plaintiffs claim that
they intended to retire within the required time to
receive early retirement benefits, but did not do so
because defendants misinformed them about the ac-
tual cutoff date for retirement. The case was
brought against not only Allsteel, the Plan's fidu-
ciary, but against Allsteel's parent company, BTR
Nylex, Limited (Nylex), Nylex's parent, BTR, PLC
(BTR), and a John Doe insurance company, ABC
Insurance Company (ABC). Plaintiffs' only claim
for relief is to receive the pension supplements that
they assert were wrongfully denied them.

In contrast, the *Snitchler* case is significantly more
broad-based, names only Allsteel as a defendant,

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 769327 (N.D.Ill.)
**1995 WL 769327 (N.D.Ill.)**

Page 2

and pursues an equitable rather than a legal remedy. Snitchler seeks to have Allsteel removed as Plan administrator, to have the Plan assets placed in a constructive trust, to ensure that the Plan be funded properly and to force Allsteel to reimburse the Plan for assets improperly spent. While Allsteel's failure to distribute the 1991 pension supplements to eligible participants is part of Snitchler's complaint, plaintiff claims no personal damages from it. It appears that the 1991 pension supplements will be only one of many issues in *Snitchler*, which relates to Allsteel's more general shortcomings as the Plan's fiduciary.

**\*2** Specifically, Snitchler alleges that Allsteel "routinely failed to give participants a fair administrative hearing on their claims;" "failed to provide benefits to all participants entitled [to them];" "failed to provide in a timely and appropriate manner information to participants as to their rights and obligations under the Plan;" "failed to fund [the Plan] as required by the Plan and ERISA;" "conducted [a related litigation] in a manner that is inconsistent with its duties as fiduciary;" "improperly expended Plan resources to defend against meritorious claims;" acted discriminatorily against certain applicants for benefits; acted to protect its litigation interests rather than the interests of the Plan participants; "retained counsel that has not rendered advice in the interest of Plan participants and that has a conflict of interest that significantly affects counsel's objectivity;" and "inappropriately ceded discretionary authority to pay participants' claims to its insurer and has, as a result, not paid, or offered to pay, claims, or portions of claims, which payment Allsteel otherwise believes warranted, because the insurer will not reimburse such payment." The *Johnson* case does not raise any of these issues.

Individual questions of fact and law thus greatly outweigh those that are common between the *Johnson* and *Snitchler* actions.[FN2] As a result, there is little to suggest that the cases can be more efficiently resolved by one judge rather than two. Nor

are we greatly concerned at this stage with the possibility of there being different judgments on the common issues. Even if Allsteel is found to have breached its duty to the Plan participants in one case but not the other, the risk of imposing inconsistent or conflicting obligations on Allsteel is slight since the actions seek entirely different, non-overlapping remedies.

Furthermore, despite the fact that defendants have not yet filed an answer in *Johnson*, it appears that the case is almost ready for trial. In a case recently settled in this district, *Meredith, et al. v. Allsteel, Inc.*, No. 92 C 1856, many of the legal issues involved in *Johnson* were resolved and the factual construct for recovery established. *See Meredith v. Allsteel, Inc.*, 814 F.Supp. 657 (N.D.Ill.1992), *aff'd in part, reversed in part,* 11 F.3d 1354 (7th Cir.1994), *on remand to* 1994 WL 383925 (N.D.Ill.1994). *Snitchler*, which is much broader than both *Meredith* and *Johnson*, and probably will encounter significant delays due to discovery and the resolution of unique legal issues, is not close to trial. Thus, if we were to consolidate the case with *Snitchler* at this point, the prompt resolution of *Johnson* would be jeopardized.[FN3] Where "individual questions of fact and law in each case outweigh the common, and consolidation of the later filed case with the earlier is likely to cause substantial delay," reassignment under Rule 2.31 is inappropriate. *Henderson v. National R.R. Passenger Corp.*, 118 F.R.D. 440, 441 (N.D.Ill.1987). Furthermore, although the naming of different defendants in the later-filed action, *see Applied Web Systems, Inc. v. Catalytic Combustion Corp.*, 1991 WL 70893, \*2 (N.D.Ill.1991), and the seeking of different relief, *see Chicago Fire Fighters Union Local No. 2, et al. v. Harold Washington, et al.*, 1989 WL 6770, \*3 (N.D.Ill.1989),[FN4] do not prohibit us from granting Allsteel's motion for reassignment, they do constitute additional factors against it.

**\*3** In sum, we find *Johnson* and *Snitchler* not to be related under Local Rule 2.31(A), and we decline to authorize *Johnson's* reassignment to our calendar or

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 769327 (N.D.Ill.)
**1995 WL 769327 (N.D.Ill.)**

Page 3

to consolidate the action with *Snitchler.* We expect, however, the parties in the two cases to coordinate discovery to the extent practicable, so as to avoid any duplication.

## CONCLUSION

For the foregoing reasons, we deny defendant's motion to transfer and consolidate.

FN1. Allsteel notes that the *Johnson* complaint contains one paragraph which makes more general allegations. Specifically, the Johnson plaintiffs allege:

Allsteel *routinely* conducts itself as an adversary to participants, unnecessarily and improperly withholds requested information from participants, intimidates participants attempting to vindicate their rights under the Plan and acts with open antagonism or indifference to participants' interests. *Johnson* complaint ¶ 40 (emphasis added).

This paragraph is identical to paragraph 41 of the *Snitchler* complaint. It is clear, however, that these general issues will be relatively minor ones as the case proceeds, for the Johnson plaintiffs only seek to recover the pension supplements which they claim were wrongly denied them. Since no general relief is sought, it seems unlikely that Allsteel's "routine" as fiduciary of the pension fund will be explored to any great extent.

FN2. This is true despite the facts that Allsteel is a party in both cases, the Plan is the focus of each case, plaintiff's counsel is the same in the two actions, and entire paragraphs and extensive sections of other paragraphs of the complaints are identical. Indeed, as Allsteel notes, virtually the entire "Background" sections of the complaints are the same, each focusing on the

1991 pension supplements. However, the crux of *Snitchler* 's case is found in its breach of fiduciary duty count, and it is in this section of the complaint that the case fundamentally differs from *Johnson.*

FN3. Allsteel argues that the factual situation presented in the *Johnson* and *Snitchler* actions parallels that of the two cases consolidated in *Robbins v. Pepsi Cola Metropolitan Bottling Co.,* 1985 WL 5130 (N.D.Ill.1985). We disagree. The *Robbins* actions were found to have "overriding factual and legal similarit[ies]," and Judge Nordberg determined that consolidation would "result in a considerable saving of judicial time and effort." *Id.* at *2-3. Neither of these factors is present here. Since *Johnson* is essentially ready for trial, a point which Allsteel barely contests, few if any resources would be saved by reassigning it or consolidating it with *Snitchler* at this stage. Furthermore, the partial resolution of complex issues in *Meredith* distinguishes this situation from the one in *Robbins,* where *both* actions involved novel, complex, and unresolved legal issues. Judge Manning's effort in the *Johnson* case will not simply duplicate the resources expended in these chambers.

FN4. There appears to be no precedent for the reassignment and consolidation of two cases which seek *wholly different* relief, such as the *Johnson* and *Snitchler* actions.

N.D.Ill.,1995.
Snitchler v. Allsteel, Inc.
Not Reported in F.Supp., 1995 WL 769327 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

# GROUP EXHIBIT B-7

Not Reported in F.Supp.2d                                        Page 1
Not Reported in F.Supp.2d, 2003 WL 21801428 (N.D.Ill.)
**2003 WL 21801428 (N.D.Ill.)**

**H**
Sunstar, Inc. v. Alberto-Culver Co., Inc.
N.D.Ill.,2003.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern
Division.
SUNSTAR, INC., Plaintiff,
v.
ALBERTO-CULVER COMPANY, INC. and Bank
One Corporation f/k/a First National Bank of
Chicago, Defendants.
andALBERTO-CULVER COMPANY, a Delaware
Corporation, Plaintiff,
v.
SUNSTAR, INC., a Japanese corporation, Sunstar
Group Company (f/k/a Alberto-Sunstar Co., Ltd.), a
Japanese corporation, Kaneda, Kasan, Kabushiki
Kaisha, a Japanese corporation, and Bank One, Na-
tional Association, as Trustee under Trust Agree-
ment No. 22-81196, dated February 27, 1980, a na-
tional banking association, Defendants.
**No. Civ.A. 01 C 0736, Civ.A. 01 C 5825.**

Aug. 1, 2003.

*MEMORANDUM OPINION AND ORDER*

GUZMAN, J.
**\*1** This matter is before the Court on Sunstar, Inc.
and Kaneda, Kosan, Kabushiki Kaisha's Motion for
Reassignment Based on Relatedness pursuant to
Local Rule 40.4 between *Alberto-Culver Co. v.
Sunstar,* No. 03 C 0123 (*"Alberto II"* ) and two
previously consolidated cases pending before this
Court-*Sunstar v. Alberto-Culver Co.,* No. 01 C
0736 (the *"Sunstar* Action") and *Alberto-Culver
Co. v. Sunstar,* No. 01 C 5825 (*"Alberto I"* )
(collectively, the *"Consolidated Cases"*). For the
following reasons, the Court denies Movants' mo-
tion without prejudice.

*BACKGROUND*

In February 1980, Sunstar, Inc. ("Sunstar"), Al-
berto-Culver Company ("Alberto"), and Bank One,
National Association f/k/a First National Bank of
Chicago ("Bank One") entered into various agree-
ments regarding the sale of Japanese VO5 trade-
marks (the "1980 Agreements"). Specifically, Al-
berto sold and assigned certain Japanese VO5
trademark registrations (the "Licensed Trade-
marks") to Sunstar, to be held in trust by Bank One
as Trustee for Sunstar's benefit for 99 years. Con-
currently, the Trustee granted Sunstar a 99-year ex-
clusive Japanese trademark license for the Licensed
Trademarks in Japan. After the 99-year term of the
license was over, Sunstar would assume full legal
title to the Licensed Trademarks. (Sunstar's Mot.
for Reassignment Based on Relatedness, Ex. E, at 3.)

In 1999, a dispute developed between Sunstar and
Alberto regarding whether a particular mark that
Sunstar was using in Japan (the "1999 Mark") was
or was not within the scope of Sunstar's license
rights under the 1980 Agreements. That dispute
gave rise to the *Sunstar* Action and *Alberto I,* which
cases currently are pending before this Court and
were consolidated in August 2001.(*Id.*)

The *Sunstar* Action was filed in February 2001. In
that action, Sunstar asserted various tort and con-
tract claims against Alberto and Bank One arising
from Bank One's suspension of Sunstar's license
rights under the 1980 Agreements. The alleged
ground for Bank One's suspension of Sunstar's li-
cense rights was Sunstar's use of the 1999 Mark in
violation of the 1980 Agreements. In response to
Sunstar's complaint, Alberto filed affirmative de-
fenses and counterclaims, and it initiated *Alberto
I.*(*Id.* at 5.)

In *Alberto I,* which was attached to the *Sunstar* Ac-
tion as a related case in July 2001, Alberto com-
plained that Sunstar's use of the 1999 Mark was a
supposed breach of the 1980 Agreements. It sought
an injunction preventing Sunstar from using the

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21801428 (N.D.Ill.)
**2003 WL 21801428 (N.D.Ill.)**

1999 Mark or the Licensed Trademarks and requested termination of the License Agreement. The Consolidated Cases proceeded through discovery. Then, following the close of discovery, Alberto moved to amend the *Alberto I* complaint. Therein, Alberto sought to add counts alleging Sunstar's failure to keep the Licensed Trademarks in continuous use in violation of Japanese trademark-use requirements and alleging Sunstar's submission of false use certificates in violation of the 1980 Agreements.*Id.* at 9. The court denied leave to amend, specifically stating that discovery had closed and "the date for amendment of the pleadings ha[d] far passed."(Order denying Pl.'s Mot. for Leave to Amend Its Compl., Affirmative Defenses, and Countercls. (Oct. 29, 2002) (the "Oct. 29, 2002 Order").)

**\*2** *Alberto II* is presently pending before another judge of this Court. In *Alberto II,* Alberto raised issues virtually identical to those contained in its proposed amendment to the *Alberto I* complaint, which the court denied leave to amend on October 29, 2002.

By the instant motion, Movants' seek to reassign *Alberto II* based on relatedness with the Consolidated Cases.

## DISCUSSION

To reassign a case under LR 40.4, Movants must satisfy the requirements of LR 40.4(a) and LR 40.4(b). First, LR 40.4(a) provides that "[t]wo or more civil cases may be related if one or more of the following conditions are met: (1) the cases involve the same property; (2) the cases involve some of the same issues of fact or law; (3) the cases grow out of the same transaction or occurrence; or (4) in class action suits, one or more of the classes involved in the cases is or are of the same."

Here, *Alberto II* meets the requirements of LR 40.4(a) for relatedness. It is undisputed that the *Sunstar* Action, *Alberto I,* and *Alberto II* each arise

from a dispute surrounding Sunstar's use of the 1999 Mark and the parties' rights in the Licensed Trademarks. Further, each case has at its core a claim for breach of the 1980 Agreements, and none are class actions suits. Thus, LR 40.4(a) is satisfied.

Second, LR 40.4(b) requires that each of the following four criteria be met: "(1) both cases are pending in this Court; (2) the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort; (3) the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially; and (4) the case are susceptible of disposition in a single proceeding."

Here, the first and fourth conditions are satisfied. *Alberto II* and the Consolidated Cases are pending before the United States District Court for the Northern District of Illinois and, had the cases been brought together in a timely manner, they likely would have been susceptible of disposition in a single proceeding. The cases, however, fail to satisfy the second and third conditions of LR 40.4(b).

The Court finds that LR 40.4(b)(3), which requires Movants to show that the Consolidated Cases have not progressed to the point where designating *Alberto II* as related would delay the proceedings in the Consolidated Cases substantially, has not been met. Discovery closed in the Consolidated Case approximately one year ago; dispositive motions were ruled upon on November 7, 2002. A trial date was initially set in the Consolidated Cases for November 25, 2002, and they were transferred to this Court on November 14, 2002, specifically for trial. Although a new trial date has not yet been set, the Consolidated Cases have progressed to the eve of trial, whereas *Alberto II* is merely six months old and pending on preliminary motions. *See Erwin v. City of Chicago,* No. 90 C 905, 1998 WL 801830, at \*2 (N.D.Ill. Nov. 12, 1998) (denying reassignment where one case had progressed to the eve of trial but the other had not); *Robinson v. Burlington N.R..R..,* No. 95 C 6781, 1997 U.S. Dist. LEXIS

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 3
Not Reported in F.Supp.2d, 2003 WL 21801428 (N.D.Ill.)
**2003 WL 21801428 (N.D.Ill.)**

7886, at *4 (N.D. Ill. June 3, 1997) (denying reassignment where cases were not proceeding at the same pace); *S Indust. v. GMI Holdings,* No. 96 C 2232, 96 C 4140, 1996 U.S. Dist. LEXIS 18285, at *5 (N.D.Ill.Dec. 5, 1996) (same). Should *Alberto II* be reassigned based on relatedness to the *Sunstar* Action and *Alberto I* at this time, it would inevitably lead to substantial delay in disposition of these earlier cases.

**\*3** Next, this Court finds there would be no "substantial" saving of judicial time and effort as required by LR 40.4(b)(2). To the contrary, because the Consolidated Cases have progressed to the eve of trial and *Alberto II* is at the pleadings stage, reassigning *Alberto II* based on relatedness would not only delay the proceedings in the Consolidated Cases but it would be an inefficient use of judicial time. *Id.* Moreover, a decision rendered in the Consolidated Cases could collaterally estop relitigation of those issues in *Alberto II,* and the court could apply those rulings when deciding this latter-filed case. *See Research Res. v. Dawn Food Prods.,* No. 01 CV 1906, 2001 WL 1223556, at \*9 (N.D.Ill. Oct. 11, 2001).

Even if Movants could satisfy LR 40.4(b)(2) and (3) on the merits, judges of this Court have interpreted LR 40.4(c) to impose an obligation on Movants to specifically identify why each of the four conditions for reassignment under LR 40.4(b) is met. Here, Movants failed to comply with LR 40.4(c) because Movants' motion merely asserts conclusions of law without more. *See Davis v. Quebecor World,* No. 01 C 8014, 2002 WL 27660, at \*3 (N.D.Ill. Jan. 10, 2002) (denying reassignment where movant failed to explain relatedness in sufficient detail to satisfy LR 40.4(c)); *Daniels v. Pipefitters' Ass'n Local Union No. 597,* 174 F.R.D. 408, 411 (N.D.Ill.1997) (denying reassignment where movant failed to specifically explain how the conditions for reassignment were met, but rather made general conclusory assertions that the conditions were met)."This Court will not stray from the holdings of those courts so as to lower the bar for

pleading under LR 40.4(c), which requires [Movants] to explicitly articulate reasons that satisfy each of the four LR 40.4(b) conditions."*Lawrence E. Jaffe Pension Plan v. Household Int'l,* No. 02 C 5893, 2003 WL 21011757, at \*3 (N.D.Ill. May 5, 2003).

Finally, a judge of this Court previously denied Alberto leave to amend its complaint in the Consolidated Cases. (Oct. 29, 2002 Order.) The recently-filed *Alberto II* complaint is comprised of issues virtually identical to those contained in its proposed amendment to the *Alberto I* complaint. Therefore, this Court finds *Alberto II* is an inappropriate attempt to circumvent this Court's Order of October 29, 2002.

Movants in this case have failed to demonstrate how the handling of both cases by this Court is likely to result in a substantial saving of judicial time and effort and that the Consolidated Cases have not progressed to the point where designating *Alberto II* as related would be likely to delay the proceedings in the Consolidated Cases substantially. Further, this Court will not entertain Alberto's thinly-veiled attempt to circumvent its Orders.

*CONCLUSION*

For the foregoing reasons, the Court denies without prejudice Movants' Motion for Reassignment Based on Relatedness [# 0-1].

So Ordered.

N.D.Ill.,2003.
Sunstar, Inc. v. Alberto-Culver Co., Inc.
Not Reported in F.Supp.2d, 2003 WL 21801428 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

# GROUP EXHIBIT B-8

Westlaw.

Slip Copy                                                                 Page 1
Slip Copy, 2007 WL 178309 (N.D.Ill.)
**2007 WL 178309 (N.D.Ill.)**

**C**
Williams v. Walsh Const.
N.D.Ill.,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern
Division.
Alphonso WILLIAMS, Plaintiff,
v.
WALSH CONSTRUCTION, Defendants.
**No. 05 C 6807.**

Jan. 16, 2007.

Michael Irving Leonard, Meckler, Bulger & Tilson,
Chicago, IL, for Plaintiff.
Tom H. Luetkemeyer, Aimee Elizabeth Delaney,
Hinshaw & Culbertson LLP, Chicago, IL, for De-
fendant.

*MEMORANDUM OPINION AND ORDER*

DARRAH, J.
*1 Plaintiff, Alphonso Williams, filed suit against
Defendant, Walsh Construction, alleging race dis-
crimination, harassment, and retaliation in violation
of Title VII of the Civil Rights Act of 1964.
Presently before the Court is Defendant's Motion
for Reassignment of an allegedly related case pur-
suant to Local Rule 40.4.

BACKGROUND

On December 1, 2005, Williams filed suit in this
Court against his former employer, Walsh Con-
struction ("the Williams case"). Williams alleged
that he was employed by Walsh from September
2000 until his termination on February 10, 2002. At
the time of his termination, Williams was a Labor
Supervisor. Based on Williams' race, African-
American, Walsh: reduced his hours of work;
denied him the means to perform his duties, includ-
ing tools and a truck to carry tools; treated non-
African-American employees more favorably;
denied Williams' incentive and bonus pay; and

forced Williams to single out other African-
American employees for termination. Williams'
claims are: race discrimination, harassment, and re-
taliation in violation of Title VII and 42 U.S.C. §
1981.

In early 2006, the parties in the Williams case en-
gaged in settlement negotiations, which were un-
successful. Thereafter, the case was scheduled for a
April 30, 2007 jury trial, with discovery closing on
December 26, 2006, and a pretrial conference
scheduled for April 26, 2007.

On July 28, 2006, Wallace Bolden and eleven other
named plaintiffs filed a class-action complaint
against Walsh ("the Class Action"). This later suit,
06 C 4104, was assigned to Judge Joan H. Lefkow.
The named plaintiffs in the Class Action were
laborers, labor supervisors, and labor foremen. The
Class Action alleges that Walsh discriminated
against African-American employees from January
2001 though the present by laying-off, discharging,
constructively discharging, and/or failing to hire
African-Americans. The eleven counts of the Class
Action are race discrimination, retaliation, and ter-
mination in violation of Title VII and 42 U.S.C. §
1981. The allegations that form the basis of the
claims include: a hostile work environment, dispar-
ate impact, denial of overtime, receipt of more dan-
gerous assignments because of race, retaliation for
complaining of sexual harassment, and refusal to
hire or rehire based on race.

Pursuant to Judge Lefkow's October 31, 2006
Minute Order, non-expert class-certification discov-
ery for the Class Action is to be completed by June
15, 2007; and plaintiffs' motion for class certifica-
tion is to be briefed as follows: motion to be filed
by November 16, 2007, response due by December
14, 2007, and reply brief due by January 28, 2008.

Williams and the Class Action plaintiffs oppose re-
assignment of the Class Action.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 178309 (N.D.Ill.)
**2007 WL 178309 (N.D.Ill.)**

### LEGAL STANDARD

In reviewing a motion to reassign a case on the basis of relatedness, the moving party must satisfy the requirements of both LR 40.4(a) and 40.4(b).*Hollinger International, Inc. v. Hollinger, Inc.,* 2004 WL 1102327, at *1 (N.D.Ill. May 5, 2004)(*Hollinger* ). The court has discretion to reassign the case pursuant to LR 40.4. *Clark v. Ins. Car Rentals Inc.,* 42 F.Supp.2d 846, 847 (N.D.Ill.1999)(*Clark* ). Under LR 40.4(a), "[t]wo or more civil cases may be related if: "(1) the cases involve the same property; (2) the cases involve some of the same issues of fact or law; (3) the cases grow out of the same transaction or occurrence; or (4) in class-action suits, one or more of the classes involved in the cases is or are of the same."LR 40.4. Only one of the above conditions must be met to satisfy LR 40.4(a).

**\*2** Once the cases are determined to be related under LR 40.4(a), LR 40.4(b) requires more stringent criteria for the case to qualify for reassignment. *See Clark,* 42 F.Supp.2d at 848. LR 40.4(b) requires that to be reassigned: "(1) both cases are pending in this Court; (2) the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort; (3) the earlier case has not progressed to the point where designating a later-filed case as related would be likely to substantially delay the proceedings in the earlier case; and (4) the cases are susceptible of disposition in a single proceeding."Under 40.4(b)(2), the judicial savings alleged by the moving party must be substantial; a mere assertion that some judicial time and effort would be saved by reassignment is insufficient. *Hollinger,* 2004 WL 1102327 at *2 (citing *Lawrence Jaffe Pension Plan v. Household Int'l, Inc.,* 2003 WL 21011757 at *2 (N.D.Ill. May 5, 2003)). Likewise, if the cases will require different discovery, legal findings, defenses or summary judgment motions, it is unlikely that reassignment will result in a substantial judicial savings. *See Hollinger,* 2004 WL 1102327 at *2;*Donahue v. Elgin Riverboat Resort,* 2004 WL 2495642 at *1

(N.D.Ill. Sept.28, 2004)(*Donahue* ). Also, cases are rarely susceptible to disposition in one proceeding pursuant to 40.4(b)(4) where the cases involve unique issues of law and fact and those unique characteristics are dominant. *See Machinery Movers, Riggers, and Machinery Erectors, Local 136 Defined Contribution Retirement Fund v. Joseph/Anthony, Inc.,* 2004 WL 1631646 at *4 (N.D.Ill. July 16, 2004)(*Machinery Movers* ) (citing *Clark,* 42 F.Supp.2d at 849);*see also Donahue,* 2004 WL 2495642 at *1 (motion to reassign denied where all cases involved Title VII claims, but each case was based on a unique set of facts different from every other case involved).

In addition, LR 40.4(c) requires that a motion to reassign: "(1) set forth the points of commonality of the cases in sufficient detail to indicate that the cases are related within the meaning of section (a) and (2) indicate the extent to which the conditions required by section (b) will be met if the cases are found to be related."These provisions "impose an obligation on the moving party to specifically identify why each of the four conditions under LR 40.4(b) is met."*Machinery Movers,* 2004 WL 1631646 at *3 (N.D.Ill. July 16, 2004); *Lawrence Jaffe Pension Plan,* 2003 WL 21001757 at *3. Thus, a motion for reassignment may be denied if a party fails to sufficiently plead each of 40.4(b)'s requirements. *Machinery Movers,* 2004 WL 1631646 at *3.

### ANALYSIS

Both cases involve *some* of the same issues of fact or law; accordingly, the cases are related under LR 40.4(a). However, Walsh has failed to demonstrate that the cases satisfy all of the requisite criteria of LR 40.4(b). While the cases are both pending in court in this district, Walsh has failed to demonstrate that: (1) handling of both cases would likely result in a substantial savings of judicial time and effort; (2) the Williams case has not progressed to a point where reassigning the later-filed case would likely substantially delay the proceedings in the

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 178309 (N.D.Ill.)
**2007 WL 178309 (N.D.Ill.)**

Williams case; and (3) the cases are susceptible of disposition in a single proceeding.

*3 Walsh argues that reassigning the Class Action would likely result in a substantial savings of judicial time and effort because of the similar allegations and claims between the plaintiffs. While some of the claims and allegations are similar in both suits, the Class Action contains allegations and claims that are not present in the Williams suit. The most obvious distinction is the extensive discovery and motion practice involved in the class allegations that are not present in the Williams case. Furthermore, in light of the different claims and specific supporting allegations, a finding in one case would not likely be dispositive of any issues in the other cases. *See Donahue,* 2004 WL 2495642 at *3. Thus, the cases are not likely to reach disposition in a single proceeding.

More significantly, the Williams case has progressed to a point where reassigning the Class Action would substantially delay the proceedings in the Williams case. The parties in the Williams case have unsuccessfully attempted to settle the case. Discovery in the Williams case is scheduled to close December 26, 2006; and trial is scheduled for April 30, 2007. On the other hand, non-expert class discovery for the Class Action is not scheduled to close until June 15, 2007; and the motion for class certification will not be fully briefed until January 28, 2008. Accordingly, without reassignment, the Williams case is scheduled to progress through trial before non-expert class discovery is scheduled to close and more than six months before the motion for class certification will be decided. Clearly, reassignment would result in a *significant* delay in the Williams case if the class-action discovery, briefing and certification schedule were imposed on this case through reassignment of Judge Lefkow's case to this Court.

Based on the above, LR 40.4(b) has not been met. Accordingly, Walsh's Motion for Reassignment is denied.

CONCLUSION

For the reasons stated above, Walsh's Motion for Reassignment is denied.

N.D.Ill.,2007.
Williams v. Walsh Const.
Slip Copy, 2007 WL 178309 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

Daniel S. Dooley, an attorney, certifies that true and correct copies of the foregoing

Motion to Vacate and to Oppose Order Reassigning Case were transmitted to and served upon

counsel for the parties named below, in the methods described below, on August 8, 2008.

### ELECTRONIC NOTICE *VIA* ECF

David G. Sigale
Law Firm of David G. Sigale, P.C.
Corporate West 1
4300 Commerce Court, Suite 300-3
Lisle, Illinois 60532
*Counsel for Illinois State Rifle Association, Second Amendment Foundation, Adam Orlov, Colleen Lawson, David Lawson, and Otis McDonald*

Alan Gura
Gura & Possessky, PLLC
101 North Columbus Street
Suite 405
Alexandria, Virginia 22314
*Counsel for Illinois State Rifle Association, Second Amendment Foundation, Adam Orlov, Colleen Lawson, David Lawson, and Otis McDonald*

Lance C. Malina
Jacob Karaca
Klein, Thorpe and Jenkins, Ltd.
20 North Wacker Drive, Suite 1660
Chicago, Illinois 60606
*Counsel for the Village of Oak Park*

Michael A. Forti
Mardell Nereim
Andrew W. Worseck
William Macy Aguiar
Rebecca Alfert
City of Chicago Department of Law
30 North LaSalle Street, Suite 1230
Chicago, Illinois 60602
*Counsel for the City of Chicago*

### *VIA* FACSIMILE and US MAIL

Stephen A. Kolodziej
Brenner, Ford, Monroe & Scott, Ltd.
33 North Dearborn Street
Suite 300
Chicago, Illinois 60602
Fax: 312-781-9202
*Counsel for National Rifle Association of America, Inc., Dr. Kathryn Tyler, Anthony Burton, Van F. Welton, and Brett Wilson*