**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| OTIS McDONALD, et al., | ) | Case No. 08-C-3645 |
| | ) | |
| Plaintiffs, | ) | PLAINTIFFS' MOTION FOR INSTRUCTIONS |
| | ) | RE: ATTORNEY FEES AND COSTS |
| v. | ) | [LOCAL RULE 54.3(g)] |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**PLAINTIFFS' MOTION FOR INSTRUCTIONS RE:
ATTORNEY FEES AND COSTS**

NOW COME the Plaintiffs, OTIS McDONALD, ADAM ORLOV, COLLEEN LAWSON, DAVID LAWSON, SECOND AMENDMENT FOUNDATION, INC. and ILLINOIS STATE RIFLE ASSOCIATION, by and through LAW FIRM OF DAVID G. SIGALE, P.C. and GURA & POSSESSKY, PLLC, their attorneys, and, pursuant to Local Rule 54.3(g) move this honorable Court for instructions regarding their Motion for Attorney Fees and Costs.

In support of said motion, Plaintiffs aver:

1. On June 28, 2010, the Supreme Court entered a "judgment" for Plaintiffs and against Defendant; *see* Exhibit 1;

2. The Supreme Court had recently held that municipal handgun bans violate the Second Amendment. "Whatever the reason, handguns are the most popular weapon chosen by Americans for self-defense in the home, and a complete prohibition of their use is invalid." *District of Columbia* v. *Heller*, 128 S. Ct. 2783, 2818 (2008);

3. The Supreme Court's opinion in this case held that the Second Amendment is "fully applicable" to Defendant. *McDonald* v. *City of Chicago*, 130 S. Ct. 3020, 3026 & 3046 (2010) (plurality); 130 S. Ct. at 3058 (Thomas, J.);

4. Recognizing that this opinion struck down its handgun ban, Defendant immediately repealed its handgun ban;

5. Notwithstanding the existence of other claims, the Seventh Circuit held the case was mooted by repealing legislation. On remand, the Seventh Circuit provided that "[i]f plaintiffs believe that the repeals entitle them to attorneys' fees under 28 [sic] U.S.C. §1988, they may file appropriate motions in the district court." The Seventh Circuit stated that it expressed no opinion on the availability of fees;

6. Pursuant to Local Rule 54.3, Plaintiffs had already begun negotiations regarding the amount of attorney fees and costs to which they are entitled under 42 U.S.C. § 1988. Requested settlement information was provided to Defendant on August 6 and again on August 30, and the parties discussed the provided information;

7. Despite numerous requests, Defendant steadfastly refused to respond to Plaintiffs' demands, other than to promise, repeatedly, that a substantive response was forthcoming and the numbers would be negotiated;

8. Notwithstanding its repeated promises to Plaintiffs, Defendant defaulted completely on its obligations under Local Rule 54.3;

9. Under Local Rule 54.3, Plaintiffs have until January 11, 2011 to file their motion for attorney fees and costs;

10. Plaintiffs in the related cases of *NRA* v. *City of Chicago* and *NRA* v. *Village of Oak Park* had sought a discovery and briefing schedule regarding their attorney fees and costs demands. Responding to that motion, this Court ordered the parties in those related cases to brief the issue of whether *NRA* Plaintiffs were prevailing parties;

11. Plaintiffs in this case were not provided with notice of the fee proceedings in the related cases;[1]

12. Plaintiffs only learned of the fee proceedings in the related cases when, demanding Defendant's participation in the preparation of the joint statement envisioned by Local Rule 54.3(e), Defendant suddenly – for the first time – mentioned those proceedings as an excuse justifying their failure to abide by the requirements of Local Rule 54.3;

13. Plaintiffs immediately sought to have the related case proceedings held in abeyance pending their ability to be heard on the issue of whether they are prevailing parties;

---

[1] The Court's order in the related NRA cases notes that *McDonald* counsel offered "vigorous criticism at having assertedly been kept out of the loop by NRA's counsel." While NRA counsel should have provided *McDonald* counsel notice, the record will reflect that *McDonald* counsel are specifically criticizing *the City*'s counsel. Opposing counsel agreed to settlement negotiations, and played along with discussions of Plaintiffs' numbers while promising an eventual response, all the while litigating the issue in the related case without notice to *McDonald* plaintiffs. Indeed, the City's counsel sought to avoid offering its settlement position until after the status conference in the related case would be conducted, and following the Court's decision in the related cases, predicted that Plaintiffs' fee petition would likewise be denied. Of course, the existence or litigation of the related NRA cases did not absolve the City of its obligations in this case.

14. The Court denied Plaintiffs' request, and promptly entered an order in the related cases that provides, inter alia, "the Supreme Court's decision in *McDonald* -- which, it will be remembered, resulted in no judicial implementation on remand -- did not meet the requirements of Section 1988 under [*Buckhannon Board & Care Home, Inc.* v. *West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001)];"

15. This Court nonetheless suggested that *McDonald* Plaintiffs might be able to distinguish their arguments from those offered by NRA;

16. Following the Court's suggestion, Plaintiffs now seek instruction pursuant to Local Rule 54.3(g) regarding the filing of their motion for attorney fees and costs. Plaintiffs hereby adopt the many excellent arguments offered by the NRA Plaintiffs as though fully stated herein, and of course, expect no different result here on the basis of these claims.

17. However, "our adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." *Greenlaw* v. *United States*, 128 S. Ct. 2559, 2564 (2008). And *McDonald* Plaintiffs do have different, additional arguments to offer regarding prevailing party status.

18. This Court found that NRA "[sought] to put the old 'catalyst theory' wine into new bottles," and that NRA "demonstrate[d] its essential reliance on the 'catalyst theory.'" *McDonald* Plaintiffs' arguments are not solely dependent on the catalyst theory, and *Buckhannon* does not vitiate their prevailing party status.

4

19. In addition to adopting and endorsing the NRA's arguments, Plaintiffs claim:

*I. Binding Chicago to Abide By Second Amendment Rights Changed the  
Legal Relationship Between the Parties*

20. On June 28, 2010, the Supreme Court recognized, in the opinion issued in this case, that the Fourteenth Amendment altered the relationship between the parties with respect to Second Amendment rights. Recounting earlier decisions of the Supreme Court and of the Seventh Circuit, this Court had held that Defendant was not bound to recognize that Plaintiffs enjoyed any rights of the kind secured by the Second Amendment. That is now changed;

21. This changed legal status among the parties is a "judicially sanctioned change in the legal relationship of the parties," and is very much "the stuff of which legal victories are made." *Buckhannon*, 532 U.S. at 605 (citation omitted);

22. This Court has previously held that the *Buckhannon* dissent's description of the majority's holding governs interpretation of *Buckhannon*'s scope. Under that interpretation, a party prevails by "secur[ing] a court entry memorializing her victory. The entry need not be a judgment on the merits. Nor need there be any finding of wrongdoing." *Johnnie's Icehouse, Inc.* v. *Amateur Hockey Ass'n of Il.*, 2001 U.S. Dist. LEXIS 11671 at *9 (N.D. Ill. Aug. 7, 2001) (quoting *Buckhannon*, 532 U.S. at 622 (Ginsburg, J., dissenting));

23. Although the change in the legal relationship – recognition that Defendant is bound to recognize Second Amendment rights – qualifies Plaintiffs under the plain language of *Buckhannon*'s majority opinion, Plaintiffs further note that they

are prevailing parties under the interpretation of *Buckhannon* offered by the dissent, as previously accepted by this Court, in that the Supreme Court's opinion is "a document filed in court . . . memorializing [their] victory." *Buckhannon*, 532 U.S. at 622 (Ginsburg, J., dissenting).

  *II. The Supreme Court Struck Down Defendant's Handgun Ban*

24. As noted *supra*, the Supreme Court had already held that handgun bans violate the Second Amendment. By holding that the Second Amendment "fully applies" to Defendant, there was nothing left to litigate with respect to the handgun ban. The matter was fully and finally terminated by the Supreme Court. The Supreme Court's decision rendered the handgun ban unenforceable; any person enforcing it as of June 28, 2010 would not have enjoyed qualified immunity from liability;

25. Any claim that the handgun ban could have been defended on remand is untenable. Indeed, as the NRA alluded to but failed to fully point out, the City took this position not merely in the media – but in the Supreme Court;

26. Chicago did not merely argue that the Fourteenth Amendment did not make the Second Amendment applicable to states and localities.  Chicago addressed, head on, the constitutionality of the handgun ban itself. Having offered that it could reasonably conclude that "handgun bans . . . enhanc[e]. . . a system of ordered liberty," Respondents' Br. 4 (Exhibit 2), Chicago directly attacked *Heller*'s handgun ban holding: "Features that cause handguns to be regarded by many as the 'quintessential self-defense weapon' (*Heller*, 128 S. Ct. at 2818) also make

them attractive for criminal purposes, including homicide, suicide, and other violent crimes." *Id*. 15;

27. Indeed, Chicago understood that the Supreme Court would be passing upon the constitutionality of its handgun ban. Chicago claimed that "[*McDonald*] Petitioners and NRA both limit their argument in this Court to handgun bans," but then noted that "both [*McDonald* Petitioners and NRA] raised other issues." Id. at 80 n.27. Describing these "other issues," Chicago concluded, "If the judgment is reversed, the lower courts should be directed to address those claims in the first instance." Id. at 81 n. 27;

28. Clearly, Chicago differentiated between the handgun ban, and the "other issues," and acknowledged that there would be no need for the lower courts to address the handgun ban "in the first instance." A clearer admission that the handgun ban was in fact being litigated before the Supreme Court could not have been offered;

29. The Supreme Court emphatically rejected arguments that the handgun ban was constitutional, arguments which it described as follows:

> Municipal respondents . . . urge us to allow state and local governments to enact any gun control law that they deem to be reasonable, *including a complete ban on the possession of handguns in the home for self-defense*. . . . . Unless we turn back the clock or adopt a special incorporation test applicable only to the Second Amendment, municipal respondents' argument must be rejected. Under our precedents, if a Bill of Rights guarantee is fundamental from an American perspective, then, unless stare decisis counsels otherwise, that guarantee is *fully binding* on the States . . .

*McDonald*, 130 S. Ct. at 3046 (emphasis added) (footnote omitted);

30. Plainly, there was nothing voluntary about the handgun ban repeal – the City litigated its handgun ban before the Supreme Court, and asked the Court only to be allowed to defend the *other* challenged provisions should the Court hold – as it unmistakably did – that the full measure and content of the Second Amendment binds Defendant. As of June 28, there was nothing "potentially meritless," *Buckhannon*, 532 U.S. at 606, about Plaintiffs' challenge to the handgun ban. Nor would there have been anything "potentially" meritless about defending the handgun ban on remand; such defense would have been definitively frivolous, the issue having been *conclusively litigated and determined* by the Supreme Court, as acknowledged before the Supreme Court by Defendant;

### III. Buckhannon Was Wrongly Decided

31. In addition to (1) adopting NRA's positions, (2) asserting that the changed legal relationship at issue is the application of the Second Amendment to Defendant, and (3) pointing out that the Supreme Court actually did strike down the Chicago handgun ban, as Defendant acknowledged it would under any decision applying Second Amendment rights to Chicago, *McDonald* Plaintiffs respectfully reserve for a higher authority the position that *Buckhannon* is simply wrong, for the reasons ably offered by petitioners in that case, their amici, and the dissenters. *Buckhannon* must be overruled.

*Conclusion*

WHEREFORE, Plaintiffs maintain that they indeed prevailed, within the meaning of Section 1988 and even within the meaning of *Buckhannon*. Plaintiffs would ask only that they have until January 31 to file their motion for attorney fees and costs, which should not overly tax the Court's resources given Defendant's calculated decision to default on its Rule 54.3 obligations.

Wherefore, Plaintiffs respectfully request that the motion be granted.

Dated: December 27, 2010            Respectfully submitted,

| | |
|---|---|
| Alan Gura (admitted *pro hac vice*) | David G. Sigale (Atty. ID# 6238103) |
| Gura & Possessky, PLLC | Law Firm of David G. Sigale, P.C. |
| 101 N. Columbus Street, Suite 405 | 4300 Commerce Court, Suite 300-3 |
| Alexandria, VA 22314 | Lisle, IL 60532 |
| 703.835.9085/Fax 703.997.7665 | 630.452.4547/Fax 630.596.4445 |
| By: /s/ Alan Gura | By: /s/ David G. Sigale |
| Alan Gura | David G. Sigale |
| | Attorneys for Plaintiffs |

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney of record for the plaintiffs, hereby certifies that on December 27, 2010, he served a copy of the above motion and this certificate of service, on:

Michael A. Forti
Mardell Nereim
Andrew W. Worseck
William Macy Aguiar
City of Chicago Department of Law
Constitutional and Commercial Litigation Division 30
N. LaSalle Street, Suite 1230
Chicago, IL 60602

by electronic means pursuant to Electronic Case Filing (ECF). Pursuant to FRCP 5, the undersigned certifies that, to his best information and belief, there are no non-CM/ECF participants in this matter.

The undersigned also effect service of the foregoing on:

Stephen A. Kolodziej (Counsel for Plaintiffs in *NRA* v. *City of Chicago,* No. 08-3697)
Brenner, Ford, Monroe & Scott
33 N. Dearborn Street, Suite 300
Chicago, IL 60602
Fax: 312-781-9202

Stephen Halbrook (Counsel for Plaintiffs in *NRA* v. *City of Chicago,* No. 08-3697) 10560 Main Street, Suite 404
Fairfax, VA 22030
Fax: 703-359-0938

by facsimile and by first class United States Mail, postage pre-paid.

/s/David G. Sigale
David G. Sigale