No. 08-1521

IN THE

## Supreme Court of the United States

OTIS MCDONALD, *et al.*,
                                        *Petitioners,*

v.

CITY OF CHICAGO,
                                        *Respondent.*

**On Writ of Certiorari to the
United States Court of Appeals
for the Seventh Circuit**

## BRIEF FOR RESPONDENTS CITY OF CHICAGO AND VILLAGE OF OAK PARK

JAMES A. FELDMAN
Special Assistant
  Corporation Counsel
5335 Wisconsin Avenue, N.W.
Suite 440
Washington, D.C. 20015
(202) 730-1267

MARA S. GEORGES
Corporation Counsel
  of the City of Chicago
BENNA RUTH SOLOMON*
Deputy Corporation Counsel
MYRIAM ZRECZNY KASPER
Chief Assistant Corporation
  Counsel
SUZANNE M. LOOSE
Assistant Corporation Counsel
ANDREW W. WORSECK
Assistant Corporation Counsel
30 N. LaSalle Street, Suite 800
Chicago, Illinois 60602
(312) 744-7764

*Counsel of Record          *Counsel for the City of Chicago*

[Additional Counsel Listed Inside Cover]

WILSON-EPES PRINTING CO., INC. – (202) 789-0096 – WASHINGTON, D. C. 20002

4

'selective incorporation'" and "the Court has not telegraphed any plan to overrule *Slaughter-House* and apply all of the amendments to the states through the privileges and immunities clause, despite scholarly arguments that it should do this." *Id.* at 5.

## SUMMARY OF ARGUMENT

To address the problem of handgun violence in their communities, Chicago and Oak Park have enacted stringent firearms regulations prohibiting the possession of handguns by most individuals. The Court should reaffirm that the Second Amendment does not bind state and local governments. Neither the Court's selective incorporation doctrine under the Due Process Clause nor the Privileges or Immunities Clause provides a basis for imposing the Second Amendment on the States and establishing a national rule limiting arms regulation.

I. Bill of Rights provisions are incorporated into the Due Process Clause only if they are implicit in the concept of ordered liberty. That is an exacting standard that appropriately protects federalism values at the root of our constitutional system and is particularly appropriate when addressing firearms regulation. Firearms are designed to injure or kill; conditions of their use and abuse vary widely around the country; and different communities may come to widely varying conclusions about the proper approach to regulation. Thus, Chicago and Oak Park may reasonably conclude that in their communities, handgun bans or other stringent regulations are the most effective means to reduce fear, violence, injury, and death, thereby enhancing, not detracting from, a system of ordered liberty. Although other approaches are possible and may be effective elsewhere, it cannot

15

best address the very serious problem of handgun crime and violence in their communities.[4] That approach is at the very least a reasonable approach to a difficult social problem on which definitive answers remain elusive. Because that approach aims to protect personal security, it is consistent with, and supportive of, a free society and a system of ordered liberty.

Features that cause handguns to be regarded by many as the "quintessential self-defense weapon" (*Heller*, 128 S. Ct. at 2818) also make them attractive for criminal purposes, including homicide, suicide, and other violent crimes. Handguns can be stored where readily accessible; they are small and lightweight; they are easier to control if someone tries to take them away; and they can be pointed at someone with one hand while leaving the other hand free. See *ibid*.

Because handguns are so well adapted for the commission of crimes and the infliction of injury and death, stringent handgun regulations, including prohibitions, can be reasonably thought to create the conditions necessary to foster ordered liberty, rather than detracting from it. Enforcing handgun control laws can make a difference in curbing firearms violence. See, *e.g.*, Lawrence Rosenthal, *Second Amendment Plumbing After Heller: Of Standards of Scrutiny, Incorporation, Well-Regulated Militias, and Criminal Street Gangs*, 41 Urb. Lawyer 1, 30-44

---

[4] The Chicago ordinance at issue in this case was adopted by the City Council. See p. 1, *supra*. The Oak Park ordinance was first adopted by the town council. The following year, the citizens of Oak Park voted in an advisory referendum. See Brief of Oak Park Citizens' Committee for Handgun Control as *Amicus Curiae* in Support of Respondents.

80

Under similar circumstances, the Court in *Brown v. Board of Education*, 347 U.S. 483 (1954), expressly refused to "turn the clock back to 1868" when reassessing *Plessy v. Ferguson*, 163 U.S. 537 (1896) (*Brown*, 347 U.S. at 492), stressing that, while some congressional members believed that the Amendment removed "all legal distinctions" based on race, others read it to have "the most limited effect" (*id.* at 489). With such varying views, "[w]hat others in Congress and the state legislatures had in mind cannot be determined with any degree of certainty." *Ibid.* And recently, in *Boumedienne v. United States*, 128 S. Ct. 2229 (2008), this Court declined to rest its decision about the scope of the protection of the writ of habeas corpus upon a historical understanding because the historical evidence "reveals no certain conclusions." *Id.* at 2248. Likewise here, petitioners' only argument for upsetting longstanding precedent is based upon a historical record that simply fails to reveal a unified public understanding that the Privileges or Immunities Clause would incorporate the Second Amendment. Petitioners' argument should be rejected.[27]

---

Rights, many other scholars have reached contrary conclusions. The claim of a "near unanimous" agreement on "the history and meaning of the Clause" (Brief of Constitutional Law Professors as *Amici Curiae* in Support of Petitioners 3) simply disregards a vast amount of scholarship finding a lack of evidence that Bill of Rights guarantees were considered privileges or immunities of national citizenship. See, *e.g.*, Berger, *supra,* at 133-56; Currie, *supra,* at 406; Fairman, *supra,* at 139; Nelson, *supra,* at 123; Rosenthal, *New Originalism, supra,* at 27; Thomas, *Riddle, supra,* at 1628; see also Brief of Legal Scholars as *Amici Curiae* in Support of Respondents.

[27] Petitioners and NRA both limit their argument in this Court to handgun bans. In the courts below, both raised other issues. Petitioners challenged Chicago's annual and pre-acquisition registration requirements and the penalty of unregisterability for failure to comply with those requirements. J.A. 27-

81

## CONCLUSION

The judgment of the court of appeals should be affirmed.

Respectfully submitted,

JAMES A. FELDMAN
Special Assistant
    Corporation Counsel
5335 Wisconsin Avenue, N.W.
Suite 440
Washington, D.C. 20015
(202) 730-1267

MARA S. GEORGES
Corporation Counsel
    of the City of Chicago
BENNA RUTH SOLOMON*
Deputy Corporation Counsel
MYRIAM ZRECZNY KASPER
Chief Assistant
    Corporation Counsel
SUZANNE M. LOOSE
Assistant Corporation Counsel
ANDREW W. WORSECK
Assistant Corporation Counsel
30 N. LaSalle Street, Suite 800
Chicago, Illinois 60602

*Counsel of Record

(312) 744-7764

*Counsel for the City of Chicago*

RAYMOND L. HEISE
Village Attorney of
    Oak Park
123 Madison Street
Oak Park, Illinois 60302
(708) 358-5660

HANS GERMANN
RANJIT HAKIM
ALEXANDRA SHEA
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
(312) 782-0600

*Counsel for the Village of Oak Park*

December 30, 2009

---

30. NRA's separate suits against Chicago and Oak Park, which are not before the Court, challenged Chicago's exceptions for handguns registered before the ban; owned by detective agencies and security personnel; and possessed by non-residents participating in or traveling to lawful firearm-related recreation, and Oak Park's exceptions for licensed firearm collectors and theater organizations. If the judgment is reversed, the lower courts should be directed to address those claims in the first instance.