## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

NATIONAL RIFLE ASSOCIATION )
OF AMERICA, INC., DR. KATHRYN TYLER, )
VAN F. WELTON, )
and BRETT BENSON, )
            )
                 Plaintiffs, )
            )
vs. )    No. 08 CV 3697
            )
            )    Judge Milton I. Shadur
THE CITY OF CHICAGO, )
            )
                 Defendant. )

## DECLARATION OF STEPHEN A. KOLODZIEJ

I, Stephen A. Kolodziej, am competent to state, and declare the following based upon my

personal knowledge:

1.      I am designated local counsel for the plaintiffs in the above-captioned matter.

2.      I am also designated local counsel for plaintiffs in the case of *Benson, et al. v. City of*

*Chicago, et al.*, No. 10-CV-4184, currently pending before the Honorable Judge Ronald A. Guzman

of this Court.

3.      Attached hereto is a copy of the City of Chicago's Initial Disclosures Pursuant to

Fed. R. Civ. P. 26(a)(1)(A) that was served upon me by defendants on October 15, 2010 in the

*Benson* matter. In item No. 1 of that disclosure, the City of Chicago identified the record of

proceedings held by the Chicago City Council Committee on Police and Fire on June 18, June 29,

and July 1, 2010, and a copy of that record was enclosed with the Disclosure.

4.      Attached to the Memorandum in Support of Plaintiffs' "Prevailing Party" Status in

Relation to their Motion for Attorneys' Fees that has been filed with this Court is an Appendix,

which consists of excerpts from the record of proceedings that was served upon me by the City of Chicago with its Rule 26(a)(1)(A) Disclosure in the *Benson* lawsuit, and that was identified in that Disclosure as the record of proceedings held by the Chicago City Council Committee on Police and Fire on June 18, June 29, and July 1, 2010.

I declare under penalty of perjury that the foregoing is true and correct.

Dated December 9, 2010.

s/_____Stephen A. Kolodziej_____

Stephen A. Kolodziej
Brenner, Ford, Monroe & Scott, Ltd.
33 North Dearborn Street, Suite 300
Chicago, Illinois 60602
312-781-1970
skolodziej@brennerlawfirm.com

2



**City of Chicago**
Richard M. Daley, Mayor

**Department of Law**

Mara S. Georges
Corporation Counsel

Constitutional and Commercial
Litigation
Suite 1230
30 North LaSalle Street
Chicago, Illinois 60602-2580
(312) 744-4342
(312) 742-3925 (FAX)

http://www.cityofchicago.org

October 15, 2010

Jesse Panuccio
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
*Delivered via U.S. Mail*

Stephen Kolodziej
BRENNER FORD MONROE & SCOTT LTD.
33 N. Dearborn Street, Suite 300
Chicago, IL 60602
*Delivered via messenger*

**Re: Benson v. City of Chicago, 10 C 4184**

Dear Counsel:

    Enclosed please find the Defendants' Rule 26(a)(1)(A) disclosures and the legislative record described therein.

                  Sincerely,

                  Andrew Worseck
                  312-744-7129





# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| BENSON, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 10-CV-4184 |
| | ) | Judge Ronald A. Guzman |
| CITY OF CHICAGO, ET AL., | ) | Magistrate Judge Geraldine Soat |
| | ) | Brown |
| Defendants. | ) | |

## DEFENDANTS' INITIAL DISCLOSURES PURSUANT TO FED. R. CIV. P. 26(a)(1)(A)

Defendants City of Chicago and Mayor Richard M. Daley, by and through their attorney, Mara S. Georges, Corporation Counsel for the City of Chicago, hereby submit their Fed. R. Civ. P. 26(a)(1)(A) disclosures.

**I.      Rule 26(a)(1)(A)(i) & (ii).**

Defendants state that in supporting their claims or defenses, they may use the record of proceedings held by the Chicago City Council Committee on Police and Fire ("Committee") on June 18, June 29, and July 1, 2010.   A copy of that record is being produced herewith. Defendants may also use the proceedings of the Chicago City Council on July 2, 2010.  Those proceedings have not been transcribed but can be viewed at: http://www.chicityclerk.com/City_Council_Video/2010_Video_Meetings/July2_2010/ .

Further, (1) without waiving any arguments as to the proper standard(s) of scrutiny that govern Plaintiffs' various claims, and the factual material that is relevant under a particular standard or to a particular claim, (2) reserving all objections to any discovery propounded by Plaintiffs upon Defendants or upon third-parties, including but not limited to the objections that

the discovery seeks irrelevant information, or improper or premature expert discovery, and (3)

without warranting that the following individuals or subject matters are within the permissible

bounds of discovery, Defendants state that the name, address and telephone number (if known),

and subject matter of testimony of individuals who testified at the Committee proceedings

identified above, or of individuals who authored studies, reports, or other documents that were

discussed at or submitted during those proceedings, are contained within the record of the

proceedings. Further, Defendants state that these disclosures are preliminary, that their

investigation continues, and that they reserve the right to supplement these disclosures.

**II.    Rule 26(a)(1)(A)(iii).**

Not applicable.

**III.   Rule 26(a)(1)(A)(iv).**

Not applicable.

Dated: October 15, 2010                Respectfully submitted,

                                       MARA S. GEORGES,
                                       Corporation Counsel for the City of Chicago

                                       By:    _____
                                              Assistant Corporation Counsel

Michael A. Forti
Mardell Nereim
Andrew W. Worseck
William Macy Aguiar
Rebecca Alfert Hirsch
City of Chicago, Department of Law
Constitutional and Commercial Litigation Division

2

30 North LaSalle Street, Suite 1230
Chicago, Illinois 60602
(312) 744-9018 / 6975  / 7129 / 4216

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I, Andrew Worseck, an attorney, hereby certify that on this, the 15th day of September,

2010, I caused a copy of the forgoing **Defendants' Initial Disclosures Pursuant to Fed. R. Civ.**

**P. 26(a)(1)(A),** to be served by first-class United States mail, postage prepaid, on:

    Charles J. Cooper
    David H. Thompson
    Jesse Panuccio
    Cooper & Kirk, PLLC
    1523 New Hampshire Ave., NW
    Washington, DC 20036

and by messenger delivery on:

    Stephen Kolodziej
    BRENNER FORD MONROE & SCOTT LTD.
    33 N. Dearborn Street, Suite 300
    Chicago, IL 60602

4

APPENDIX A                    ORIGINAL

1

1          CITY OF CHICAGO
       COMMITTEE ON POLICE AND FIRE
2

3
       RE:  HEARING TO DISCUSS GUN VIOLENCE AND
4           FIREARM REGISTRATION REGULATION

5

6

7

8              REPORT OF PROCEEDINGS of a

9    meeting of the City of Chicago, Committee on Police

10   and Fire, taken on June 18th, 2010, 10:00 a.m.,

11   City Council Chambers, Chicago, Illinois, and

12   presided over by ALDERMAN ANTHONY A. BEALE,

13   Chairman.

14

15        Reported by:  Bernice Betts, C.S.R.
16

17

18

19

20

21

22

2

1      ALDERMAN BEALE:  It's 10:08, and the

2  Committee on Police and Fire will now come to

3  order.  We have a public hearing today to discuss

4  gun violence and firearm registration regulation.

5  And we have quite a few people that want to

6  testify.  If there's anyone who wishes to testify,

7  if you can please fill out the appropriate paper

8  work and get it turned in.

9          We're going to try to move this

10 hearing along as quickly as possible, because we

11 have a lot of testimony.

12          First, we want to bring Mara Georges

13 up from Corporation Counsel to discuss the

14 importance of having gun registration, and to

15 discuss some gun violence.

16      CORPORATION COUNSEL GEORGES:  For the record,

17 my name is Mara Georges G-e-o-r-g-e-s.  I'm the

18 Corporation Counsel for the City of Chicago.

19 Mr. Chair, Members of the City Council's Police and

20 Fire Committee and honored guests.

21          After a dully noted finding that

22 firearms, and especially handguns, play a major

3

1  role in the commission of homicides, aggravated

2  assaults and armed robberies on March 19th of 1982,

3  Alderman Edward M. Burke moved to pass, and the

4  Chicago City Council enacted, by a vote of 30 yeas

5  and 11 nays a firearms ordinance, which renders

6  most handguns unregistrable in the city of Chicago.

7        The ordinance, still in effect today

8  with modification, allows for the registration of

9  rifles and shotguns that are not sawed off, short

10 barreled or assault weapons.  It requires

11 registrable firearms to be registered before being

12 possessed in Chicago and registration must be

13 renewed annually.  Failure to renew shall "cause

14 the firearm to become unregistrable."  The

15 ordinance provides that no person may possess "any

16 firearm which is unregistrable" within the city

17 confines.

18        On June 26th of 2008, 26 years after

19 the enactment of that handgun ban the Illinois

20 State Rifle Association and various other

21 Plaintiffs in the McDonald case filed in the

22 Federal District Court for the Northern District of

CITY 000003

4

1  Illinois a challenge to the city's handgun ban and

2  certain registration requirements contained in the

3  ordinance.

4            The Plaintiffs in the McDonald case

5  alleged in pertinent part that Chicago's handgun

6  ban violates the Second Amendment as allegedly

7  incorporated into the 14th Amendment's due process

8  clause and privileges or immunities clause.

9            The following day, June 27th of

10 2008, the National Rifle Association filed two

11 similar lawsuits.  One challenging Chicago's

12 handgun ban, and the other Oak Park's.  McDonald

13 and the two NRA cases proceeded before the same

14 District Court Judge, and on December 18th of 2008,

15 Judge Milton I. Schader (phonetic) entered judgment

16 on the pleadings in favor of the city and Oak Park

17 in all three cases on the basis that the Second

18 Amendment does not apply to the states.

19            The Seventh Circuit Court of Appeals

20 consolidated the cases and affirmed the District

21 Court's decisions on June 2nd of 2009.  The Court

22 held that it was bound by previous decisions of the

CITY 000004

1    United States Supreme Court refusing to apply the

2    Second Amendment to the states.

3            The Supreme Court granted certiorari

4    in the McDonald case on September 30th of 2009 and

5    heard oral argument on March 2nd of 2010.  The

6    issue of incorporation of the Second Amendment to

7    the states is the issue being considered by the

8    United States Supreme Court.

9            The Supreme Court has publicized

10   that opinions will be issued on Monday, June 21st

11   and Monday, June 28th, and experts believe the

12   court will also release opinions on Thursday,

13   June 24th, and Wednesday, June 30th.

14           When the Supreme Court issued its

15   opinion in the Heller case involving Washington,

16   D.C.'s handgun ban, the opinion was issued on the

17   last day of the term.  If the Supreme Court were to

18   follow suit, that day would be June 30th of this

19   year.

20           If the Supreme Court were to find

21   incorporation of the Second Amendment, the city's

22   handgun ban would be invalidated.  As the Court's

6

1  decision in Heller has already found a right to

2  possess a handgun in the home for self-defense

3  purposes.

4           Assuming hypothetically that the

5  city's handgun ban were to be invalidated, the city

6  could seek approval from the City Council for a new

7  ordinance regulating firearms.  The Council could

8  consider limitations on number of firearms,

9  insurance and training requirements, ballistics

10 testing, and minimum qualifications for handgun

11 eligibility.

12           In today's hearing a number of

13 individuals who have spent years studying various

14 aspects of the firearms industry will testify.

15 These individuals have specific recommendations

16 regarding potential aspects of a new ordinance.

17 They realized that of the 412 homicides caused by

18 firearms in the city of Chicago during 2008, 98

19 percent of those or 402 resulted from handguns.

20 Thank you.

21      CHAIRMAN BEALE:  Thank you.  Any questions?

22 I'm sorry, not so fast.  Alderman Rugai.

CITY 000006

## APPENDIX B

1

COPY

```
 1

 2                   CITY OF CHICAGO

 3            COMMITTEE ON POLICE AND FIRE

 4

 5

 6

 7

 8

 9

10

11                   REPORT OF PROCEEDINGS of a

12     meeting of the City of Chicago, Committee on

13     Police and Fire, taken on June 29, 2010, 1:00

14     p.m., City Council Chambers, Chicago, Illinois,

15     and presided over by ALDERMAN ANTHONY BEALE,

16     Chairman.

17

18

19         Reported by:  Donna T. Wadlington, C.S.R.

20

21

22
```

WADLINGTON REPORTING SERVICE, INC.
(312) 372-5561

CITY000103

1      CHAIRMAN BEALE:  It's 1:10.  The

2  Committee on Police and Fire is now called to

3  order.  We're going to go out of regular order

4  of business.  Alderman Pope.

5      ALDERMAN POPE:  Thank you,

6  Mr. Chairman.

7      I'd like to make a motion that

8  we reconsider the five items that were heard at

9  yesterday's hearing, all that were approved by

10  this body.  So a motion to reconsider, please.

11      CHAIRMAN BEALE:  There's a motion to

12  reconsider.

13      All in favor?  All opposed?

14      The no's have it.  Those items

15  will be reported out tomorrow at City Council.

16      The item before us now is off

17  the supplemental agenda regarding the gun ban.

18  We have expert testimony from quite a few

19  people.  First, we're going to bring up Mara

20  George from Corporation Counsel.

21      CORPORATION COUNSEL GEORGES:

22  Alderman, do you mind if I turn this around?

1    CHAIRMAN BEALE: Sure. Do you want me

2 to get that for you?

3    CORPORATION COUNSEL GEORGES: Good

4 afternoon. My name is Mara Georges,

5 G-e-o-r-g-e-s. I'm the Corporation Counsel of

6 the City of Chicago.

7     Mr. Chair, members of the

8 Police and Fire Committee, yesterday in a

9 landmark five to four decision that reversed 130

10 years of case law, the United States Supreme

11 Court ruled that the Second Amendment of the

12 U.S. Constitution applies to state and local

13 governments, as well as the Federal Government.

14     As the Mayor said, this

15 decision was disappointing but not surprising

16 given the Court's ruling in the *Heller* case.

17     I'm sure that many of you have

18 questions about what this ruling means for

19 Chicago's current ordinance and the extent to

20 which we can regulate firearms in the future.

21     The Supreme Court did not

22 strike down any part of our ordinance. The

CITY000105

1    Court reversed the lower court decision
2    upholding our handgun ban and remanded the case
3    to the Seventh Circuit Court of Appeals for
4    further proceedings.  Therefore, technically,
5    our current ordinance is still in effect until
6    the Seventh Circuit invalidates it.  However, as
7    a practical matter, the section of our ordinance
8    that prohibits the registration of handguns is
9    unenforceable.
10                   It is clear that such a
11   provision will ultimately be struck down based
12   on the Supreme Court's decision in the *Heller*
13   case, in which the Court ruled that Washington,
14   DC's handgun ban violated the Second Amendment.
15   Therefore, it is important that we continue to
16   work to craft a new ordinance that promotes safe
17   and responsible gun ownership and complies with
18   the Court's ruling in this case.
19                   As we move forward, I want to
20   emphasize that the case before the Supreme Court
21   involved only the ban on the ownership of a
22   handgun in the home for self-defense purposes.

# APPENDIX C

1

COPY

1

2       CITY OF CHICAGO

3    COMMITTEE ON POLICE AND FIRE

4

5

6

7

8

9

10

11              REPORT OF PROCEEDINGS of a

12   meeting of the City of Chicago, Committee on

13   Police and Fire, taken on July 1, 2010, 10:00

14   a.m., City Council Chambers, Chicago, Illinois,

15   and presided over by ALDERMAN ANTHONY BEALE,

16   Chairman.

17

18

19      Reported by:  Donna T. Wadlington, C.S.R.

20

21

22

WADLINGTON REPORTING SERVICE, INC.
(312) 372-5561

CITY000307

1        ALDERMAN BALCER:  I'd like to call the

2   meeting to order of the Police and Fire

3   Committee.

4            And I'd also like to recess it

5   at this time until the Chairman returns.

6   Recessed until the Chairman gets here.

7                (WHEREUPON, the Committee is

8                in recess.)

9       CHAIRMAN BEALE:  It's 11:25.  The

10  Committee on Police and Fire will continue its

11  recessed meeting.

12           The sole purpose of this

13  meeting is to consider on the agenda an

14  ordinance introduced directly into Committee by

15  Corporation Counsel concerning responsible gun

16  ownership.

17           On June 18th and June 29th,

18  the Committee held a hearing on gun violence and

19  took testimony from experts on possible policies

20  to reduce such violence in our city.  These

21  hearings contemplated the impact of the United

22  States Supreme Court's ruling -- *McDonald*

1   decision on the City's handgun ban and the

2   future policies the City can enact to address

3   gun violence.

4           More than 30 people testified

5   at the hearing.  We heard from numerous experts

6   on gun violence from the Corporation Counsel,

7   other legal experts, from the Superintendent of

8   the Chicago Police Department, and other CPD

9   officers, from business owners, from leaders of

10  our faith-based community, community

11  organizations and others who have lost loved

12  ones to gun violence and even some from the

13  Plaintiffs in the *McDonald* case.

14          Among those experts testified

15  were Robyn Thomas, David Hemenway, Thom Mannard,

16  Tom VandenBerk, Mark Walsh, Dr. Marie Crandall,

17  Claude Robinson, Annette Holt, Juliet Leftwich,

18  and Daniel Webster.

19          I would also like to

20  acknowledge one of the experts we invited.

21  Dr. Jens Ludwig, a Professor of Social Service

22  Administration, Law and Public Policy at the

1    University of Chicago's Crime Lab, was unable to
2    testify but we also distributed -- more
3    testimony from -- his testimony was also
4    submitted to the record.
5          During prior hearings we also
6    distributed and placed on the record testimony
7    from several of our other experts, as well as
8    references from other work of numerous and other
9    studies in case and effect of gun violence and
10   recommend that we -- what we can do to address
11   the problem.
12         From the evidence that we
13   presented at the hearing, the Committee would
14   like to make the following findings:
15         Chicago, like other big
16   cities, have serious problems of gun violence.
17   The total economic and social costs of gun
18   violence in Chicago are substantial.  Gun
19   violence severely impacts Chicago's criminal
20   justice and health care system.  Gun violence
21   foments fears in Chicago's communities, which
22   can harm property value and drive residents from

1    -- and also fleeing our neighborhoods.  It also

2    can increase -- I'm sorry.

3               An increase in the number of

4    guns in circulation can contribute to an

5    increase in the number of incidents of gun

6    violence.  The presence of guns can also make

7    crime more lethal and would be -- also it can be

8    -- I'm sorry.  I need some water.

9               An increase in the number of

10   guns in circulation contribute to an increase in

11   the number of incidents of gun violence.  The

12   presence of guns makes crime more lethal than

13   others when guns are not present.  Handguns are

14   extremely -- to an extreme degree

15   disproportionately contribute to gun violence

16   and death in Chicago.

17              A strong permitting system

18   from firearms owners is vital.  A vigorous

19   firearm registration system is necessary.

20   Registration gives law enforcement essential

21   information about firearm ownership allowing

22   first responders to determine in advance whether

1    individuals may be -- may have firearms.

2                    Shootings -- I'm sorry.

3    Shootings in the home are a major cause of

4    death, particularly in children and minors,

5    requiring owners to secure or store their

6    firearms when minors are present.

7                    Requiring owners to quickly

8    notify law enforcement of the lost, theft or

9    destruction of their firearm aid law enforcement

10   in reducing illegal gun trafficking and

11   identifying the -- and prosecuting gun

12   traffickers.

13                    Limiting the number of guns in

14   circulation is essential to public safety.

15   Limiting registration of handguns to one person

16   per month would help limit handgun injuries and

17   also reduce crime.

18                    The carrying of firearms in

19   public should be prohibited.  In a dense urban

20   environment like Chicago, public carrying

21   presents a high risk that everyday interpersonal

22   conflicts will result in injury.

1          The public safety requires a

2 ban on assault weapons.

3          Okay.  Mara, suggested that I

4 submit the rest of this for the record, and we

5 will get right into testimony.  Thank you.

6          Corporation Counsel, Mara

7 Georges.  And I do apologize.  I'm extremely

8 tired you all.  It's been a long day.

9          CORPORATION COUNSEL GEORGES:  Good

10 morning, Chairman Beale and members of the

11 Police and Fire Committee.  My name is Mara

12 Georges, G-e-o-r-g-e-s.  I'm the Corporation

13 Counsel for the City of Chicago.

14          With me and to my right is

15 Rose Kelly, who is the drafter of the

16 Responsible Gun Ownership Ordinance, which is

17 before you today and on which we urge your

18 support.

19          This was an ordinance drafted

20 in response to the Supreme Court decision

21 earlier this week in the *McDonald* case.  We

22 believe that this ordinance effectively balances

1    the right to possess a gun in the home for the

2    purpose of self-defense, with the substantial

3    risks to public safety that are associated with

4    guns.

5              The proposed ordinance is

6    comprehensive.  It regulates the sale and

7    possession of firearms, establishes a permit

8    process for gun owners, and includes a

9    registration requirement for guns that allows

10   for the registration of handguns.

11             First, I think it's easiest to

12   begin by describing what is banned under this

13   ordinance.

14             Banned are the sale of

15   firearms in the city of Chicago, certain types

16   of ammunition, including metal and armor

17   piercing bullets and 50 caliber bullets, the

18   sale of any ammunition to minors, laser-sight

19   accessories, silencers, and mufflers, certain

20   types of guns including sawed-off shotguns, 50

21   caliber rifles, machine guns, short-barreled

22   rifles and assault weapons, and handguns deemed

CITY000314

1   unsafe by the Police Superintendent.

2              These guns are unregisterable

3   and it is illegal to possess an unregisterable

4   weapon within the city of Chicago.  Also banned

5   are shooting galleries and target ranges, except

6   for law enforcement purposes.

7              Consistent with the Supreme

8   Court's ruling, we are allowing the possession

9   of handguns in a limited circumstance.  That is,

10  within the home for self-defense purposes.

11             So that there is no confusion

12  about the scope of handgun possession within the

13  city of Chicago, home is defined in the

14  ordinance as the inside of a person's dwelling

15  unit which is traditionally used for living

16  purposes.  Not the garage, not porches, not the

17  stairs, not the back, side or front yard space.

18  Dormitories, hotels, and group living homes are

19  excluded from the definition of home within the

20  ordinance.

21             In addition, there is a two

22  step registration requirement for guns.  The

1   first step requires individuals to obtain a

2   Chicago Firearm Permit, a CFP, prior to owning a

3   gun.  And the second step requires gun owners to

4   obtain a registration certificate for each of

5   their firearms.  Both the CFP and the

6   registration certificate are issued by the

7   Chicago Police Department.

8          The ordinance imposes

9   reasonable limitations on who can obtain a CFP.

10   For example, individuals must be at least 21

11   years of age or 18 to 20 years of age with

12   parental permission to be eligible for a CFP.

13   They must possess a valid Illinois FOID card.

14   They must not have been convicted of a violent

15   crime or of two or more offenses for driving

16   under the influence of alcohol or drugs.

17          They must not have been

18   convicted of an unlawful use of weapon charge

19   involving a firearm.  They must not have

20   violated any other Municipal Code provision

21   regarding possession of laser-sight accessories,

22   silencers or mufflers, or unlawful sales of

1  firearms, or otherwise be ineligible to possess

2  a firearm under any law.

3          Individuals must demonstrate

4  that they've undergone firearm safety training

5  both in a classroom and on a firing range.

6          As I previously stated, the

7  CFP must be obtained prior to taking possession

8  of any gun, and it must be renewed every three

9  years.

10          As with our previous

11  ordinance, the responsible gun ownership

12  ordinance includes a registration requirement

13  for guns.  The new ordinance, however, allows

14  for the registration of handguns.  A

15  registration certificate is required for every

16  firearm.  The application for the registration

17  certificate must be submitted no more than five

18  business days after taking possession of the

19  gun.

20          Each applicant will be issued

21  only one registration certificate per month for

22  a handgun which must be used for the home in

1 which the applicant resides. So, in other

2 words, we're limiting the amount of handguns to

3 one per month for use within the home.

4     Individuals have 90 days after

5 the effective date of the ordinance to register

6 weapons, including guns that were not previously

7 registered, like handguns. So we're urging

8 members of the public to come in within this

9 90-day period after the ordinance's effective

10 date, assuming that this body were to approve

11 it, and register their unregistered weapons.

12     The ordinance also contains a

13 procedure for individuals who are denied either

14 a CFP or a firearm registration certificate to

15 appeal such denials.

16     I'd like to briefly discuss

17 the regulations contained in the responsible gun

18 ownership ordinance regarding where guns can be

19 possessed. These regulations are in addition to

20 any applicable state laws.

21     As I previously mentioned,

22 handguns are only allowed in the registrant's

1     home for self-defense purposes.  Long guns are

2     only allowed in the individual's home or fixed

3     place of business.  You cannot possess a gun in

4     your vehicle, unless it's broken down into a

5     non-functioning state.

6                    Each person who keeps or

7     possesses a firearm in his or her home must keep

8     no more than one firearm in the home assembled

9     and operable.  All other firearms must be broken

10    down in a non-functioning state or have a

11    trigger lock or other mechanism making the

12    firearm temporarily inoperable.

13                    In homes with minors under the

14    age of 18, guns must be kept secured, secured on

15    the person of the registrant, with trigger locks

16    or in locked boxes.

17                    This ordinance also

18    establishes a gun offender registry.  Any gun

19    offender, a person convicted of a gun offense,

20    who lives, works or attends school in the city

21    must register with the Police Superintendent.

22    The registry will be posted on the Police

1   Department's website and available for review by

2   the public.

3              Consequences for violating the

4   responsible gun ownership ordinance are severe.

5   Penalties include fines of $1,000 to $5,000 and

6   incarceration for not less than 20, nor more

7   than 90 days for certain offenses.  Subsequent

8   convictions are punishable by fines of $5,000 to

9   $10,000 and by incarceration of not less than 30

10  days, nor more than six months, the maximum

11  allowable under state law for the City to

12  impose.

13             Further, the ordinance

14  authorizes the seizure and destruction of any

15  weapons kept in violation of the chapter.  This

16  ordinance was crafted through careful discussion

17  and review.  We have listened to the Council and

18  tried to accommodate the Council's wishes in

19  crafting this ordinance.

20             Further, we are confident that

21  this ordinance is consistent with the Supreme

22  Court's rulings in the *Heller* and *McDonald*

1    decisions.  We are hopeful that you will support

2    it.  Thank you.

3              CHAIRMAN BEALE:  Thank you.

4                        Any questions from the

5    committee?  Alderman Rugai.

6              ALDERMAN RUGAI:  Thank you,

7    Mr. Chairman.

8                        We heard it discussed this

9    morning that the ages of many that commit crimes

10   of handguns are 13 to 16 year olds, and there is

11   no real punishment for those youths.  As in some

12   of our previous legislation perhaps for curfew,

13   for example, we have the parents responsible and

14   they are fined in that instance.

15                        Have we ever looked at or are

16   we just prohibited from making the parents

17   responsible if those young people are arrested

18   and convicted of possessing a handgun and using

19   it?

20             CORPORATION COUNSEL GEORGES:  It's a

21   good point, Alderman, but the problem is, of

22   course, if we were to prosecute a minor under

CITY000321

1  our ordinance, typically, that goes then to

2  juvenile court where we can't be imposing our

3  ordinance as a mechanism.

4     ALDERMAN RUGAI:  And not this

5  ordinance.  I mean, can we do something

6  separately to make parents responsible -- you

7  know, they are responsible for their children.

8  And if they -- their children were to be found

9  with guns, could they be prosecuted?

10     CORPORATION COUNSEL GEORGES:  I think

11  you raise a very good point and we will look at

12  it.

13     ALDERMAN RUGAI:  I mean, because it's

14  another side of our ordinance that's before us

15  today, but it was something that stuck in my

16  mind from the press conference this morning that

17  I thought we need to be attending to that side

18  of it as well.

19     CORPORATION COUNSEL GEORGES:  Yes.

20  Good point.

21     ALDERMAN RUGAI:  Thank you.

22     CHAIRMAN BEALE:  Alderman Balcer.

CITY000322

1    ALDERMAN BALCER:  Thank you,

2    Mr. Chairman.

3              What is the -- are there

4    provisions in here for retired police officers

5    --

6         CORPORATION COUNSEL GEORGES:  Yes.

7         ALDERMAN BALCER:  -- and their right

8    to carry a -- or have weapons?

9         CORPORATION COUNSEL GEORGES:  We

10   exclude many classes of people from many of the

11   ordinance requirements, and many of those

12   exclusions apply to current police officers,

13   retired police officers, current military

14   personnel and the like.  So we have tried to

15   accommodate what we heard from Chairman Burke

16   and the others in hearings, that many of these

17   provisions should not apply to retired CPD.

18        ALDERMAN BALCER:  So we're not --

19   people can still defend their homes if they're

20   inside of their homes?

21        CORPORATION COUNSEL GEORGES:  The idea

22   is that individuals have a right to a handgun

1　within the home for self-defense purposes, and

2　we're allowing them to register one per month;

3　one of those handguns per month to have within

4　their home to use for self-defense purposes.

5　　　　　　ALDERMAN BALCER:　For self-defense

6　purposes.　No one's right is being taken away to

7　defend their home?

8　　　　　　CORPORATION COUNSEL GEORGES:　Correct.

9　　　　　　ALDERMAN BALCER:　Good.　My next

10　question and I just -- you can have long rifles

11　and shotguns except sawed-off shotguns; am I

12　correct?

13　　　　　　CORPORATION COUNSEL GEORGES:　That is

14　correct.　We allow rifles and other long guns.

15　　　　　　ALDERMAN BALCER:　And you can have

16　one, two, three, four -- you can have as many as

17　you want?

18　　　　　　CORPORATION COUNSEL GEORGES:　Correct.

19　　　　　　ALDERMAN BALCER:　And you can have a

20　pistol.　You can buy one pistol per month?

21　　　　　　CORPORATION COUNSEL GEORGES:　Correct.

22　　　　　　ALDERMAN BALCER:　They can have twelve

CITY000324

1    in a year?

2              CORPORATION COUNSEL GEORGES:  Yes.

3    Each qualified applicant.

4              ALDERMAN BALCER:  Can have twelve in a

5    year?

6              CORPORATION COUNSEL GEORGES:  Can have

7    twelve in a year.  Yes.

8              ALDERMAN BALCER:  I think that's quite

9    fair.  I'll be honest.  I think that's quite

10   fair to a person.

11                   And right now you can have as

12   many rifles that meet the requirements and

13   shotguns if you -- if you want?  And they are

14   registered and so on?

15             CORPORATION COUNSEL GEORGES:  Correct.

16   And that continues.  That it is an unlimited

17   number.

18             ALDERMAN BALCER:  That continues.

19   That -- there's no -- nothing prohibiting that.

20   There's nothing saying you can't have one rifle,

21   one shotgun.  You can have --

22                   I'll be honest.  I think

CITY000325

1   that's quite fair.  And quite honest, if you
2   can't defend your home with umpteen rifles and
3   shotguns and a pistol, I don't see what else a
4   person can ask for in this.  Thank you.
5          CORPORATION COUNSEL GEORGES:  You're
6   welcome.
7          CHAIRMAN BEALE:  Alderman Fioretti.
8          ALDERMAN FIORETTI:  Thank you,
9   Mr. Chairman.
10                When we started the hearing
11  the other day, you described the -- still I want
12  to refer to the decision, that the mandate would
13  probably come down within 30 days give or take,
14  correct?
15         CORPORATION COUNSEL GEORGES:  Correct.
16         ALDERMAN FIORETTI:  And then you said
17  at that time that we can go into court to ask
18  for some kind of advisory assistance here in the
19  drafting of this -- of this ordinance.  Wasn't
20  that correct?
21         CORPORATION COUNSEL GEORGES:  I don't
22  believe that's what I said.  No.

CITY000326

1            I said when the mandate came

2 back to the Court of Appeals, the Court of

3 Appeals may ask us for briefs, position papers,

4 kind of on where we stand, saying to us, all

5 right, now in light of the decision from the

6 Supreme Court in *McDonald*, saying you have a

7 right to a handgun in your home for

8 self-defense, City, how do you defend your

9 handgun ban? And at that point it really

10 becomes impossible to defend it.

11      ALDERMAN FIORETTI: Okay. And so what

12 was legal or what is illegal out of the

13 ordinance as it existed the day before the

14 decision was handed down?

15      CORPORATION COUNSEL GEORGES: What the

16 Supreme Court has said is that the Second

17 Amendment applies to the City, and the Second

18 Amendment guarantees a right to a handgun in the

19 home for self-defense.

20         So in other words, a ban by

21 the City on handguns will not withstand the

22 *McDonald* decision.